3    --------------------------------X
                                     :
4    In Re:                          :    10-40156
                                     :
5       MARIBELLAX GROUP LTD.,       :    271 Cadman Plaza East
                                     :    Brooklyn, New York
6                       Debtor.      :
     --------------------------------X    May 19, 2010
7
            TRANSCRIPT OF MOTION TO DISMISS CASE OR CONVERT CASE
8               BEFORE THE HONORABLE CARLA E. CRAIG
                  UNITED STATES BANKRUPTCY JUDGE
9

10   APPEARANCES:

11   For the Debtor:             DANIEL C. MAROTTA, ESQ.
                                 RICHARD M. GABOR, ESQ.
12                               Gabor & Marotta LLC
                                 277 Broadway, Suite 1300
13                               New York, New York 10007

14   For Sovereign Bank:         JOSEPH L. SCHWARTZ, ESQ.
                                 KEVIN J. LARNER, ESQ.
15                               Riker, Danzig, Scherer, Hyland
                                  & Perretti LLP
16                               One Speedwall Avenue
                                 Morristown, New Jersey 07862
17

18
     For the U.S. Trustee:       Office of the United States Trustee
19                               BY:  WILLIAM E. CURTIN, ESQ.
                                 Assistant United States Trustee
20                               271 Cadman Plaza East
                                 Brooklyn, New York  11201
21

22
     Court Transcriber:          SHARI RIEMER
23                               TypeWrite Word Processing Service
                                 211 N. Milton Road
24                               Saratoga Springs, New York  12866

25


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service

1   (Proceedings began at 3:59 p.m.)

2           THE CLERK: MaribellaX Group.

3           Appearances, please..

4           MR. SCHWARTZ:  Good afternoon, Your Honor.  Joseph

5   Schwartz and Kevin Larner, Riker, Danzig, Scherer, Hyland &

6   Perretti on behalf of Sovereign Bank.

7           MR. CURTIN:  Good afternoon, Your Honor.  William

8   Curtin for the United States Trustee.

9           MR. MAROTTA:  Good afternoon, Your Honor.  Daniel C.

10   Marotta law firm of Gabor & Marotta LLC for the debtor.

11           MR. GABOR:  Richard Gabor also from Gabor & Marotta

12   representing the debtor.  Good afternoon again, Your Honor.

13           THE COURT: Give me one minute.

14                 [Pause in proceedings.]

15           THE COURT: Go ahead.

16           MR. SCHWARTZ: Thank you, Your Honor.  As Your Honor

17   is aware there's a number of matters on today's calendar.

18   Unless Your Honor disagrees, I think that most important of

19   those matters would be the motion to convert that was filed by

20   Sovereign. The U.S. Trustee has also filed a motion to convert

21   and unless Your Honor disagrees I would take that matter

22   first.

23           THE COURT: Yes, that will be fine.

24           MR. SCHWARTZ: We filed a reply earlier today.  I'm

25   not sure if Your Honor saw that.

1          THE COURT: Yes, I did.

2          MR. SCHWARTZ: Thank you, Your Honor.  In our papers

3     we set forth a number of things and I guess in arguing a

4     motion to convert the thing that I would stress most is you

5     have to look at the statute to begin the story, and the

6     statute here is 1112(b)(1) which essentially says that absent

7     unusual circumstances specifically identified by the court

8     that establish that the request to conversion is not in the

9     best interest of creditors in the estate the court shall

10    convert the case, yada, yada, yada, unless if the movant

11    establishes cause.  I paraphrase.

12         THE COURT: Yada, yada, yada.  Right. What is the --

13    the question is where -- what is the cause.  That's the

14    question.

15         MR. SCHWARTZ: The question is the cause.  And, Your

16    Honor, then you look at 1112(b)(4) which contains certain

17    examples of cause and we've identified what we believe are

18    four or five different examples of cause.  The first example

19    that we identify is gross mismanagement and Your Honor I'm

20    sure recalls vividly the last couple of hearings we had in

21    connection with the motion that Sovereign filed to prohibit

22    the debtor's use of cash collateral and we would submit that

23    number one, the debtor's filing on January 11th and failure to

24    seek court approval or consent from Sovereign with respect to

25    use of cash collateral in and of itself is gross mismanagement

1   which constitutes cause but that's not the end of the story

2   because there's many other examples in this case.  The court

3   pointed out at the last hearing this case was in disarray.

4   For example, Your Honor, we set forth and Your Honor might

5   recall that we showed that the debtor has made since the

6   bankruptcy filing many payments on a post-petition basis of

7   pre-petition debts.

8           Now, last week I took the Rule 2004 examination of

9   the debtor's principal, Mr. Kevin Love, and I asked among

10  other things Mr. Love about those payments and he readily

11  admitted yes, the debtor made payments of pre-petition

12  expenses on a post-petition basis and I admit it, maybe I

13  didn't understand it but we did it and we're not doing it any

14  more, but there was many payments that were made on account of

15  pre-petition expenses on a post-petition basis.

16          The debtor during the first three-and-a-half months

17  or so of the case failed to set up a debtor-in-possession

18  operating account.  When we brought this to the court's

19  attention the debtor then set up an account a week or two ago

20  but for the first three-and-a-half months of the case debtor

21  didn't set up a DIP account.

22          THE COURT: So I should -- you think that I should --

23  that a case is filed, there are problems, they're rectified

24  then I should convert the case based upon the problems that

25  have been rectified?

1      MR. SCHWARTZ: Well, Your Honor, I think that if --

2      THE COURT: If you could point out to me some

3 problems that haven't been rectified.

4      MR. SCHWARTZ: There are problems that have not been

5 rectified and I'm giving you examples because there's many

6 examples of what I view and I submit are examples of gross

7 mismanagement.  Some have been rectified; some haven't.  The

8 issue with regard to the payment of the pre-petition debt on a

9 post-petition basis has not been rectified.  That money has

10 not come back to the debtor and so that has not and cannot I

11 submit be rectified.

12      THE COURT: How much of that was paid?

13      MR. SCHWARTZ: Your Honor, I don't recall the exact

14 amount but it's definitely $2,000.00 but I believe that we've

15 given examples in our motion.

16      THE COURT: I'm thinking that maybe this needs to be

17 set down for an evidentiary hearing.

18      MR. SCHWARTZ: Well, Your Honor, if I can continue

19 because I think that there's 15 or so different examples of

20 gross mismanagement and I --

21      THE COURT: Wouldn't you need to put on evidence of

22 that?

23      MR. SCHWARTZ: Well, Your Honor, the debtor has

24 essentially admitted in its monthly operating reports and we

25 had colloquy at the last hearing.  The debtor admitted it

1 before the court that he paid pre-petition debts on a post-
2 petition basis. That's on example.

3       THE COURT: Well, how much? Is it a material amount?

4       MR. SCHWARTZ: It's definitely in the thousands of
5 dollars, Your Honor, and in a case like this I would submit
6 that that's material. On Pages 10 and 11 of our initial
7 moving papers, Your Honor, we've identified at least eight or
8 nine different examples that we culled from the monthly
9 operating reports and those are not the only examples because
10 when I questioned Mr. Love during his Rule 2004 there were
11 others as well but if you add up those payments I would submit
12 that it's probably in excess of $10,000.00. For example,
13 there's $7,000.00 payment to an insurance company. That was
14 made immediately after the bankruptcy filing on account of
15 pre-petition invoices and there's others.

16       THE COURT: This is to keep the insurance in place on
17 the property though; right?

18       MR. SCHWARTZ: Well, Your Honor, the insurer
19 obviously could not terminate insurance. I don't think that
20 ever became an issue but they couldn't terminate insurance
21 without getting stay relief. So certainly if the debtor was
22 faced with the situation of the insurer trying to terminate
23 insurance it could have come before this court and argued the
24 doctrine of necessity and argued that it should be allowed to
25 pay for certain pre-petition expenses but it didn't do that.

1  So we shouldn't assume that that's what was happening.

2       THE COURT: So this is the list that you -- is at

3  Paragraph 24 of your moving papers?

4       MR. SCHWARTZ: It's actually Paragraph 30, Your

5  Honor.  These are just the examples, Your Honor.  This is not

6  the exclusive list.

7       THE COURT: All right.

8       MR. SCHWARTZ: In addition, Your Honor, and as the

9  court might recall, the debtor on a post-petition basis for

10  three-and-a-half months was making checks paid out to cash

11  which is not only a violation of the U.S. Trustee guidelines

12  but essentially that's violative of the spirit of the

13  bankruptcy code and one can argue that that has been rectified

14  yet the only reason that anything has been rectified, Your

15  Honor, is because Sovereign came in and asked the court to

16  prohibit the use of cash collateral.  The debtor was

17  essentially operating the same way he had operated pre-

18  petition and the debtor was use -- the debtor's principal was

19  using the debtor as his piggy bank, and Ill get to that in a

20  minute.

21       THE COURT: All right.

22       MR. SCHWARTZ: So just because --

23       THE COURT: If that stopped and the money has been

24  paid back, do we still need to dismiss the case based on that?

25       MR. SCHWARTZ: I'm not asking for dismissal --

1      THE COURT: I don't mean to say dismissed.  Convert,

2 because I know that's what the --

3      MR. SCHWARTZ: The answer is the money has not been

4 paid back and so the answer is I submit that when cause exists

5 the court has no discretion. It must convert the case unless

6 there's unusual circumstances which I submit are not present

7 here.

8      In addition to the payments of cash, Your Honor --

9      THE COURT: So your view would be -- so you're saying

10 that post -- the gross mismanagement includes any kind of

11 post-petition diversion of funds for improper purposes and the

12 fact that you may have done it in the past and not doing it

13 now doesn't constitute the kinds of unusual circumstances that

14 would give the court discretion to not convert the case when

15 that is present, when that factor is present.

16      MR. SCHWARTZ: I submit to the court that if you look

17 at the code and under Section 1112(b)(2) it specifically says

18 that where the court determines at the end of the day that

19 there were -- that there are unusual circumstances the court

20 identifies them specifically, and this is where the debtor

21 objects to the motion to convert, which the debtor has done

22 here, and the debtor would have the burden of establishing

23 under 1112(b)(2) A and B number one, that there's a reasonable

24 likelihood that a plan will be confirmed within the time

25 frames established in Section 1121(e) and 1129(e) of this

1  title where if such sections do not apply within a reasonable

2  period of time, and, B, the grounds for granting such relief

3  be [inaudible] an act omission of the debtor other than under

4  Paragraph 4(a) for which there exists a reasonable

5  justification for the act or omission and that will be cured

6  within a reasonable period of time fixed by the court.

7          So I submit to Your Honor, and I've only identified

8  four or five different examples of gross mismanagement.

9  There's many more but I submit to the court that, for example,

10 the debtor cannot rectify the situation with respect to its

11 payment of pre-petition debts on a post-petition basis and

12 there's no reasonable justification for that act in any event.

13 So the debtor can't meet its burden here.

14         THE COURT: Show me -- where's the debtor's outline?

15 Here it is.  It's (B)(2); correct?

16         MR. SCHWARTZ: Yes, (B)(2).

17                 [Pause in proceedings.]

18         THE COURT: This Paragraph 2 is hard to understand.

19 The relief provided in Paragraph 1 shall not be granted as

20 relief provided in Paragraph 1 that's conversion shall not be

21 granted as to unusual circumstances specifically identified to

22 the court that establish that such relief is not in the best

23 interest of the creditors and the estate.  Conversion shall

24 not be granted absent unusual circumstances -- okay -- that

25 establishes -- not in -- if the debtor objects and shows that.

1   It seems like there's an extra not in there.

2           MR. SCHWARTZ: I agree but I think that one can

3   understand what the intent behind the statute is.

4           THE COURT: Okay.  So the debtor has to establish

5   that there's a reasonable likelihood of a plan.  Okay. So you

6   would argue that neither of the two of A or B apply here.

7           MR. SCHWARTZ: Well, I would argue that the debtor

8   cannot meet its burden of proof with respect to either A or B.

9   I think they do apply.  I just think the debtor can't meet its

10  burden of proof.

11          There's other examples of cause as well, Your Honor,

12  which we haven't gotten to yet but I don't think the debtor

13  can establish either A or B and it must be both.

14          THE COURT: Okay.

15          MR. SCHWARTZ: May I go on with respect to --

16          THE COURT: Yes, you may.  Why don't we continue to

17  talk about cause?

18          MR. SCHWARTZ: Thank you, Your Honor.  I'll continue

19  with respect to gross mismanagement because I believe that

20  there's other examples.

21          The debtor, and the court might recall from the last

22  hearing, that the debtor was paying a lease obligation,

23  $6,000.00 a month with respect to what the debtor identified

24  as the Adamo lease and when I brought this to the court's

25  attention in connection with the motion to prohibit use of

cash collateral the debtor said well, we're not using that
property any more and so we're not going to -- we're going to
stop making that payment and so -- but for the first three,
four months of the case the debtor paid $6,000.00 a month to
someone named Adamo who I have no idea who that is for
nothing, for no apparent reason when the debtor if he wasn't
using that lease should have simply rejected that lease.  So
$6,000.00 times four, $24,000.00 went out which apparently
shouldn't have and I guess the debtor is not going to be
making any payments to Mr. or Ms. Adamo any more but
nevertheless I think that that constitutes gross
mismanagement.  The debtor is just wasting money for no
reason.

      During the Rule 2000 [sic] examination of Mr. Love
that I conducted last week I questioned Mr. Love specifically
about certain payments that the debtor made on a post-petition
basis vis-a-vis credit cards, BMW payments, cell phone
payments, and the court might recall that this was the subject
of colloquy at the last hearing.  Mr. Love specifically
admitted that the credit card payments were for his personal
credit cards, that the car payment was for his personal BMW
and that the cell phone was his personal cell phone.  So those
payments were all for -- which were unusual payments which
shouldn't have been made for Mr. Love's personal obligation.

      THE COURT: How much did that come to?

1          MR. SCHWARTZ: Your Honor, in our papers we identify

2    in our motion and I believe that's in Paragraph 24, Your

3    Honor, there are certain things that we identified which total

4    $85,960.00 but some of the payments that I just talked about

5    which are the personal credit cards and the BMW payments,

6    Capital One for example, American Express for example, and

7    they're in the thousands of dollars as Your Honor can see.

8    That's in addition to payments that Mr. Love took out that

9    were paid to him directly.

10         Your Honor might also recall that the payments that

11   were made by the debtor to Maria Love who's the debtor's

12   principal's daughter were the subject of colloquy at the last

13   hearing and the debtor represented to the court that Ms. Love

14   earns $700.00 per week yet the payments to Ms. Love were well

15   in excess of $700.00 per week and in particular, Your Honor,

16   there was repayment of $6,100.00 loan to Ms. Love on post-

17   petition basis.  The debtor had no idea what that was for at

18   the last hearing. That certainly is an improper payment as

19   well  in addition to the excess payments over the $700.00 that

20   were made on a weekly basis to Ms. Love.

21         There's also a payment that was identified during

22   the Rule 2004 examination of Mr. Love to Maria Love's husband.

23   His name is John Sassino [Ph.], a $1,000.00 payment, but

24   nevertheless it's unclear what that payment was for but

25   another payment to a family member.

1          Then there's a number of payments on a post-petition

2     basis to an entity called Brite Carting, B-R-I-T-E.   This is

3     an affiliated company that Mr. Love or his brother own and

4     control.   When I asked Kevin Love, the debtor's principal

5     about this during his 2004 examination, he initially testified

6     that the payments were for storage costs because Brite Carting

7     apparently owns property across the street from where the

8     debtor owns real property and there's a storage facility, a

9     storage shed, and he said that the debtor was storing assets

10    in Brite Carting storage shed and so the payments to Brite

11    Carting were essentially storage for rent type costs.

12         Then when I presented Mr. Love with copies of the

13    schedules and I asked him well, where are the assets that are

14    identified that you just talked about, where are they

15    identified in the schedules, he said well, I don't know what's

16    stored in Brite Carting's storage shed.   Maybe there's no

17    assets of Maribella, the debtor.   So he quickly back tracked

18    from the previous testimony.   The bottom line is the payments

19    to Brite Carting are unusual and suspect and it's to an

20    affiliated company.

21         There was a payment to the debtor's accountant, Ike,

22    Sultan & Spike [Ph.], $1,000.00, which we talked about at the

23    last hearing.   There are payments to Northfield Bank and

24    something that's identified as the Berman loan which I guess

25    Berman is a mortgagee of some type on one or more of the

1  properties.

2          THE COURT: Well, do they have a subordinated -- do

3  they have a lien -- were they paid out of your client's

4  collateral --

5          MR. SCHWARTZ: Yes.

6          THE COURT:  -- or --

7          MR. SCHWARTZ: Yes.  Mr. Berman apparently has a

8  mortgage that the debtor contends is a mortgage on one of the

9  Sovereign financed properties which is subordinated to

10  Sovereign and Mr. Berman has been getting payments throughout

11  time during the normal course every month.

12          THE COURT: While your client wasn't being paid?

13          MR. SCHWARTZ: While my client has not been getting

14  paid, exactly, Your Honor.

15          Then, Your Honor, Your Honor might recall that

16  pursuant to the court's April, I think it's 15th order

17  respecting cash collateral, the debtor was required to give

18  weekly flash reports to Sovereign. The flash report that we

19  received last week indicated that the debtor had received

20  $38,500.00 and when I questioned the debtor's principal at the

21  Rule 2004 examination about that $38,500.00 he essentially

22  said that it was a loan.  When I questioned him further the

23  loan apparently came from one of the debtor's tenant's

24  principals and Mr. Love said to me during his deposition that

25  that was a friend of his and the loan he said was not a loan

to the debtor but instead it was a loan to Mr. Love and Mr.
Love then made a loan to the debtor for $38,500.00.  Your
Honor, I've asked for the loan documents that reflect that
loan.  I haven't received them but I could certainly remind
the court about Section 363 and 364 and the debtor's required
when it uses property, when it borrows funds it needs court
approval to do so and the debtor did not come before this
court seeking approval for $38,000.00 loan.

So, Your Honor, those are examples of gross
mismanagement and I submit to the court that they cannot be
rectified, many of them, certain of them perhaps could be but
others can't be.  When I questioned Mr. Love, and I'm
representing this to the court, many of the questions I asked
him he conveniently could not answer my questions and instead
his answers were I don't recall, I have to check with the
accountants, and that was -- he answered my questions time and
time again with that type of answer yet when I asked him other
questions that he certainly thought would help him he knew the
answer and he knew the dates and times and things like that.
So I would submit that he was not -- he's not credible but I'm
not asking the court to have an evidentiary hearing to that
effect because I think that, Your Honor, the gross
mismanagement of the debtor and the incredibility of Mr. Love
specifically in the monthly operating reports and his
declaration he filed with the court in connection with use of

1  cash collateral in and of itself constitutes cause via gross

2  mismanagement under 1112(b).

3       Your Honor, that's not the end of the story with

4  respect to cause though.  Section 1112(b)(4) identifies other

5  examples of cause and another example of cause is where the

6  debtor fails to get court approval or consent for its use of

7  cash collateral and that use of cash collateral that's

8  unauthorized is substantially harmful to one or more

9  creditors. I certainly would submit to the court that that

10  applies here as well.

11       Now, the court might ask me well, at the last

12  hearing the court allowed the debtor's use of cash collateral

13  and said well, on a retroactive basis the court is going to

14  require the debtor to make adequate protection payments to

15  Sovereign.  And the court came up with the number of

16  $19,000.00 Your Honor might recall.  Well, Your Honor, the

17  debtor filed on January 11th.  The court said that the debtor

18  would need to pay Sovereign $19,000.00 for the month of

19  February and May -- and March by the end of May and would have

20  to pay Sovereign April during April which the debtor did.  The

21  debtor did make that one payment and also have to pay May in

22  May.  So we were now -- I forget today's date, May 19th or 20th,

23  and we have not received anything other than $19,000.00

24  payment.  I would also submit to the court that the debtor

25  used our cash collateral improperly without court authority or

consent during January. We've never identified that. So I

would submit to the court that even if $19,000.00 were the

correct figure, and I'll -- for purposes of discussion I will

say to the court that let's say that's correct, $19,000.00 is

the correct figure, $19,000.00 times five, Your Honor, because

we're now in May is $95,000.00. Sovereign has received thus

far to date $19,000.00. So I would submit to the court that

the debtor has used cash collateral paying Sovereign

$19,000.00. That's certainly in my view, Your Honor, is

harmful to Sovereign and certainly the debtor did not observe

its obligations under the code in using cash collateral

without a court order, without Sovereign's consent.

        In addition, Your Honor, another example of cause is

that there is substantial continuing losses to or diminution

of the estate in the absence of a reasonable likelihood of

rehabilitation. Now, Your Honor, I really -- although I'm

bringing this issue up I could see Your Honor saying well,

don't we have to have an evidentiary hearing --

        THE COURT: Are the losses reflected on the operating

reports? Is that what you're telling me?

        MR. SCHWARTZ: They are, Your Honor, but the

operating reports are very confusing and I'll tell the court

why. The operating reports do show a loss. There's no

question the operating reports show a loss since the case was

filed but I would submit that the operating reports are very

1  misleading because I think that the losses are much larger

2  than what is reflected in the operating reports.

3          THE COURT: That you're going to have to get into an

4  evidentiary hearing for that I should think.

5          MR. SCHWARTZ: I would tend to agree with Your Honor

6  on that subject but the operating reports as filed show a

7  loss, show a continuing loss and show a diminution of estate

8  value.

9          THE COURT: How much of a loss?

10          MR. SCHWARTZ: Our papers -- in our papers, Your

11  Honor, we say that it's $7,500.00.

12          THE COURT: Per month or altogether?

13          MR. SCHWARTZ: An operating loss of $85,875.00.

14          THE COURT: Since the beginning of the case?

15          MR. SCHWARTZ: Since the petition date and a negative

16  cash flow of $7,800.00.  That's what the operating reports

17  show.

18          THE COURT: Okay.

19          MR. SCHWARTZ: So in and of itself the operating

20  reports on their face I think prove my case for cause without

21  even getting into the issue --

22          THE COURT: This is a loss that occurred every month?

23          MR. SCHWARTZ: Well, the $85,000.00 is cumulative

24  total.

25          THE COURT: Cumulative but was there also a loss

1  every month?

2          MR. SCHWARTZ: Yes.

3          THE COURT: Okay.

4          MR. SCHWARTZ: Yes.

5          Your Honor, the debtor's monthly operating reports

6  do not reflect the debtor's obligation to pay Sovereign

7  adequate protection, do not reflect the debtor's obligation to

8  pay administrative costs associated with professional fees and

9  things like that.  So that operating loss I'm referring to the

10 $85,000.00 does not even take into account the $95,000.00 that

11 I just identified as well as whatever administrative costs

12 that are associated with professional fees in connection with

13 this case.

14         So, Your Honor, without even getting to an

15 evidentiary hearing or the concept of an evidentiary hearing I

16 submit that the operating reports show that cause exists to

17 convert the debtor's case.

18         Finally, Your Honor, we've identified the last

19 indicia of cause and that's under 1112(b)(4), the debtor's

20 failure -- there's actually two.  The debtor's failure to

21 comply with an order of the court.  The court entered an order

22 on April 15th requiring the debtor to, among other things,

23 serve Sovereign with an accounting by April 20th. The debtor,

24 if the court might recall, provided a very incomplete

25 accounting which only identified $25,000.00 or so of payments

notwithstanding the fact that the court had directed the

debtor to file a complete accounting. So the debtor didn't

comply with the court order plus, Your Honor, the debtor

failed to comply with its obligation to provide information to

the U.S. Trustee and that resulted in the U.S. Trustee's

filing of its own motion to convert this case.

So, Your Honor, those are six or so different

examples of cause that are enumerated under Section

1112(b)(4). I would submit that a couple of those are

certainly stronger than others. Certainly the gross

mismanagement, the unauthorized use of cash collateral, the

continuing loss, those I think, Your Honor, are clear on its

face and I don't think that the debtor has any response to

that and I don't think that there's any unusual circumstances

here which would allow the court to institute its discretion

in allowing the debtor to continue operate as a debtor-in-

possession.

THE COURT: Do you want to address the reasonable

likelihood of a plan being confirmed?

MR. SCHWARTZ: Yes, Your Honor.

THE COURT: You've seen the debtor's plan I assume.

MR. SCHWARTZ: I did, Your Honor. The debtor filed a

plan last week and essentially on its face it looks to me like

this was a form plan that the debtor took from some other case

because the plan on its face doesn't provide for any treatment

1  at all to any creditors. It's just a form plan with

2  definitions and different sections.

3         THE COURT: Well, it provides -- your client as

4  unsecured -- as unimpaired --

5         MR. SCHWARTZ: Well, that's the disclosure statement.

6         THE COURT:  -- which I found to be incomprehensible

7  unless they have the funds to cure the arrears and reinstate

8  the loan.

9         MR. SCHWARTZ: Yes, Your Honor. What I was going to

10  say is that the plan in and of itself doesn't even talk about

11  the treatment of Sovereign.  You have to look to the

12  disclosure statement for that.  So the plan would obviously

13  have to be --

14         THE COURT: You're lumped in with other secured

15  creditors who are all going to be treated as unimpaired.

16         MR. SCHWARTZ: Correct, Your Honor.  Essentially --

17         THE COURT: So what are the arrears on the Sovereign

18  loan?

19         MR. SCHWARTZ: Well, the debtor hasn't made any

20  normal monthly payments to Sovereign since -- I believe the

21  date was April of 2008.

22         THE COURT: Well, there's an argument about that but

23  what's -- according to Sovereign what are the arrears?

24         MR. SCHWARTZ: I'm just going from memory, Your

25  Honor, because I don't know the total amount but I know that

1   the payments that were required under the loan documents were

2   approximately $2,700.00 per month.

3           THE COURT: 27?

4           MR. SCHWARTZ: $27,000.00 per month.

5           THE COURT: Thousand per month.

6           MR. SCHWARTZ:  $27,000.00 per month.  Since I

7   believe it's April of 2008 the debtor has not made its normal

8   monthly $27,000.00 payment to Sovereign. The debtor is also

9   behind in payment of real estate taxes which would have been

10  paid to Sovereign as part of that $27,000.00 pursuant to an

11  escrow and so if Your Honor does the math $27,000.00 times

12  let's say about almost two years I guess that is what the

13  arrearage would be --

14          THE COURT: That's about -- that's a little under

15  $700,000.00.

16          MR. SCHWARTZ: If that's what the figure is that's

17  what it is, Your Honor.  Your Honor might recall that we

18  attached to our papers that Sovereign as a result of the

19  debtor's defaults had accelerated and ultimately filed a

20  lawsuit pre-petition and so Sovereign asserts that it is owed

21  in excess of $3.5 million.  When including the fees and costs

22  and things like that it's probably closer to $4 million.  So,

23  again, I'm not sure exactly what the arrearage number is but

24  assuming that Your Honor's math is correct and it's close to

25  $700,000.00 that would be the figure.

1       So, Your Honor, obviously the debtor's statement and

2  its disclosure statement to Sovereign is not impaired as Your

3  Honor pointed out is ludicrous and so that would be a subject

4  of litigation in connection with the loan.

5       Your Honor, essentially when you look at the

6  debtor's plan the debtor again as Your Honor pointed out

7  lumped together various secured creditors.  There's Mr.

8  Berman.  There's Northfield and there's an entity called

9  Albarra [Ph.] as well as Sovereign.  So you have four alleged

10 secured creditors and what the debtor does is it proposes to

11 pay Mr. Berman and Northfield exactly the monthly payment that

12 it was paying to them on an ongoing basis pre-petition and on

13 an ongoing basis post-petition because the debtor apparently

14 has never defaulted under either of those loans and the debtor

15 continues to just make those payments and neither Mr. Berman

16 nor Northfield never objected or raised an issue because

17 they've never had a payment default.  So they would be I guess

18 unimpaired.

19      Then you have Albarra who the debtor says is owed

20 somewhere in excess of $1 million.  The property, the debtor

21 contends, is worth like 350.  So the debtor proposes to give

22 up Araback [Ph.] its property and then walk away and the

23 deficiency claim would essentially be waived.  I'm not sure

24 what Araback's position is on that one but I would assume that

25 unless Araback is a friend of Mr. Love which according to his

deposition or his Rule 2004 examination testimony he's got a
lot of friends who seem to work with him and I assume it's
because there's a lot of cash going back and forth here but
that's speculation on my part, Your Honor.

Then you have unsecured creditors and there's barely
any and that is in particular set forth in the debtor -- in an
attachment to the debtor's plan.  There's only a few.  There's
only like four or five unsecured creditors. So at the end of
the day, Your Honor, and those unsecured creditors total
$125,000.00.  One of them is $100,000.00 owed to a
gentleman -- the last name, Your Honor, according to the list
that's attached to the debtor's plan, his -- Mr. Salamon
[Ph.], Richard Salamon, and Mr. Love testified during his 2004
examination that Mr. Salamon is a good friend of Mr. Love and
apparently made a loan.

So you have five or so unsecured creditors.  You
have four secured creditors and it looks like everybody is
working with the debtor and everybody is happy except for
Sovereign.  So when you take a step back and you look at what
happened in connection with this case, Your Honor, it's very
apparent that the debtor filed its Chapter 11 petition as a
result of the two party dispute with Sovereign because it was
unhappy with the state court's judgment and there's a plethora
of case law, Your Honor, which talks about a bad faith filing,
which talks about when there's a two party dispute.  That's

1  not proper bankruptcy -- that's not a proper reason to file

2  bankruptcy, and I submit to Your Honor that that also

3  constitutes cause of the conversion of this case to a Chapter

4  7.

5      So, Your Honor, Your Honor asked me the question

6  about the debtor's plan. I submit that the plan would be

7  heavily contested. I submit that the plan cannot be confirmed

8  over Sovereign's consent and more importantly --

9      THE COURT: Well, you can't be concerned as drafted.

10  It can't be confirmed because the treatment of Sovereign --

11  the idea that they're going to be able to cure and reinstate

12  your loan is not -- is ludicrous.  They can't even pay the

13  adequate protection payments apparently.

14      MR. SCHWARTZ: Exactly, Your Honor.  So I submit the

15  plan is unconfirmable on its face as a matter of law.  So

16  again, Your Honor, the debtor cannot meet its burden even if

17  we were ever to get to the issue of whether the debt --

18  whether unusual circumstances are present.  The debtor can

19  never even get to its burden under 1112(b)(2).

20      In addition, Your Honor, the debtor attaches to its

21  plan projections.  What's interesting with respect to those

22  projections, Your Honor, is that -- and this is -- I don't

23  know if Your Honor got a chance to take a look at those

24  projections but those projections on its face, Your Honor, are

25  totally inconsistent with the debtor's monthly operating

1  reports.  I don't know if Your Honor has that -- I'm sorry.  I

2  don't know if Your Honor has those projections in front of

3  you.

4         THE COURT: They're attached to the disclosure

5  statements?

6         MR. SCHWARTZ: They're attached to the -- yes, the

7  disclosure statements and it's actually the second to last

8  page.

9         THE COURT: Second to last page of the named

10 documents or of the --

11        MR. SCHWARTZ: You have the disclosure statement and

12 you have attachments and it's the second to last page of the

13 attachments to the disclosure statement.

14        THE COURT: Okay.

15        MR. SCHWARTZ: Your Honor, first of all, the debtor

16 has a protection and anticipates that it will have a steady

17 rental income stream of $81,000.00 a month starting in May of

18 2010.  Your Honor might recall that Mr. Love filed a

19 declaration with this court on April 20th in response to

20 Sovereign's motion to use of cash collateral and in that

21 declaration or attached to that declaration Mr. Love set forth

22 what the debtor's anticipated rent would be for the months of

23 February, March and April of 2010 and then set forth what the

24 actual rent roll was for February and for March of 2010.  The

25 total rents for those months is approximately $60,000.00 each

1  month. So I'm not sure where the debtor is getting $81,000.00

2  when the declaration that was just filed with this court less

3  than a month ago says for the first few months of the case the

4  debtor was receiving a total of $60,000.00 in rental revenue.

5        Then you go down to the line items below, expenses.

6  The debtor has obviously in its projections underestimated its

7  expenses because if Your Honor looks down at the column under

8  rental expenses that says outside services. I'm not sure

9  exactly what that means but the -- it's a steady number of

10 $6,800.00 per month. I assume what that is is debtor's

11 principal salary, Maria Love's salary, things like that

12 because it's nowhere else in this -- in the expense items.

13 But if Your Honor would look back at the monthly operating

14 reports for February and March the debtor also has line items

15 for outside services under the expense column and the debtor's

16 average for outside service expenses are $16,000.00 per month.

17 So how do we get from $16,000.00 over the last couple of

18 months to $6,800.00 on a projected going forward basis. The

19 numbers just appear very inconsistent.

20        Going down even further under rental expenses, Your

21 Honor, the debtor has in its projections attached to its

22 disclosure statement a line item called repairs and

23 maintenance and the debtor anticipates that it will have

24 $500.00 per month of rent -- of repairs and maintenance

25 expenses. Well, Your Honor, in the month of February of this

1  year on a post-petition basis the debtor filed a monthly

2  operating report which showed that it had repairs and

3  maintenance costs of $11,000.00 per month.  So obviously the

4  numbers appear to be extremely inconsistent with one another.

5      These are just examples, Your Honor, and I haven't

6  probed these expenses at all.  Mr. Love started his Rule 2004

7  examination.  We never even got to this because he came late

8  in the day. The debtor's counsel wasn't available until later

9  in the day so we adjourned into a further date.  But on its

10 face, Your Honor, these projections appear to be unreasonable

11 and they're not something that the court at a -- that the

12 debtor would not be able to confirm a plan based upon these

13 projections.

14     What these projections also show, Your Honor, is

15 that during the first two months of the case the debtor

16 obviously increased its expenses so that it would have a

17 reason why it didn't have to pay Sovereign anything.

18 Obviously it was making all these improper payments for post-

19 petition -- for pre-petition expenses and payments to Mr. Love

20 and Mr. Love's credit cards, et cetera, et cetera.

21     So, Your Honor, with all that having been said, I

22 submit to the court that there is a substantial basis, there's

23 a very substantial basis for converting this case to a Chapter

24 7 because cause without question I submit exists.  Your Honor,

25 the case law is clear that where there are numerous improper

transfers by a debtor that the court should look very
suspiciously at those transfers because if the court doesn't
convert the case then those transfers might never be
investigated and returned to the estate. And I submit to the
court that I haven't even brought up Mr. Love's testimony
concerning pre-petition payments made by the debtor because
I'm focusing on post-petition but I submit to the court that
there is numerous, numerous pre-petition improper transfers.
In fact, one of the debtor's bank account statements, and the
debtor had more than one bank account, showed that the debtor
spent I believe it was in excess of $140,000.00 in less than a
year and that money disappeared and we don't even know where
that went. There was numerous payments to Mr. Love, et
cetera, and so, Your Honor I would -- and all the while
Sovereign was receiving nothing, Your Honor.

So I would submit to Your Honor that to not convert
this case would allow the debtor to possibly move forward and
those improper transfers to never be investigated which I
submit to Your Honor is improper. Thank you, Your Honor.

MR. MAROTTA: Good afternoon, Your Honor. Counsel
really brings up except with this -- except with respect to
discussion of the plan issues in support of his burden to show
cause that had already been raised at the last appearance and
that Your Honor addressed and that the debtor has corrected.
Since --

1      THE COURT: Wait.  You corrected all of the problems

2  identified in the motion, every single one?

3      MR. MAROTTA: Yes, Your Honor.

4      And if I could also bring the court up to date on

5  all of the efforts that the debtor has made.  I outlined some

6  of them in our motion papers but yes, the Adamo lease has been

7  rejected.  The Adamo lease --

8      THE COURT: Are you going to get back the money you

9  paid post-petition from them?  Wasn't that gross mismanagement

10 to pay them post-petition rent on a lease that was -- that you

11 were -- for property that wasn't being used and that you were

12 going to reject?

13     MR. MAROTTA: Well, no, Your Honor.  The reason that

14 the lease existed in the first place was that it's adjacent to

15 one of the debtor's properties. It was being renovated and it

16 was renovated and the bankruptcy interceded.  So the debtor

17 has decided that it can't continue to pay that lease and

18 continue to develop that property.

19     THE COURT: Why did they pay -- how many months,

20 three months of post-petition rent on this property?

21     MR. MAROTTA: I don't know if it was three or if it

22 was two but --

23     THE COURT: Why did they pay post-petition rent on

24 this property if it was a property that they didn't need to

25 use?  Isn't that gross mismanagement?

1          MR. MAROTTA: Well, they had an option to purchase

2     the property.  They could have developed the property and then

3     sold it as an asset of the estate but it was not feasible to

4     do so but it wasn't gross mismanagement.

5          THE COURT: Well, particularly since the bankruptcy

6     code provides that rent under leases has to be paid during --

7     currently within the first sixty days.  So you would

8     essentially have sixty days to make that determination but you

9     didn't.  You paid the rent and now you've decided to reject

10    the lease and so that's money that could have gone to pay

11    other obligations and is out the door.  Why is that not gross

12    mismanagement?

13         MR. MAROTTA: Well, the debtor did it while it could

14    to meet with the creditor before terminating the lease also

15    and we did have a sit down meeting with that creditor and his

16    attorney in an attempt to try to minimize the damages that

17    that creditor would seek against the DIP.  I'm not sure how

18    successful we were but we did have a meaningful conversation

19    with counsel and --

20         THE COURT: But you're not answering my question.

21         MR. MAROTTA: But that's why the debtor continued to

22    make a couple of lease payments after -- post-petition because

23    that meeting had not taken place.  The decision that -- for

24    example, we requested that the -- at that meeting we requested

25    the creditor waive rent for a period of time. In that scenario

1  we would have presented to the court a new proposed lease with

2  that creditor where we did have the opportunity to develop --

3  to finish the build out of the property and perhaps sell it

4  off as an asset but he absolutely refused to entertain that

5  notion and we had reason to believe that he might.

6          THE COURT: Particularly since he's been getting

7  rent.  So why would he agree not to take rent?

8          MR. MAROTTA: Well, he has also been paid for quite

9  some time on that property and improvements have been made.

10 We thought that he would deal with us in good faith and we did

11 have like I said a meaningful meeting but it did not come to

12 fruition.

13         THE COURT: Let's go back to the statute.  You would

14 have to show -- assuming that I -- that it is -- that I

15 conclude that there has been gross mismanagement in paying the

16 principals and American Express bill and making payments to

17 cash to the tune of $16,000.00 during the course of the case

18 to the various other payments that have been made to insiders

19 during the course of this case.  Assuming that I determine

20 that that is gross mismanagement then in order to prevent the

21 case from being converted because it's mandatory, the

22 conversion is mandatory at that point.  You'd have to show

23 that number one, circumstances, unusual circumstances that you

24 have to specifically identify that shows that the relief is

25 not in the best interest of creditors and the estate and you

would have to also show that the act or omission is one for which there exists a reasonable justification and that will be cured.  Now, you're arguing about the -- your argument I guess is that some of the -- or maybe it would be best to characterize this a most important of these payments that were improperly made have been returned.  So that that is a -- you're arguing that that has been cured but you can't tell me that there's a reasonable justification for the principal to have paid his own American Express bill with estate money post-petition.  There's no reasonable justification for that.

MR. MAROTTA: All of those -- we list all of his expenses that were paid by the DIP in those several weeks following the filing.

THE COURT: It went on for longer than several weeks but yes.

MR. MAROTTA: Well, there weren't any in the month of April and there haven't been any in the month of May.  So --

THE COURT: But there was no -- but we have to go by what the statute says.

MR. MAROTTA: I understand, Your Honor.  So the reasonable justification was that the debtor believed that paying salary to Mr. Love in accordance with what they had been doing in the past --

THE COURT: Paying his own American Express bill?

MR. MAROTTA: It's part of his salary.  He took it as

1  a payment of salary.

2        THE COURT: He was paying his own American Express

3  bill. The debtor is Mr. Love. He's a hundred percent owner

4  of the company; right?

5        MR. MAROTTA: Yes.

6        THE COURT: So paying his -- he believed that paying

7  his own American Express bill was in the best interests -- you

8  think that was somehow justifiable?

9        MR. MAROTTA: Well, he believed it to be reasonable

10  at the time and he corrected it and there has not been any

11  payments to him even before this -- the last court appearance

12  here and since the issue has been raised he has paid back into

13  the -- the DIP has reclaimed from its principals over

14  $38,000.00.

15        THE COURT: And that I guess goes to this -- the

16  thing that was testified about in the 2004 exam. Mr. Love

17  took a loan or maybe it was not a loan from a friend and did

18  he make a loan to the debtor.

19        MR. MAROTTA: It's not a loan to the debtor and he

20  testified to that at the examination. So I'm not sure why

21  counsel would stand here and say otherwise.

22        THE COURT: He says it's a loan to himself?

23        MR. MAROTTA: It's a loan that he borrowed from a

24  friend.

25        THE COURT: So did he -- how did the loan get to the

1  debtor?  How did the money get to the debtor then?  Is this a

2  donation?

3          MR. MAROTTA: Yes.

4          THE COURT: Okay.

5          MR. MAROTTA: He has not expectation of repaying it

6  which he testified to.  He is not taking a administrative

7  super priority claim or anything to that effect or seeking

8  same.

9          THE COURT: The next question I would have is this

10  plan is unconfirmable on its face it seems to me.

11          MR. MAROTTA: Mr. Gabor will have to address that

12  issue.  I can address all the issues regarding cause but if

13  you'd like to hear Mr. Gabor he'll talk about the plan but I

14  would like to address some of the things that were raise

15  during Mr. Schwartz's motion.

16          THE COURT:  Such as what?

17          MR. MAROTTA: Well, the -- for example, that there's

18  a continuing loss to the estate.  The debtor has made the

19  April payment that was directed by Your Honor.

20          THE COURT: There was $85,000.00 operating loss

21  cumulatively since the beginning of this case not including

22  the payments that were required to be made to Sovereign Bank

23  and have not been made.  If you add that in that's

24  $95,000.000.  That's an aggregate loss of $180,000.00.

25          MR. GABOR: Your Honor, may I address those points?

1    THE COURT: Yes.  And there's been a loss every

2  single month.  So how is that not a continuing and substantial

3  loss to the estate?

4    MR. GABOR: Your Honor, we agree that the cash loss

5  is approximately $7,800.00.

6    THE COURT: Well, that's an operating loss; right?

7    MR. GABOR: Correct.  Okay.  So the loss -- and

8  that's for the period of time --

9    THE COURT: Correct.

10    MR. GABOR:  -- that the debtor has been in Chapter

11  11.  The eight something thousand dollar loss includes

12  depreciation expense which is a non cash item.  This is a real

13  estate entity. Depreciation is going to be there.  It's going

14  to be the biggest expense and it's not reflected --

15    THE COURT: How much of that is depreciation?

16    MR. GABOR: $80,000.00.

17    THE COURT: Eight of the 85 is depreciation?

18    MR. GABOR: Well, if it's $85,000.00 loss and the

19  cash loss is $7,800.00 the difference is all depreciation.

20    THE COURT: But then you have to add in the

21  $95,000.00 that you haven't paid to Sovereign.

22    MR. GABOR: I'd like to address that, Your Honor,

23  starting with January.  In the January operating report there

24  was a loss of approximately $44,000.00.  The rents had already

25  been collected pre-petition for January.  So that January is

1  not properly reflected because you have expenses but you have

2  no income.  So if you start with the $7,800.00 loss I submit

3  that to that we should add the $44,000.00 in expenses because

4  if you had the income in there, if you had a proper accrual

5  and a matching of income and expenses then you would not have

6  a $44,000.00 loss for January.  So I submit that that should

7  be added to the number.

8          The loss also reflects payments of rent of

9  $18,000.00 to Adamo.  Those payments have ceased.

10          THE COURT: But they're gone. They're not

11  recoverable?

12          MR. GABOR: Right.  But if we're talking about the

13  loss as indicative of whether a plan could be proposed --

14  forget about the Sovereign issue on the plan right now, but to

15  show that there is a cash flow that can fund a plan.

16          THE COURT: The cash flow is one thing but you also

17  have to have -- make an operating profit --

18          MR. GABOR: Right.  And I'm --

19          THE COURT:  -- on a non cash basis as well.

20          MR. GABOR: And what I'm trying to do is recast the

21  operations for the time period that we've been in bankruptcy

22  so that the court or a reader of the disclosure statement can

23  say you know what, while there was a loss I understand that if

24  we recast it there is an operating profit, there is a cash

25  flow profit and that can fund the plan.

1          THE COURT: But I don't think there is.

2          MR. GABOR: That's why I'd like to --

3          THE COURT: I think there's not.

4          MR. GABOR: That's why I'd like to go through this

5    exercise if Your Honor says okay.

6          So we have the $18,000.00 payments to Adamo which

7    has been deducted. It's included in the $7,800.00 loss but

8    that doesn't exist any more.  So on a going forward basis, on

9    a looking forward basis there's that much more profit there.

10   So I submit that that should be added to the loss.

11         The debtor also made an adequate protection payment

12   in April of $19,000.00.

13         THE COURT: But that's not reflected on the operating

14   statement.

15         MR. GABOR: That was reflected in the April operating

16   statement.

17         THE COURT: Is that correct?

18         MR. GABOR: In May 2000.  Are you asking me, Your

19   Honor?

20         THE COURT: I'm asking the Sovereign lawyer.

21         MR. SCHWARTZ: Yes, Your Honor.  It's reflected in

22   the April report that was filed I guess last week, yes.

23         THE COURT: But the amount that is owed and has to be

24   paid by the end of May isn't reflected?

25         MR. GABOR: That's correct and I'll address that

also.

So if you start with the $7,800.00, add that to $44,000.00 from January, add that to $18,000.00, add that to $19,000.00 in the payment from April that equals a profit of $73,000.00.

THE COURT: And if you add back a lot of other things then that would increase the profit even more --

MR. GABOR: Please, Your Honor.

THE COURT:  -- and if my grandmother had wheels she'd be a tea cart.

MR. GABOR: With the $73,000.00 then if you take the $19,000.00 of adequate protection payments and there's three-and-a-half months worth -- I'm sorry, three months at $57,000.00 so you have $73,000.00 minus the $57,000.00 leaves a profit of $16,000.00 for the three-and-a-half month period and that's indicative of going forward.

I'd like to take it one step further.  Sovereign complains about payments made to -- to or on behalf of Mr. Love.  He states on one hand these are improper payments and he states on the other hand that there's a loss.  To truly gauge what the debtor can do at this point going forward we have to segregate those payments and say that well, if they were improper let's not look at them from a cash flow basis going forward and what the debtor tried to do was to show what the principal did, Mr. Love, in order to show what the debtor

1  can do he paid back voluntarily $39,000.00 to cover those

2  expenses.  So by adding back the $39,000.00 it's almost as if

3  those expenses were not there.

4         So if we take the $16,000.00, add that to $39,000.00

5  we have a net profit on a cash flow basis indicative of what

6  the debtor can do going forward of $55,000.00 for the three-

7  and-a-half month period and that's after paying Northfield,

8  paying Sovereign $19,000.00 a month on adequate protection and

9  paying all the other expenses.  So I submit as a recast profit

10 and loss statement --

11        THE COURT: This is not something that I am going to

12 be able to agree to at this point.  You're going to -- we

13 would have to have a hearing for me in order to be able to

14 consider and accept the assumptions that you want me to make

15 about what your operation is going to be going forward.

16        But tell me about how you would -- what -- why this

17 plan isn't just a form that is -- has no chance of

18 confirmation.  Your treatment of -- you say you are going to

19 treat Sovereign as unimpaired. Your description of how they're

20 going to be treated in the disclosure statement is not a

21 treatment that would constitute being unimpaired. You say

22 you're going to pay their principle and interest going

23 forward.

24        MR. GABOR: That's correct, Your Honor.

25        THE COURT: That's not unimpaired.  That's not

treating a creditor as unimpaired.  To treat a creditor as
unimpaired you'd have to complete -- you have to reinstate the
loan and pay it according to its contractual terms.  You'd
have to pay all the arrears and at confirmation at one time.

MR. GABOR: Your Honor, I had conversations with
counsel for Sovereign and we spoke about a plan and what
Sovereign may or may not agree to.  This is -- what was
proposed except for the period of time was what counsel and I
had discussed.

THE COURT: But this is phoney.  This isn't
unimpaired.  That's not unimpaired.

MR. GABOR: Your Honor, I didn't expect the plan to
go through on the first time.

THE COURT: Well, you don't file a plan that says
that somebody is unimpaired when they patently are not.

MR. GABOR: Your Honor, I would --

THE COURT: Based on that plan I can't -- I couldn't
assume -- that's not a plan that would -- that could be
confirmed.

MR. GABOR: Your Honor --

THE COURT: I'd give that plan no weight whatsoever.

MR. GABOR: I would have to amend the provisions and
come up with a treatment for Sovereign.

THE COURT: Well, but why -- why would I give that
plan any weight?  Why wouldn't I just dismiss this case right

1  now or convert this case right now because there's clearly

2  been gross -- there's clearly been mismanagement.  There's no

3  reasonable justification and there's -- well, whether there's

4  reasonable justification or not and whether or not there is --

5  whether or not you have cured some or all of these supposed --

6  these items there's no -- there's no plan that's been proposed

7  that has a hope of confirmation because this plan is

8  unconfirmable on its face.

9       MR. GABOR: Your Honor, we -- our plan proposes that

10  Sovereign will get everything that's due them.

11       THE COURT: No.  Your plan proposes that they will be

12  unimpaired and they're not unimpaired the way you're treating

13  them under the plan.

14       MR. GABOR: Well, then --

15       THE COURT: If a treatment that you're proposing for

16  them is characterized as unimpaired so that you won't have to

17  obtain and vote but they're not unimpaired because you're not

18  curing and reinstating the loan.

19       MR. GABOR: So while they may be unimpaired they are

20  still getting everything that would be due them --

21       THE COURT: But you can't confirm this plan without

22  their consent.

23       MR. GABOR: And ultimately I'm hoping to get their

24  consent.  I did have conversations with --

25       THE COURT: But they're here trying to convert this

1  case.  Obviously you don't have their consent.

2        MR. GABOR: Well, at the time --

3        THE COURT: We can ask counsel whether he consents,

4  whether his client consents.

5        MR. SCHWARTZ: No, Your Honor.

6        THE COURT: So why wouldn't -- why isn't that a basis

7  for me to convert this case today?

8        MR. GABOR: Well, I would like the opportunity to

9  amend the plan and put in something that we can try to get

10 confirmed.

11       THE COURT: Well, then why would I give you that

12 opportunity?  This was that opportunity.  This is the hearing

13 on the motion.

14       MR. GABOR: Well, because it's not the hearing on the

15 plan.

16       THE COURT: But the plan -- you have to have -- in

17 order for me to conclude that I don't have to -- that I have

18 discretion to not convert this case you would have to show

19 that there's a reasonable likelihood that a plan will be

20 confirmed within the time frames established in Section

21 1121(e) and 1129(e) of this title or with -- or if these

22 sections do not apply within a reasonable period of time.

23       MR. GABOR: Your Honor, the debtor has done

24 everything that has been asked of him and he's cleaned up

25 every complaint that's been made. He's complied with all of

1  the requests of the U.S. Trustee. Anything that's deemed to

2  be improper he's cleaned up. He's repaid voluntarily. He's

3  done everything so that he can take advantage of the second

4  chance that bankruptcy enables a person to take advantage of.

5  He would like to go forward --

6         THE COURT: I'm concerned that this debtor still

7  thinks that he's entitled to treat this entity as his personal

8  ATM.

9         MR. GABOR: Your Honor, that's just not the case.

10  Whatever it may have appeared to happen at the beginning since

11  the last court date he's not done anything of the sort.

12         THE COURT: Who's going to be given the right to

13  investigate and prosecute the potential avoidance action

14  against -- that might arise or who's going to look into the

15  pre-petition transfers to the debtor's insiders and determine

16  whether any or all of them were avoidable?

17         MR. GABOR: Well, Sovereign has been looking into it.

18  They started with the 2004 examination, Your Honor.

19         THE COURT: Well, in the absence -- but the debtor --

20  there's no creditors' committee here and the debtor-in-

21  possession is not going to do it.

22         MR. GABOR: Your Honor, we'll look into it. I've not

23  seen the transcript of the 2004. I was not there.

24         THE COURT: You're obviously not going to look into

25  it. We're talking about looking into causes of action against

1  your own client.

2        MR. GABOR: Well, no.  The debtor is our client, Your

3  Honor, not the principal.

4        THE COURT: Right.  But you take your instructions

5  from Mr. Love.

6        MR. MAROTTA:  For example, Your Honor, we are

7  looking into it.  Counsel at the 2004 examination was asking

8  about -- he mentioned some $140,000.00 in payments that had

9  been made.  This was a separate -- it's a separate account

10  that had been set up by the debtor almost a couple of years

11  ago that came from the proceeds of the Northfield loan.  All

12  of these proceeds were used for the reconstruction of a

13  building at 2531 Victory Boulevard.  There would be

14  documentation to support this work.  There would be work

15  permits that are matters of public record.  There would be the

16  actual work that was done.  There would be receipts.

17        In the event that there is somewhere in that

18  accounting some improper transfers that's an issue that the

19  debtor can look at and has shown the ability to look at a

20  transfer of that in its normal course of business it would not

21  have looked at but now that it's in bankruptcy has -- the DIP

22  has taken the -- made the effort to look at these payments to

23  Mr. Love, for example, and to find that Mr. Love should pay

24  the --

25        THE COURT: That's because he was told to do so and

1  not because -- not because he in his, you know, because he

2  undertook in the exercise of his fiduciary duty to do that.

3  He was under pressure by the U.S. Trustee and the creditor.

4  He wasn't doing that on his own.

5      MR. MAROTTA: But he has cured it within a reasonable

6  time and $10,000.00 a month salary would not be an

7  extraordinary salary for a person who's a community business

8  leader like this person is and who has -- is managing $9

9  million worth of real estate.

10      THE COURT: Is he receiving any salary at the moment?

11      MR. MAROTTA: No.  He hasn't because there hasn't

12  been money to take it and it only would be coming from the

13  Northfield account as Your Honor directed and so he hasn't.

14  He's agreed to waive his April salary and he's agreed to waive

15  his May salary.

16      THE COURT: He has no authority to pay himself

17  anything at the present time.  You understand that?

18      MR. MAROTTA: Well, Your Honor had that he can only

19  pay himself whatever was in the budget out of the Northfield

20  funds I believe but then again he hasn't made any payments to

21  himself in the entire month of April or May.  So if Your Honor

22  directs that no further payments then -- so be it.

23      THE COURT: Let me hear from counsel for Sovereign.

24      MR. MAROTTA: I didn't really get a chance to address

25  any of the points that they had raised though and I would like

1  the chance to do so.

2        THE COURT: Well, you told me that your client has

3  cured everything. So that is -- doesn't that address the

4  point?

5        MR. MAROTTA: Certainly this is in our motion papers

6  but as Your Honor knows they did set up a segregated account,

7  accounts for Northfield and Sovereign as Your Honor directed.

8  They did establish a budget. Despite what counsel says they

9  did provide an accounting of the January expenses building by

10  building as Your Honor directed.

11        In our motion papers we attached -- in our

12  objections rather we attached a full ledger sheet of all

13  disbursements from January 11th forward with a description of

14  each item as Exhibit A.

15        THE COURT: Mr. Marotta, I don't think I need to hear

16  any more but thank you.

17        MR. MAROTTA: Okay.

18        THE COURT: I'll hear from the Sovereign attorney

19  briefly.

20        MR. SCHWARTZ: Your Honor, I'll just address a couple

21  of things that counsel for the debtor said and then I'll give

22  a quick sort of closing statement.

23        Number one, we were talking about whether or not the

24  debtor has suffered substantial and continuing losses or

25  diminishment of value to the estate and counsel talked about

most of this was depreciation.  Well, I just looked at the

April monthly operating report.  Total depreciation is listed

as $63,848.00.  So it's not the whole thing at $63,848.00.

Counsel talked about he did some math and he was

hard to follow and as George Bush once said fuzzy math, and I

think that's what he was doing.  He talked about there were

expenses in January which he wanted to back out because there

was no rents in January. Well, Your Honor, what's interesting

is that the debtor in its projections talks about $81,000.00 a

month.  The debtor in its declaration filed with this court

talked about $60,000.00 a month.  One would think that the

debtor received somewhere between $60,000.00 and $81,000.00 in

January for rents yet on the day that the debtor filed his

bankruptcy petition the debtor filed schedules and those

schedules show that the debtor had in his account $450.00.  So

where did $80,000.00 or $60,000.00 disappear to when all the

expenses were paid on a post-petition basis.  Very interesting

question, Your Honor.  That was Sovereign's cash collateral, a

portion of that.  Disappeared without a trace.

The $38,500.00 loan contribution, whatever you want

to call it that Mr. Love made to the debtor in April that

counsel would like to back out now well, that's already

accounted for in the April monthly operating report.  So the

debtor wants to back it out and say that you have to now say

that $38,000.00 should come out which would give the debtor

1    more of an operating profit.  Well, it's already accounted for

2    in April and so if you back it out again you've now backed it

3    out twice, Your Honor.

4         Again, Your Honor, I'll point Your Honor to the

5    statute and I know Your Honor understands that.

6         THE COURT: Okay.  I think the way I'm coming out on

7    this is that we need to have an evidentiary hearing because I

8    think -- I would like to have a better record than this to

9    decide this case.  All right.

10        So I can give you some time on June 1st.  I can give

11   you most of the day on June 1st.  Are we be okay with that?

12   Starting at 10:00 in the morning.  And I'll direct you to file

13   a joint pretrial order by close of business a week from

14   tomorrow.  June 1st is a Tuesday.

15        MR. SCHWARTZ: Your Honor, unfortunately June 1st

16   doesn't work for us.  Does Your Honor have any other time that

17   week?

18        THE COURT: No, I don't have any other time that

19   week.

20        MR. SCHWARTZ: Is there any time before that week?

21        THE COURT: I think we have a trial all week.

22                    [Pause in proceedings.]

23        THE COURT: I could give you some time on the 28th but

24   it would not be a full day.  So I don't know whether there is

25   any point in doing that.

1    MR. GABOR: And I'm not available that day, Your

2  Honor.

3                    [Pause in proceedings.]

4    THE COURT: I could give you June 11th which is a

5  Friday all day.  I could give you June 18th.

6    MR. SCHWARTZ: June 11th works for us, Your Honor.

7    THE COURT: What's that?

8    MR. SCHWARTZ: June 11th works for us.

9    MR. GABOR: June 18th would be better for us, Your

10  Honor.

11    MR. SCHWARTZ: I don't know about working better but

12  I know the statute does talk about time frames for a motion to

13  convert and requires that a motion be heard and decided within

14  certain time frames.

15    THE COURT: What is the time frame that's required?

16    MR. SCHWARTZ: The statute, Your Honor, 1112(b)(3)

17  says that the court shall commence the hearing on a motion

18  under subsection not later than thirty days after the filing

19  of the motion, shall decide the motion not later than fifteen

20  days after commencement of such hearing.

21    THE COURT: Okay.  So we -- so it has to be decided

22  not less than fifteen days after today's date?  When was --

23    MR. SCHWARTZ: That's what the statute says, Your

24  Honor.  Obviously if we consent then that time frame can

25  change and we certainly -- I'll try to be reasonable here so I

1    just don't want it to go out until the end of June because --

2              THE COURT: Okay.  Well, what's the time frame that

3    you think that it needs to be decided?  When -- if you say it

4    has to be -- the hearing has to be commenced within thirty

5    days after it's filed.  So it was filed -- your motion was

6    filed on the 28th of April.

7              MR. SCHWARTZ: Well, we commenced it today.

8              THE COURT: And we commenced it today.  And you feel

9    that it has to be decided within fifteen days of the day that

10   it's commenced.  If that's the case then I'll have to put it

11   on for June 1st --

12             MR. GABOR: Would it be commenced or completed, Your

13   Honor?

14             THE COURT: -- which is my first early available

15   date.  I'm sorry.

16             MR. GABOR: Would it be fifteen days after it's

17   commenced or completed the hearing?

18             THE COURT: What's -- what section of the statute is

19   it, Counsel?

20             MR. SCHWARTZ: I'm sorry.

21             THE COURT: What section of the statute is it?

22             MR. SCHWARTZ: It's 1112(b)(3), Your Honor.

23             THE COURT: Okay.  Well, you -- the motion is to be

24   decided within fifteen days.  So I can hear you on the 1st.

25   That's my next available date.  I can hear you the 28th and I

1  can hear you the 1st.  Those are my next two available dates

2  within the fifteen day period.

3          MR. SCHWARTZ: Your Honor, I'll move things around on

4  my calendar and I'll be here on the 1st then.

5          THE COURT: Okay.  All right.  So -- and I'm

6  directing you as I said to file a joint pretrial order by the

7  close of business on May 27th.

8                    [Pause in proceedings.]

9          MR. CURTIN:  Your Honor, will you carry our motion

10  pending the outcome of this motion?

11          THE COURT: Yes.  What's -- did your office have a

12  position on any of this?

13          MR. CURTIN: Your Honor, we were prepared to consent

14  to a short adjournment.  I'm not going to get into the reasons

15  why but we may take a position at this hearing but I'm not

16  quite sure yet.  So if you would just carry our motion. We may

17  just let the parties litigate it.

18          THE COURT: Well, let's start this at -- I'm prepared

19  to start it at nine or 9:30.

20          MR. SCHWARTZ: 9:30 looks better since I"m coming

21  from New Jersey, Your Honor.

22          THE COURT: So I'll start it at 9:30.

23          MR. MAROTTA: Do you intend to continue through the

24  entire day, Your Honor?

25          THE COURT: Yes.

1    MR. MAROTTA: What time will we be concluding?

2    THE COURT: I don't know.  Maybe we'll just have to

3 keep going until we finish.  If this has to be decided within

4 fifteen days of the date that the hearing was commenced then

5 we may just have to keep going until we finish that day.

6 We'll have to see how it goes.

7    MR. MAROTTA: I'd just like to say that I have an

8 election that night that I need to be present for.

9    THE COURT: I didn't write the statute.

10    So joint pretrial order.  Does anybody have any

11 questions about a joint pretrial order?

12    MR. SCHWARTZ:  Is there a form on the website, Your

13 Honor?

14    THE COURT: I think there is.  My form is on the

15 website.

16    MR. SCHWARTZ: Thank you.

17    THE COURT: Does anybody have any questions?

18    MR. SCHWARTZ: The only other issue, Your Honor, is

19 that there's another motion on the calendar.  It's our motion

20 for stay relief or alternatively for a determination of the

21 stay that doesn't apply.

22    THE COURT: Just let me ask you one question about

23 this.  Why is it -- why do you -- why is it important to you

24 to have the judgment entered?  What effect does that have in

25 your mind on your claim or why does that -- what's the reason

1  for that, for you wanting that?

2         MR. SCHWARTZ: Because, Your Honor, I feel that the

3  liquidation of our claim is important given the fact that the

4  debtor --

5         THE COURT: But the claim has already been

6  liquidated.  So what's the point of -- if it can be -- the

7  claim has been -- the decision has been made by the court. So

8  what is the entry of the judgment add in your view?

9         MR. SCHWARTZ: Well, the opinion, Your Honor, doesn't

10  liquidate the amount of the judgment. The opinion directed the

11  parties to submit an order which would become a judgment which

12  Sovereign did which the court entered.

13         THE COURT: The court signed it.

14         MR. SCHWARTZ: The court signed it. The debtor

15  contends that that was signed the day after the petition was

16  filed.  So it wasn't formally entered on the docket in the

17  state court.  So the debtor is contending that our claim is

18  one number. We obviously disagree wit the debtor's contention

19  and the debtor sets forth a number in its plan which is lower

20  than the number that we contend.  So we --

21         THE COURT: So you're saying that I would lift the

22  stay so that you could file -- have a judgment filed to

23  preclude the debtor from challenging that -- the amount of the

24  number.

25         MR. SCHWARTZ: Yes.

1            THE COURT: So why would I -- if you can't challenge

2 it -- if they can't -- if they can challenge it now why would

3 I allow you to lift the stay to preclude them from challenging

4 it?

5            MR. SCHWARTZ: I don't believe they can challenge it,

6 Your Honor.

7            THE COURT: Well, then what's what point of lifting

8 the stay?

9            MR. SCHWARTZ: The whole purpose, Your Honor, is I

10 believe the debtor filed this bankruptcy in the first place

11 because as Mr. Love testified during his Rule 2004 examination

12 he believed that the state court was wrong in its decision.

13 Sovereign filed an action. The debtor asserted a counterclaim

14 based upon lender liability and other things, the same

15 allegations that the debtor makes in its papers in response to

16 our motion to convert and now the debtor or this court is

17 going to seek to relitigate those same issues that they

18 decided.

19            THE COURT: But is that -- what precludes them from

20 doing that, what principle of law would preclude them from

21 doing that?

22            MR. SCHWARTZ: I believe that collateral estoppel

23 does, Your Honor.

24            THE COURT: So collateral -- you believe that

25 collateral estoppel applies even though the judgment was

1  signed -- that fixes the amount of the claim was filed post-

2  petition -- was signed post-petition.  You believe that the

3  collateral estoppel still applies?

4         MR. SCHWARTZ: Yes, I do, Your Honor.  I believe that

5  it does because of the opinion.  The issue was fully and

6  finally decided and I also believe that the Rooker Feldman

7  doctrine prevents --

8         THE COURT: But doesn't Rooker Feldman -- you have to

9  have something that has to have been litigated to a final

10 conclusion.

11        MR. SCHWARTZ: And I believe there was, Your Honor.

12        THE COURT: Well, if that's the case then you don't

13 need for me to lift the stay for you to enter that judgment.

14        MR. SCHWARTZ: Well, the -- that's why I took the

15 position, Your Honor, that the act of the entry of the

16 judgment by the state court is nothing other than ministerial.

17        THE COURT: So your belief that it has a substant --

18 you think it doesn't have a substantive effect.  You think

19 that you have the same rights, you're in the same position as

20 far as the applicability of collateral estoppel and Rooker

21 Feldman is concerned whether or not the judgment was signed

22 pre-petition or post-petition.

23        MR. SCHWARTZ: As I stand here today, Your Honor, I

24 would say but obviously the debtor would say no and we're

25 going to get into an issue before this court as to whether or

1   not there is any substantive issues.

2          THE COURT: See, my point is though if it is an issue

3   why would I lift the stay to allow you to cut off discussion

4   of that issue?  And if it isn't an issue then there's no --

5   you don't have any need for the stay to be lifted.

6          MR. SCHWARTZ: Well, if it is a substantive issue,

7   Your Honor, then I believe that the Sonex case allows us to go

8   back to the state court to decide that substantive issue given

9   the fact that the state court had heard everything up until

10  that point, had fully and finally for the most part decided

11  all the issues and the only thing that's left is again -- I'll

12  call it the ministerial act of entering judgment whereas if it

13  was -- if it is -- if going back to state court is substantive

14  and then you're not -- you don't allow Sovereign to go back

15  and don't lift the stay and the debtor then seeks to

16  relitigate those issues before this court we're going to get

17  into an issue as to whether or not Rooker Feldman applies,

18  whether or not collateral estoppel applies.

19         THE COURT: I guess your point is that even -- let's

20  suppose that this were a situation where the case had been --

21  the case had been tried to the state court but there wasn't a

22  decision yet, there's no Rooker Feldman there, no collateral

23  estoppel there.

24         MR. SCHWARTZ: Correct.

25         THE COURT: But even so you would say in that

circumstance under the principles articulated in Sonex,

judicial economy and so forth, I should send the case back to

the state court to complete the process of liquidating the

claim which is certainly something a state court is in a

position to do.

MR. SCHWARTZ: Absolutely, Your Honor.

THE COURT: Mr. Marotta.

MR. MAROTTA: Your Honor asked the question why.

THE COURT: Well, I got an answer to that.  My

question to you is why wouldn't I let -- why isn't this a

matter that is appropriately brought to a conclusion by state

court which is simply just the fixing of the amount of

Sovereign's claim?  Why should this court undertake that

process when it's already been done by the state court?

MR. MAROTTA: Because as Your Honor may remember when

counsel was here last time they represented to this court that

there was a mortgage that was filed securing their claim.  We

now know that --

THE COURT: We're talking about the liquidation of

the amount of their note.  Is that correct?  Because that's

all we're talking about now.

MR. MAROTTA: Except for what they're asking is they

want to lift the stay so they could docket the judgment in

state court.  The reason that they want to docket the judgment

in state court is so that they can have a lien that attaches

1  to the debtor's other --

2          THE COURT: That's not -- I don't think that's what

3  they're -- I would have to lift the stay for that purpose and

4  I would -- and I don't think that's what they're asking for.

5  They're not asking to lift the stay for the purpose of

6  attaching a lien, a judgment lien to the property.

7          Is that right, Mr. --

8          MR. SCHWARTZ: That's absolutely correct, Your Honor.

9  All we're seeking to do is liquidate our claim.

10          THE COURT: So understanding that is there any reason

11  why I shouldn't lift the stay to allow the process of

12  liquidation of this claim which proceeded to a conclusion

13  essentially in state court to be finally completed so that we

14  know what number we're working with in this proceeding?  I

15  think that might actually facilitate the determination of some

16  of the issues that we're going to have to decide in the

17  context of the motion to convert the case because now we will

18  know the amount of Sovereign's claim that has to be dealt with

19  in the context of the plan.

20          MR. MAROTTA: Except for the difference is, Judge,

21  that as we stand here today Sovereign has an unsecured claim.

22          THE COURT: That's what you say.  I don't know what

23  they say but they're asking -- they're just asking to --

24  they're just asking to fix the amount of the claim here.  This

25  does not relate to whether the claim is secured or not

1    secured; correct?

2              MR. SCHWARTZ: Correct.

3              MR. MAROTTA: Well, if the judgment was docketed,

4    which we put this in our papers, if the judgment is docketed

5    it then becomes a secured claim.

6              THE COURT: Not unless I lift the stay to allow the

7    judgment to become a secured claim.  I would have to lift the

8    stay for that purpose.

9              MR. MAROTTA: But then would it not attach to the

10   other property of the debtor?  For example, there are two

11   vacant lots that are not encumbered by a mortgage.  Wouldn't

12   this give them a leg up on the other creditors in the estate?

13             THE COURT: I would not lift the stay for the purpose

14   of permitting them to perfect any lien on the property by --

15   whether by filing of a judgment or otherwise.  I'd lift the

16   stay only to permit them to finalize the liquidation of their

17   claim, the liquidation of the amount of their claim.

18             MR. MAROTTA: And not allow them to docket the

19   judgment?  That's all they've been asking --

20             THE COURT: If they docket it -- unless I -- if

21   they -- I would have to lift the stay -- they can do anything

22   they want to but unless the stay has been lifted to permit

23   that to occur then it is of no course and effect.  So even if

24   they docket the judgment if I haven't lifted the stay to

25   permit them to perfect their lien or to obtain a judgment lien

1  that -- they don't have the ability to do that.  Isn't that

2  correct?

3      MR. SCHWARTZ: Yes, Your Honor.  In fact, if Your

4  Honor would want to interlineate in the order that I submitted

5  that the stay would be lifted solely to allow Sovereign to

6  liquidate the amount of its claim and for no other purposes I

7  would have no objection to that.

8      THE COURT: So with that is there any objection?

9      MR. MAROTTA: Well, there is.  The debtor's principal

10  is also a guarantor.

11      THE COURT: Well, that's -- why should that concern

12  me?

13      MR. MAROTTA: Well, it doesn't.  Actually that issue

14  has been addressed at the state court and there's a hearing on

15  the 21st of June before the state court on that -- on this

16  issue.

17      THE COURT: So then why -- that doesn't seem to me to

18  pose any obstacle to lifting the stay.

19      MR. MAROTTA: Well, I want to talk about Sonex

20  factors but before I mention that it's premature to lift the

21  stay at this juncture because the debtor has proposed the

22  plan.

23      THE COURT: No.  But I think that it is important in

24  the context of evaluating the debtor's plan for the stay to be

25  lifted to permit this claim to be liquidated.

1          MR. MAROTTA: And that can be done in this court.

2          THE COURT: But why would I start over again?  It

3     seems to me that all of the factors in Sonex relating to the

4     judicial economy --

5          MR. MAROTTA: One would be that it wouldn't really

6     fully liquidate the claim and the reason would be that the

7     state court was only looking at the notes.  They made a motion

8     for summary judgment in lieu of complaint and under the CPLR,

9     the State of New York that has to be limited to an instrument

10    for the payment of money only.  Therefore, it excludes the

11    mortgages and any of the loan document that would require

12    payments of tax, escrows and the like.

13          Now, some of the taxes that are --

14          THE COURT: So is Sonex is going to be -- excuse me,

15    is Sovereign going to be seeking those amounts that are not --

16    in other words, if your -- if your claim is fixed by the entry

17    of this judgment, are there additional amounts that would have

18    to be determined --

19          MR. SCHWARTZ: No, Your Honor.

20          THE COURT:  -- other than -- other than anything

21    that might have accrued post-judgment?

22          MR. MAROTTA: The amounts that Sovereign owes the

23    debtor that constitute escrow payments for which they

24    collected during -- for a tax period during which they should

25    have paid taxes during which they did not pay taxes and then

1   there's also the --

2          THE COURT: Wait, wait, wait.  Sovereign owes the

3   debtor?

4          MR. MAROTTA: Yes.

5          THE COURT: But what's that got to do with whether

6   Sovereign's claim should be liquidated?  You're saying you

7   have counterclaims against the debtor or something, against

8   Sovereign or something like that.

9          MR. MAROTTA: It's the first factor of Sonex.  It

10  does not provide a complete resolution of the issues --

11         THE COURT: Well, it provides --

12         MR. MAROTTA:  -- between the parties.

13         THE COURT: It provides a complete resolution of the

14  issue of the amount of Sovereign's claim.

15         MR. MAROTTA: But it doesn't because the amounts of

16  the monthly payments included these escrows and the entire

17  dispute with Sovereign centers around the fact that they were

18  never able to tell us what the amount of the monthly payments

19  were --

20         THE COURT: Aren't these --

21         MR. MAROTTA: -- and how much of it were attributable

22  to escrow.

23         THE COURT: Are these not issues that were taken --

24  that were addressed before the state court?

25         MR. MAROTTA: No.  The only issue that was

1  addressed --

2          THE COURT: Why not?

3          MR. MAROTTA: Because the only issue that was

4  addressed at the state court is that the payments that were

5  made included escrow and that there was a failure of Sovereign

6  to provide an escrow accounting and that therefore it's not

7  simply the instrument for the payment of money only.  The

8  state court was only looking at the notes and the amounts due

9  under the notes.  So it did not adjudicate --

10          THE COURT: It may not resolve all of these questions

11  but it certainly resolves a very substantial question which is

12  the amount of Sovereign's claim against the debtor.  There may

13  be some other claims made -- there may or may not be an

14  ability on the part of the debtors to challenge that or to

15  seek some kind of offset based upon what you think are amounts

16  of escrow that were paid that were not properly remitted to

17  the taxing authorities.  There may or may not be an ability to

18  do that but there is -- but we'll still have gotten a long

19  way.

20          MR. MAROTTA: Right.  Under Sonex, under the first

21  factor it does not favor dismissal for that reason.  It

22  doesn't provide a complete resolution.

23          The other factors on Sonex yes, it's a state court

24  and certainly they have jurisdiction to hear this claim but

25  it's not a specialized tribunal.  It's not --

1            THE COURT: They tried the whole case.

2            MR. MAROTTA: But it's not a specialized tribunal.

3    They don't have any particular expertise or peculiar expertise

4    as a landlord tenant court does to resolve a lease dispute.

5            Also, on the fifth factor of Sonex, whether there's

6    an insurer who's representing the debtor.  The debtor doesn't

7    have any insurer that's representing him.

8            THE COURT: That factor comes up only when you're

9    talking about a malpractice claim or a claim for which the

10   debtor has insurance.  So it's not applicable here.

11           MR. MAROTTA: And I have already said to Your Honor

12   that prejudice is potentially the rights of the other

13   creditors.

14           THE COURT: How so?

15           MR. MAROTTA: If there's a judgment that's docketed.

16   So --

17           THE COURT: How so?

18           MR. MAROTTA: It would give them a lien on the

19   other --

20           THE COURT: I'm telling you that it would not --

21           MR. MAROTTA: Okay.

22           THE COURT:  -- because I won't lift the stay for the

23   purpose of allowing that to occur.

24           MR. MAROTTA: Well, the only thing left in that state

25   court decision or that proceeding, that judge -- in front of

1 that judge is whether you should be entering the judgment.

2        THE COURT: The point of entering the judgment I

3 guess is to fix -- to finally fix the amount of the claim.

4 That's the point.

5        MR. MAROTTA: I'm kind of -- to be perfectly honest,

6 I think his November decision said how much the claim was.

7 The problem was he directed that they submit an order.

8 Instead of submitting an order where the judge would have

9 recited the facts, the law and made determinations and entered

10 an order directing the clerk of the court to enter the

11 judgment, Sovereign's counsel chose to shortcut the process

12 and submitted instead a proposed judgment and as I put in our

13 motion --

14        THE COURT: So --

15        MR. MAROTTA:  -- papers -- this is very important,

16 Your Honor.  As I put in our motion papers when you do that in

17 New York County the clerk's office doesn't take too kindly to

18 it and so then what happens is that they get a judgment that's

19 been signed by a judge on January 12th and they marked it on

20 unfiled.  So this judgment and this adjudication that they're

21 pursuing is something really that would require them to make a

22 calculation of interest and submit additional affidavits to

23 the clerk's office and prove their claim.

24        THE COURT: Is that correct?

25        MR. SCHWARTZ: Your Honor, I wasn't handling that

1 case and I'm not familiar with the way it works in New York

2 State court. So I can't answer that question whether -- that

3 specific question.

4          What I can tell Your Honor though is that the Sonex

5 factors as we've set forth in our papers favor our --

6          THE COURT: All right. You don't need to go any

7 further.

8          Mr. Marotta, are you prepared -- so does someone

9 have this opinion in any of this mass of papers that's online

10 here, the judge's opinion?

11          MR. SCHWARTZ: I believe it was attached. I'll find

12 it. It was attached to Sovereign's papers. It's Exhibit K,

13 Your Honor, to our declaration of Mario Talichian [Ph.] which

14 we filed in support of our motion to prohibit the debtor from

15 using cash collateral.

16          THE COURT: Is this the November 10, 2009 opinion --

17          MR. MAROTTA: Yes.

18          THE COURT:  -- of Milton Tingling?

19          MR. MAROTTA: Yes.

20          MR. SCHWARTZ: Yes, Your Honor.

21          THE COURT: I don't see a number on this. Is there a

22 number here?

23          MR. SCHWARTZ:  There is no number, Your Honor.

24          THE COURT: There is no number?

25          MR. SCHWARTZ: There is no number.

1    THE COURT: Okay.  So this -- where's the judgment,
2  the proposed judgment?

3    MR. SCHWARTZ: That's Exhibit L, Your Honor, that
4  same certification.

5    THE COURT: So this was -- so the judge signed this
6  judgment?

7    MR. SCHWARTZ: On January 12th.

8    THE COURT: Right.  So how is it they'd have to prove
9  something up here.  If the judge signed the judgment it would
10 be entered as is; correct?  You're saying that even if with a
11 liquidated amount in the judgment that they want the clerk to
12 enter that they'd still have to come with additional
13 affidavits to show additional amounts?

14    MR. MAROTTA: Because they did it incorrectly because
15 instead of -- the practice in the New York County clerk's
16 office which I know painfully so well is that you submit the
17 proposed judgment to the clerk's office but they didn't
18 fulfill the step that the state court required which was to
19 submit an order.  So instead of submitting an order to Justice
20 Tingling as he directed they submitted a proposed judgment to
21 him. He signed the judgment on January 12th.

22    THE COURT: Right.

23    MR. MAROTTA: Having done that besides being void ab
24 initio because it's beyond -- it's the day after the petition
25 was -- the order of relief the clerk's office in New York

1  County requires the plaintiff then to make affidavits and

2  present calculations of interest and bill of costs and et

3  cetera in order --

4          THE COURT: To back up their claim --

5          MR. MAROTTA: Right. And they have to appear in the

6  clerk's office physically to do so.

7          THE COURT: So why wouldn't I -- if that's the case

8  then why wouldn't the stay be lifted to permit them to go

9  ahead and do that --

10         MR. MAROTTA: Your Honor just said that you would --

11         THE COURT:  -- fix the amount of their claim?

12         MR. MAROTTA: Except that Your Honor specifically

13  just said that you are not going to allow them to enter the

14  judgment or docket the judgment so --

15         THE COURT: Mr. Marotta, let me see if we can get

16  clear on this particular point.  The automatic stay -- because

17  of the automatic stay an action taken that would violate the

18  stay has no effect unless the stay has been lifted.  Right?

19  So the court, this court has the authority to modify the stay

20  to allow a judgment to be entered for some purposes but not

21  others.

22         So, in other words, unless I lifted the stay to

23  permit them to obtain a lien on the debtor's property their

24  entering the judgment would not have the effect of giving them

25  a lien on the property because the automatic stay would

make -- even if under state law in the absence of a bankruptcy that is what would occur the automatic stay prevents the lien from attaching unless the bankruptcy court has lifted the stay to permit that to occur.  Are we clear on this?

MR. MAROTTA: Yes.

THE COURT: Okay. So the point --

MR. MAROTTA: There's another that --

THE COURT: If your argument is, Mr. Marotta, that they -- that they did it wrong in state court then why wouldn't I lift the stay to allow them to go back and submit a judgment to Justice Tingling along with the appropriate proof and you can submit whatever you think you should submit in that connection and we'll let Justice Tingling who handled this decide the amount of the claim and that will be -- that will be fixed and we won't have to -- that will be an issue that we don't have to deal with in the context of this case.

MR. MAROTTA: Right. I guess that really boils down to three issues then.  It's because it does not provide a complete resolution of the claims between the parties and --

THE COURT: Well, it provides a complete resolution of Sovereign's claim against you and that cuts out a lot of issues in this case for me.

MR. MAROTTA: Perhaps but we still have to address the fact that Sovereign did not record its mortgage.  We did do a final search.

1          THE COURT: But I don't care about that right now.

2    That's not my issue right now.  The issue right now is the

3    amount of their claim.

4          MR. MAROTTA: But my point is that that's an issue

5    that has to be addressed between these two parties and it's a

6    very big issue.

7          THE COURT: That may be but --

8          MR. MAROTTA: It has to be -- it would -- in

9    confirmation hearings --

10         THE COURT: But the -- but it's -- but it's an

11   entirely different issue.  It's an entirely different issue.

12   It has nothing to do with the amount of their claim. I think

13   it would be very useful to know what the amount of their claim

14   is whether it's secured or unsecured.  Calculating the amount

15   of their claim is a separate issue from the question of

16   whether their mortgage claim was properly filed or not or

17   whether their assignment of leases and rents gives them the

18   requisite security interest or any other argument that they

19   may wish to make but that's not -- that doesn't have to do

20   with the amount of their claim.  So the fact that I don't have

21   to deal with another issue doesn't mean that it wouldn't be

22   helpful to get this issue resolved.

23         MR. MAROTTA: Perhaps and I think that Justice

24   Tingling also at our last appearance indicated that whatever

25   decision he would make he would give parties notice so that

1  they could propose counter orders and the like.

2        I would point out that counsel still is saying that

3  they have not received a payment since April now they're

4  saying, April 2008.  The last time they were here they were

5  saying May of 2008.  The fact is their own counsel, prior

6  counsel Schiff Hardin said the last payment they received was

7  February 27, 2009.  There's a couple of problems there, Judge,

8  which is -- one is -- well, first of all, we did provide

9  copies of canceled checks that support that the debtor made

10 those interest payments of $27,000.00 based by the way on

11 their estimation because they didn't know how much the amount

12 of the monthly payments were.

13        During the court proceeding, during the state court

14 proceeding they continued to make those payments through

15 February 2009. So that's one thing I just wanted to clear up

16 that was said before.

17        THE COURT: Tell it to Justice Tingling.

18        MR. MAROTTA: What's that?

19        THE COURT: Tell it to Justice Tingling.

20        MR. MAROTTA: Okay.  And the other issues under Sonex

21 were what is the impact of the stay on the parties and the

22 balance of the harms.  Well, if we lift the stay now the

23 debtor is holding an evidentiary hearing before Your Honor on

24 June 1st, has been forced to go back to state court numerous

25 times to defend against Sovereign's continuance urgence to

1  that state court judge to enter the judgment against the

2  debtor also by the way post-petition and will now have to

3  continue to do that.  So now the debtor-in-possession is

4  engaged in two tribunals.

5         THE COURT: Either you're going to have to do that

6  here or you're going to do it there and it's --

7         MR. MAROTTA: That's what I'm saying, Your Honor.

8  Why don't we all do it here?

9         THE COURT: Because I"m not prepared to go back to

10 square one and reconsider something that a state court judge

11 has already gone through.

12        MR. MAROTTA: And the other thing I would point out

13 is that I believe they have an affirmative duty that hey

14 haven't carried out here which is to tell that state court

15 judge that they -- that that January 12th order was entered

16 after, was signed after the petition was filed and that he

17 shouldn't be having those proceedings.

18        THE COURT: Let me ask you this.  If the

19 determination made by the state court judge was just that this

20 was a case on an action on a note and that motion for summary

21 judgment in lieu of the complaint was appropriate, has there

22 really been anything done in state court to liquidate that

23 claim?  I'm asking counsel for Sovereign this question.

24        MR. SCHWARTZ: I'm sorry.  I didn't understand the

25 question.

1    THE COURT: The theory on which I would liquidate --

2  that I would lift the stay would be that the state court has

3  already done work on this case to determine the amount of your

4  claim and if that is not the case then why -- then taking the

5  other side of the argument, why would I lift the stay.  If all

6  the state court judge decided was that yes, in fact, this is

7  an instrument for the payment of money only and therefore a

8  motion -- therefore summary judgment in lieu of a complaint

9  can be granted and he did -- took no steps to determine the

10  amount of the claim how is -- how is it -- how is he ahead of

11  where I would be?

12    MR. SCHWARTZ: Your Honor, my understanding is that

13  he did receive substantial information in connection with the

14  summary judgment proceeding about the amount of Sovereign's

15  claim and the debtor asserted various counterclaims in

16  connection with that and made the same argument that Mr.

17  Marotta is making to you now and the court fully determined

18  those issues.  So the only thing that's left is for the

19  liquidation of the amount.  That's my understanding of the

20  state court proceeding.  So he wouldn't -- Your Honor wouldn't

21  have to be deciding the issue from scratch.  I believe that

22  Justice Tingling decided the issue which he -- essentially

23  he's on the one yard line and all we're asking Your Honor to

24  do is to allow him to cross the finish line.

25    MR. MAROTTA: I'd also point out --

1          THE COURT: Just a minute, please.

2                    [Pause in proceedings.]

3          THE COURT: I see there is -- it says the allegations

4    of the defendants concerning payments are unsupported by the

5    submitted instruments in support or opposition to the motion.

6    So I guess the question of whether -- the question of the

7    payments on -- whether payments were made on the notes was

8    raised before the state court judge.

9          MR. SCHWARTZ: Yes, Your Honor.

10         MR. MAROTTA: Payments on the notes?

11         THE COURT: It says -- Justice Tingling's opinion

12   says that allegations of defendants, that would be your

13   client, concerning payments are unsupported by the submitted

14   instruments in support or opposition to the motion.

15         MR. MAROTTA: He's talking about the fact that we had

16   paid September and they filed the action anyway.  Their action

17   was filed in September and we had said that when they filed

18   the action they had already cashed our checks and maybe we

19   didn't attach the checks but I want to point this out.  All of

20   that was submitted and argued in December of '08.  So all --

21   whatever affidavits he had certainly didn't include any of the

22   payments that went through February 27, 2009.

23         And I would just say, Your Honor, if you're inclined

24   to send this back to state court I do think it's a burden and

25   an expense on the DIP.  I think it will impact the DIP's

1  ability to keep pace in these proceedings and if you're

2  inclined to do so then we would ask that we would also have

3  leave to file an appeal and make a motion to reargue in the

4  state court because we don't believe that the judge looked at

5  all the issues.  That motion that was submitted in January or

6  December of '08 was not -- we had no decision on it and then

7  it didn't come to light again until August or September when

8  Sovereign's counsel began sending letters to the court and

9  asking for status and whether an order would be issued any

10 time soon.

11        So we would want the ability that the stay would be

12 lifted.  Sovereign would also want the ability to go ahead and

13 make that appeal and file that motion.  We argue -- we think

14 that the judge would consider the motion to reargue.

15        MR. SCHWARTZ: Your Honor, after the last 45 minutes

16 of arguing now we get to the debtor's real issue.  The debtor

17 disagrees with that decision and wants to appeal it.

18        THE COURT: But the -- Justice Tingling -- there's no

19 number in this opinion whatsoever.

20        MR. SCHWARTZ: Absolutely, Your Honor.

21        THE COURT: There's no finding made as to the

22 amount -- as to amount.  So you're starting from scratch on

23 that --

24        MR. SCHWARTZ: I don't believe so, Your Honor,

25 because my --

1    THE COURT: You may have given him other papers on

2 this but he's made no finding that he would be -- it would be

3 a starting point.

4    MR. SCHWARTZ: Your Honor, my understanding is that

5 there was various pleadings, declarations, affidavits, et

6 cetera that were submitted that contained figures.  He fully

7 understood those figures better --

8    THE COURT: That was months ago.  That was in

9 November.  You think he remembers that?

10    MR. SCHWARTZ: Well --

11    THE COURT: You'll have to start over again.

12    MR. SCHWARTZ: Your Honor, one of the factors in

13 Sonex is not that a lot of time has gone by and the state

14 court might have forgotten things.  The factors of Sonex are

15 met here and that court has --

16    THE COURT: Justice Tingling is going to have to

17 start -- are you going to say to him you're going I guess -- I

18 lift the stay, what are you going to do?  What's the first

19 thing you'll do? You will settle an order, won't you, Justice

20 Tingling, with -- on one's notice to them with an amount and

21 you'll have to back it up with calculations; correct?  You'll

22 submit a statement of -- where it shows the calculation of the

23 amount of the claim, am I correct, along with the proposed

24 order?  And then they'll submit their counter order and it

25 will be the same as if you were -- have you filed a proof of

1  claim in this case?

2          MR. SCHWARTZ: No, Your Honor.  The deadline hasn't

3  come yet so we haven't done it.

4          THE COURT: Why wouldn't you better off just filing a

5  proof of claim in this case and handling it here?  What is the

6  advantage of going back to Justice Tingling?

7          MR. SCHWARTZ: Because, Your Honor, again --

8          THE COURT: He has no -- he's not going to be able to

9  do it any faster than I would.

10         MR. SCHWARTZ: Your Honor, I would --

11         MR. MAROTTA: I would also submit --

12         THE COURT: I'm not asking you for your comments

13 right now.

14         MR. MAROTTA: Yes, Your Honor.

15         MR. SCHWARTZ: I believe that he would, Your Honor.

16 Again, I think that there --

17         THE COURT: Why is that?

18         MR. SCHWARTZ: Because my understanding is that he

19 was submitted with again affidavits, declarations, and they

20 contain figures.  He understood those figures.  Perhaps he

21 might have to refresh his memory by looking back at them. At

22 the end of the day we will submit whatever documents are

23 required in order to liquidate our claim.  I'm sure the debtor

24 will then say Sovereign is wrong and here's what the figures

25 should be and he'll do whatever he does, but he's already --

1  again, he's gotten to the one yard line and he's --

2          THE COURT: Then we want -- then we're going to have

3  appellate practice in state court and that's going to hold up

4  this case forever.

5          MR. SCHWARTZ: Your Honor, I don't know whether we're

6  going to have appellate practice.

7          THE COURT: I don't think there's anything that's

8  been determined so far that would collateral estoppel effect

9  here.  I'm not sure whether the fact that he signed that

10 judgment would have collateral estoppel effect but if it

11 doesn't then I'm not sure what the advantage is of going back

12 to Justice Tingling.  This isn't a case where there was a

13 trial.  This is a case where there's a motion for summary

14 judgment in lieu of a complaint.  The only issue on that case

15 is whether the instrument for payment of money only and

16 whether there are I guess compulsory counterclaims.  Is that

17 the other issue on that?

18         MR. SCHWARTZ: Yes, I believe that that's correct,

19 Your Honor, and I believe that Sovereign submitted proof of

20 the amount that was owed. It submitted proof that it was owed

21 these amounts on accountant's notes.  The debtor argued that

22 that amount should be reduced.  The debtor had supposed

23 counterclaims and the debtor had supposed defenses.  He read

24 all the papers.  He decided that summary judgment and he

25 decided it fully in favor of Sovereign.

1        THE COURT: Right.  But he didn't fix an amount.

2        MR. SCHWARTZ: He didn't fix an amount. Instead he

3   directed that the parties submit an order and he would then

4   fix the amount pursuant to an order.

5        THE COURT: But he hasn't done that yet.

6        MR. SCHWARTZ: Well, again, Your Honor, he signed

7   something.  It might have been a day after the petition was

8   filed.  The debtor filed an order to prevent him from doing

9   that.  All we're asking the court to do is allow him to do

10  what he already was at the one yard line ready to do.  Your

11  Honor knows nothing about this other than counsel's

12  unsubstantiated statements here today. Justice Tingling knows

13  a lot more about this because he handled this for a year-and-

14  a-half or so.

15       THE COURT: So we're going to go -- we're going to

16  send this back to state court and we're going to just wait

17  until it wins its way through that process?

18       MR. SCHWARTZ: I don't know how long the process is

19  going to take particularly because he was able --

20       THE COURT: I don't think -- as I'm understanding

21  this now from Mr. Marotta, I don't think that this is a

22  situation where you're just going to take that judgment and

23  docket it and that's the amount.  I think you're going to have

24  to go back and prove up the amount of your claim.

25       MR. SCHWARTZ: I don't know if that's the procedure.

1      THE COURT: And if that's the case then I don't know

2 why it should be done there instead of here.

3      MR. SCHWARTZ: Your Honor --

4      THE COURT: Because -- and with all of the attended

5 delay and I lose control over the process and then we're

6 talking about a substantial period of time of delay.

7      MR. SCHWARTZ: Your Honor, I don't know that that's

8 the process because I'm unfamiliar with the practice in New

9 York State court.

10      THE COURT: Well, Mr. Marotta says that he is and --

11      MR. SCHWARTZ: Perhaps what I can do is --

12      THE COURT:  -- in the absence of anyone with better

13 knowledge I guess I would take his word for it.

14      MR. SCHWARTZ: Well, perhaps what I would suggest and

15 I would suggest to the court would be --

16      THE COURT: Do you want me to carry this motion?

17      MR. SCHWARTZ:  -- to carry this motion until June 1st

18 and I will check with the litigator who handled this in New

19 York State court who certainly knows that issue much better

20 than I and I can address the court with respect to that issue

21 on June 1st.

22      THE COURT: Okay then.  I'm not sure that I'm going

23 to hear this on June 1st.  I think we're going to turn to

24 the -- I will tell you right now that this will -- I'm going

25 to turn my attention first to the motion to convert and if we

1   don't -- we'll take that to a conclusion. If we don't have --

2   if we have time we can address this.  If we don't have time we

3   won't get to it.

4            MR. SCHWARTZ: I understand that, Your Honor.  I

5   assume, Your Honor, that the joint pretrial order that Your

6   Honor had indicated earlier lists things like witnesses and

7   documents and things like that.

8            THE COURT: Yes.  Okay.  Anything else?

9            MR. SCHWARTZ: Thank you, Your Honor.  That's it from

10  Sovereign's side.

11           THE COURT: Okay.  Anything else from the debtor?

12           MR. GABOR: No, Your Honor.  Thank you very much.

13           MR. MAROTTA:  I'll just note, Your Honor, that June

14  23rd is a date scheduled for hearing on the approval of the

15  disclosure statement.

16           THE COURT: Well, you might as well -- you might as

17  well take that off the calendar because this plan is

18  unconfirmable as written.  So I think that that date is one

19  that you're going to have to change.

20           MR. MAROTTA: Well, sometimes arrears can be paid

21  over time.

22           THE COURT: No they can't.  Not if you want to treat

23  the creditor as unimpaired.

24           MR. MAROTTA: We'll pay interest on the arrears.

25           THE COURT: No, that's -- Mr. Marotta, we need to get

clear on a couple of points here.  Let's get to the section

that defines what is -- impairment of claims or interest.  A

class is impaired unless you cure the default, reinstate the

maturity of the claim and compensate the holder of the claim

for -- or interest for damages incurred as a result of any

reasonable reliance on the contractual provision.  So that

means that you have to cure the default, period, end of story.

Not over time.  Not with an interest factor.  You have to cure

the default and reinstate the maturity of the claim and then

in addition to that if there are some other damages that have

been incurred by reason of the default those have to be paid

as well.  Under -- you cannot treat a party as unimpaired

by -- and pay out -- and pay the cure of the default over a

period of time.  It's to be paid on or before the effective

date of the plan.

          MR. MAROTTA: And as Mr. Gabor suggested, at this

point in time in the midst of motions pending before this

court the debtor simply filed a proposed plan.

          THE COURT: Right, with --

          MR. MAROTTA: Which the debtor will have --

          THE COURT: With a complete sham, phoney plan.

          MR. MAROTTA: I'm sorry to hear Your Honor say that

because it was a lot of work that went into preparing that

plan.

          THE COURT: That's -- it looked like it was form that

1 was --

2      MR. MAROTTA: And not having the proof of claim from

3 Sovereign that we had to make some assumptions and being told

4 that there was a mortgage that there was not.  We were also

5 forced to make other assumptions.

6      THE COURT: But there was no -- Mr. Marotta, there

7 was no scenario whether they were secured or unsecured that

8 you were treating their claim as unimpaired and yet that's

9 what you put in the plan and this is the only creditor at this

10 point that you have a fight with.  So there was --

11      MR. MAROTTA: If we listed them as impaired even if

12 they objected as long as an impaired class voted in favor of

13 the plan we might still overcome the objection.

14      THE COURT: But you didn't treat them as -- you did

15 not -- this plan as it is drafted is unconfirmable.  It's

16 unconfirmable.  It does not treat -- it does not correctly

17 describe the treatment of their claim.

18      MR. MAROTTA:  And Your Honor may decide at some

19 point in time that we need to determine what the extent of

20 their security interest is before the plan could be confirmed.

21      THE COURT: Well, whether they are secured or --

22      MR. MAROTTA: Until they file a proof of claim we

23 don't really know what their claim is.

24      THE COURT: Whatever their claim is you're not

25 treating them as unimpaired, not the way you describe -- not

1  the way you're describing the treatment in the disclosure

2  statement that you're going to give them.  The only -- unless

3  you are planning on raising the money to cure the default and

4  to reinstate the mortgage or the note in its -- on its

5  original terms you're not treating them as unimpaired.

6          MR. MAROTTA: The notes has already been accelerated.

7          THE COURT: It doesn't matter.  That's the thing

8  about -- you can treat them as unimpaired.  I believe you can

9  reinstate the original maturity date of the note even if it's

10 been accelerated but even so you didn't -- there was only one

11 reason to file this plan because of the -- because of this

12 agreement or the dispute that you have with Sovereign.

13         MR. MAROTTA: Yes.

14         THE COURT: So the only really important thing in

15 that plan was how you were treating Sovereign's claim and it

16 was a complete -- it was a nonsense, a nonsense plan at least

17 as it related to that because you said you were treating them

18 as unimpaired and you patently are not.

19         MR. MAROTTA: I don't see how that's fair.  If we

20 don't know they have a recorded mortgage, if we don't know the

21 extent of their claim, how can we have treated them fully and

22 fairly yet -- I mean we've proposed something.  We spoke with

23 counsel.  They refused to meet with us.  We speak with counsel

24 but the parties will not sit down.

25         THE COURT: But what you call -- what you propose --

1  what your propose was to put them in a category where they're

2  not entitled to vote because they're unimpaired and clearly

3  what you are proposing to do with them no matter what their

4  claim is was not to treat them as unimpaired. Whether secured

5  or unsecured clearly they're not unimpaired as of the way that

6  you're treating them.

7      MR. MAROTTA: As Mr. Gabor stated, if Your Honor

8  finds that they are impaired then --

9      THE COURT: They obviously are impaired.  They're

10 obviously impaired.

11     MR. MAROTTA: Well, then we could amend --

12     THE COURT: The problem I have, Mr. Marotta, with the

13 way that you operate is that you seem to assume that you can

14 make arguments that really have no basis in the fact of the

15 case.  So I think that it would work a lot better, it would

16 work a lot better in this case and in other cases if you put

17 yourself in the mind set of we're going to go by the code and

18 the rules and the facts of the case and don't ask me to assume

19 something which is patently ridiculous.

20     MR. MAROTTA: I did not ask Your Honor to assume

21 anything.  I mean I didn't make any representations about the

22 mortgage.  Last time we were here Sovereign made the

23 representation that a judgment was entered they said and I

24 said there wasn't.

25     THE COURT: Mr. Marotta, I'm talking about you right

now.  I'm not talking about them. Okay?  I'm talking about the
way you are conducting yourself in this hearing -- in this
proceeding and I think that this whole case would go a lot
more smoothly if you would -- when I tell you that this -- or
I read to you the provision that describes what being impaired
is if you would listen to that and respond to me in a rational
way instead of making a ridiculous assertion I think that
that -- I think that this would go a lot more smoothly if you
would think about it in those terms.

MR. MAROTTA: Okay.  I didn't mean to offend the
court.  I would say that I did look at some of these cases on
reinstating a loan and I found them to be complex.  I am not
prepared today, Your Honor, to address that and I apologize
that I'm not, but I didn't understand that you would be
debating whether Sovereign was unimpaired or impaired.

THE COURT: The point is you filed a plan in order to
show that you could confirm a plan but you filed a plan that
is -- was unconfirmable on its face as it relates to the
treatment of Sovereign's claim because it proposed to treat
them as unimpaired when they patently are impaired.  So we
could argue about whether reinstating it in a month or two
months or three months was within the time frame effect -- if
you propose -- tell me an effective date, how long can you
postpone it we could talk about that but that's not what you
proposed in your plan.  What you proposed is not within the

framework of any discussion that would relate to whether this claim is impaired or not impaired. Obviously it's impaired. So I don't know whether you're not -- you don't do -- I don't know what -- I don't know what the issue is here that it would work --

As I say, in the interest of this case going forward as smoothly as it can, I would ask you to -- don't tell me it's day when it's night. I would ask you to make an effort to screen the assertions that you make and make sure that they are within the framework of what -- at least something that could be substantively argued about. Okay? I apologize if this is -- if you have been offended and I hope that we can work better going forward.

MR. MAROTTA: I may be a little exhausted from litigating this with Sovereign but I'd just like to say that if I did find a case that said a reasonable period of time or the like could I submit it to Your Honor? I don't --

THE COURT: I am not -- it is -- a reasonable period of time is not over the life of the plan. It might be thirty days but it's not within -- it's not what you proposed. In fact, you didn't even propose to cure arrears. What you say about the treatment of Sovereign's claim makes no mention of treating arrears. What you're proposing to do under this plan has no -- that doesn't address arrears in any way, shape or form. It talks about paying out the claim with in an interest

1  factor over time.  That's not unimpaired.

2        MR. MAROTTA: Paying interest on the arrears and then

3  paying it off early as opposed to the maturity date.

4        THE COURT: That's not unimpaired.  That is a change

5  in the contractual rights of the creditor.  It might be

6  permissible under another provision of the bankruptcy code but

7  it's not unimpaired and therefore they are entitled to vote.

8        MR. MAROTTA: I'm not arguing that day is night any

9  more.

10       THE COURT: Well, I think that you should stop doing

11 that.

12       MR. MAROTTA: I was just explaining what we proposed.

13 That's all.

14       THE COURT: Okay.  Well, I think we've exhausted this

15 subject.  So I'll see you on June 1st.

16       MR. MAROTTA: Thank you.

17       MR. SCHWARTZ: Thank you, Your Honor.

18       THE CLERK: All rise.

19                      * * * * *

20

21

22

23

24

25

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                        _____

6                                    Shari Riemer

7   Dated:  May 26, 2010

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$1** [1] 23:20
**$1,000.00** [2] 12:23 13:22
**$10,000.00** [2] 6:12 46:6
**$100,000.00** [1] 24:10
**$11,000.00** [1] 28:3
**$125,000.00** [1] 24:10
**$140,000.00** [2] 29:11 45:8
**$16,000.00** [5] 27:16,17 32:17 39:15 40:4
**$18,000.00** [3] 37:9 38:6 39:3
**$180,000.00** [1] 35:24
**$19,000.00** [12] 16:16,18,23 17:2,4,5,7,9 38:12 39:4,12 40:8
**$2,000.00** [1] 5:14
**$2,700.00** [1] 22:2
**$24,000.00** [1] 11:8
**$25,000.00** [1] 19:25
**$27,000.00** [6] 22:4,6,8,10,11 72:10
**$3.5** [1] 22:21
**$38,000.00** [3] 15:8 34:14 48:25
**$38,500.00** [4] 14:20,21 15:2 48:20
**$39,000.00** [3] 40:1,2,4
**$4** [1] 22:22
**$44,000.00** [4] 36:24 37:3,6 39:3
**$450.00** [1] 48:15
**$500.00** [1] 27:24
**$55,000.00** [1] 40:6
**$57,000.00** [2] 39:14,14
**$6,000.00** [3] 10:23 11:4,8
**$6,100.00** [1] 12:16
**$6,800.00** [2] 27:10,18
**$60,000.00** [5] 26:25 27:4 48:11,12,16
**$63,848.00** [2] 48:3,3
**$7,000.00** [1] 6:13
**$7,500.00** [1] 18:11
**$7,800.00** [6] 18:16 36:5,19 37:2 38:7 39:2
**$700,000.00** [2] 22:15,25
**$700.00** [3] 12:14,15,19
**$73,000.00** [3] 39:5,11,14
**$80,000.00** [2] 36:16 48:16
**$81,000.00** [4] 26:17 27:1 48:9,12
**$85,000.00** [4] 18:23 19:10 35:20 36:18
**$85,875.00** [1] 18:13
**$85,960.00** [1] 12:4
**$9** [1] 46:8
**$95,000.00** [3] 17:6 19:10 36:21
**$95,000.000** [1] 35:24

## 0

**07862** [1] 1:23
**08** [2] 75:20 76:6

## 1

**1** [2] 9:19,20
**10** [2] 6:6 67:16
**10:00** [1] 49:12

**10007** [1] 1:17
**11** [3] 6:6 24:21 36:11
**1112(b** [1] 16:2
**1112(b)(1** [1] 3:6
**1112(b)(2** [3] 8:17,23 25:19
**1112(b)(3** [2] 50:16 51:22
**1112(b)(4** [4] 3:16 16:4 19:19 20:9
**11201** [1] 1:28
**1121(e** [2] 8:25 43:21
**1129(e** [2] 8:25 43:21
**11th** [6] 3:23 16:17 47:13 50:4,6,8
**12866** [1] 1:32
**12th** [4] 66:19 68:7,21 73:15
**1300** [1] 1:16
**15** [1] 5:19
**15th** [2] 14:16 19:22
**18th** [2] 50:5,9
**19** [1] 1:8
**19th** [1] 16:22
**1st** [13] 49:10,11,14,15 51:11,24 52:1,4 72:24 81:17,21,23 89:15

## 2

**2** [1] 9:18
**2000** [2] 11:14 38:18
**2004** [13] 4:8 6:10 12:22 13:5 14:21 24:1,13 28:6 34:16 44:18,23 45:7 55:11
**2008** [4] 21:21 22:7 72:4,5
**2009** [4] 67:16 72:7,15 75:22
**2010** [5] 1:8 26:18,23,24 90:5
**20th** [3] 16:22 19:23 26:19
**211** [1] 1:31
**21st** [1] 61:15
**23rd** [1] 82:14
**24** [2] 7:3 12:2
**2531** [1] 45:13
**26** [1] 90:5
**27** [3] 22:3 72:7 75:22
**271** [1] 1:27
**277** [1] 1:16
**27th** [1] 52:7
**28th** [3] 49:23 51:6,25

## 3

**3:59** [1] 2:1
**30** [1] 7:4
**350** [1] 23:21
**363** [1] 15:5
**364** [1] 15:5

## 4

**4(a** [1] 9:4
**45** [1] 76:15

## 7

**7** [2] 25:4 28:24

## 8

**85** [1] 36:17

## 9

**9:30** [3] 52:19,20,22

## A

**a-half** [1] 80:14
**ab** [1] 68:23
**ability** [7] 45:19 61:1 64:14,17 76:1,11,12
**able** [7] 25:11 28:12 40:12,13 63:18 78:8 80:19
**above** [1] 90:2
**absence** [4] 17:15 44:19 70:1 81:12
**absent** [2] 3:6 9:24
**absolutely** [4] 32:4 58:6 59:8 76:20
**accelerated** [2] 22:19 85:6,10
**accept** [1] 40:14
**accordance** [1] 33:22
**according** [4] 21:23 23:25 24:11 41:3
**account** [12] 4:14,18,19,21 6:14 19:10 29:9,10 45:9 46:13 47:6 48:15
**accountant** [1] 13:21
**accountant's** [1] 79:21
**accountants** [1] 15:16
**accounted** [2] 48:23 49:1
**accounting** [6] 19:23,25 20:2 45:18 47:9 64:6
**accounts** [1] 47:7
**accrual** [1] 37:4
**accrued** [1] 62:21
**across** [1] 13:7
**act** [6] 9:3,5,12 33:1 56:15 57:12
**action** [8] 44:13,25 55:13 69:17 73:20 75:16,16,18
**actual** [2] 26:24 45:16
**actually** [5] 7:4 19:20 26:7 59:15 61:13
**adamo** [7] 10:24 11:5,10 30:6,7 37:9 38:6
**add** [10] 6:11 35:23 36:20 37:3 39:2,3,3,6 40:4 54:8
**added** [2] 37:7 38:10
**adding** [1] 40:2
**addition** [7] 7:8 8:8 12:8,19 17:13 25:20 83:10
**additional** [4] 62:17 66:22 68:12,13
**address** [15] 20:18 35:11,12,14,25 36:22 38:25 46:24 47:3,20 70:23 81:20 82:2 87:13 88:24
**addressed** [6] 29:24 61:14 63:24 64:1,4 71:5
**adequate** [6] 16:14 19:7 25:13 38:11 39:12 40:8
**adjacent** [1] 30:14
**adjourned** [1] 28:9
**adjournment** [1] 52:14
**adjudicate** [1] 64:9
**adjudication** [1] 66:20
**administrative** [3] 19:8,11 35:6
**admit** [1] 4:12
**admitted** [4] 4:11 5:24,25 11:20

**advantage** [4] 44:3,4 78:6 79:11
**affidavits** [6] 66:22 68:13 69:1 75:21 77:5 78:19
**affiliated** [2] 13:3,20
**affirmative** [1] 73:13
**afternoon** [5] 2:4,7,9,12 29:20
**aggregate** [1] 35:24
**ago** [4] 4:19 27:3 45:11 77:8
**agree** [6] 10:2 18:5 32:7 36:4 40:12 41:7
**agreed** [2] 46:14,14
**agreement** [1] 81:12
**ahead** [4] 2:15 69:9 74:10 76:12
**albarra** [2] 23:9,19
**allegations** [3] 55:15 75:3,12
**alleged** [1] 23:9
**allow** [9] 29:17 55:3 57:3,14 59:11 60:6,18 61:5 69:13,20 70:10 74:24 80:9
**allowed** [2] 6:24 16:12
**allowing** [2] 20:16 65:23
**allows** [1] 57:7
**almost** [3] 22:12 40:2 45:10
**already** [9] 29:23 36:24 48:22 49:1 54:5 58:14 65:11 73:11 74:3 75:18 78:25 80:10 85:6
**alternatively** [1] 53:20
**although** [1] 17:16
**altogether** [1] 18:12
**amend** [3] 41:22 43:9 86:11
**american** [4] 12:6 32:16 33:9,24 34:2,7
**among** [2] 4:9 19:22
**amount** [41] 5:14 6:3 21:25 38:23 54:10,23 56:1 58:12,20 59:18,24 60:17 61:6 63:14,18 64:12 66:3 68:11 69:11 70:14 71:3,12,13,14,20 72:11 74:3,10,14,19 76:22,22 77:20,23 79:20,22 80:1,2,4,23,24
**amounts** [8] 62:15,17,22 63:15 64:8,15 68:13 79:6
**and-a-half** [2] 39:13 40:7
**another** [8] 12:25 16:5 17:13 28:4 53:19 70:7 71:21 89:6
**answer** [7] 8:3,4 15:14,17,19 58:9 67:2
**answered** [1] 15:16
**answering** [1] 31:20
**answers** [1] 15:15
**anticipated** [1] 26:22
**anticipates** [2] 26:16 27:23
**anybody** [2] 53:10,17
**anyway** [1] 75:16
**apologize** [2] 87:13 88:11
**apparent** [1] 11:6 24:21
**apparently** [7] 11:8 13:7 14:7,23 23:13 24:15 25:13
**appeal** [3] 76:3,13,17
**appear** [4] 27:19 28:4,10 69:5
**appearance** [5] 29:23 34:11 71:24
**appearances** [2] 1:12 2:3
**appeared** [1] 44:10

**appellate** [2] 79:3,6
**applicability** [1] 56:20
**applicable** [1] 65:10
**applies** [5] 16:10 55:25 56:3 57:17, 18
**apply** [5] 9:1 10:6,9 43:22 53:21
**appropriate** [2] 70:11 73:21
**appropriately** [1] 58:11
**approval** [5] 3:24 15:7,8 16:6 82:14
**approximately** [4] 22:2 26:25 36:5,24
**april** [24] 14:16 16:20,20 19:22,23 21:21 22:7 26:19,23 33:17 35:19 38:12,15,22 39:4 46:14,21 48:2,21,23 49:2 51:6 72:3,4
**araback** [2] 23:22,25
**araback's** [1] 23:24
**aren't** [1] 63:20
**argue** [5] 7:13 10:6,7 76:13 87:21
**argued** [5] 6:23,24 75:20 79:21 88:11
**arguing** [5] 3:3 33:3,7 76:16 89:8
**argument** [6] 21:22 33:3 70:8 71:18 74:5,16
**arguments** [1] 86:14
**arise** [1] 44:14
**around** [4] 52:3 63:17
**arrearage** [2] 22:13,23
**arrears** [11] 21:7,17,23 41:4 82:20, 24 88:21,23,24 89:2
**articulated** [1] 58:1
**asserted** [2] 55:13 74:15
**assertion** [1] 87:7
**assertions** [1] 88:9
**asserts** [1] 22:20
**asset** [2] 31:3 32:4
**assets** [3] 13:9,13,17
**assignment** [1] 71:17
**assistant** [1] 1:26
**associated** [2] 19:8,12
**assume** [10] 7:1 20:21 23:24 24:2 27:10 41:18 82:5 86:13,18,20
**assuming** [3] 22:24 32:14,19
**assumptions** [3] 40:14 84:3,5
**atm** [1] 44:8
**attach** [2] 60:9 75:19
**attached** [10] 22:18 24:12 26:4,6, 21 27:21 47:11,12 67:11,12
**attaches** [2] 25:20 58:25
**attaching** [3] 59:6 70:3
**attachment** [1] 24:7
**attachments** [2] 26:12,13
**attempt** [1] 31:16
**attended** [1] 81:4
**attention** [3] 4:19 10:25 81:25
**attorney** [2] 31:16 47:18
**attributable** [1] 63:21
**august** [1] 76:7
**authorities** [1] 64:17
**authority** [3] 16:25 46:16 69:19
**automatic** [4] 69:16,17,25 70:2

**available** [5] 28:8 50:1 51:14,25 52:1
**avenue** [1] 1:22
**average** [1] 27:16
**avoidable** [1] 44:16
**avoidance** [1] 44:13
**aware** [1] 2:17
**away** [1] 23:22

**B**

**b)(2** [2] 9:15,16
**b-r-i-t-e** [1] 13:2
**back** [32] 5:10 7:24 8:4 13:17 24:3, 19 27:13 30:8 32:13 34:12 39:6 40:1,2 48:7,22,24 49:2 57:8,13,14 58:2 69:4 70:10 72:24 73:9 75:24 77:21 78:6,21 79:11 80:16,24
**backed** [1] 49:2
**bad** [1] 24:24
**balance** [1] 72:22
**bank** [7] 1:18 2:6 7:19 13:23 29:9, 10 35:22
**bankruptcy** [16] 1:11 4:6 6:14 7:13 25:1,2 30:16 31:5 37:21 44:4 45:21 48:14 55:10 70:1,3 89:6
**barely** [1] 24:5
**based** [4] 4:24 7:24 28:12 41:17 55:14 64:15 72:10
**basis** [26] 4:6,12,15 5:9 6:2 7:9 9:11 11:17 12:17,20 13:2 16:13 23:12,13 27:18 28:1,22,23 37:19 38:8,9 39:23 40:5 43:6 48:17 86:14
**became** [1] 6:20
**become** [2] 54:11 60:7
**becomes** [1] 60:5
**began** [2] 2:1 76:8
**begin** [1] 3:5
**beginning** [3] 18:14 35:21 44:10
**behalf** [2] 2:6 39:18
**behind** [2] 10:3 22:9
**belief** [1] 56:17
**believe** [27] 3:17 5:14 10:19 12:2 21:20 22:7 29:11 32:5 46:20 55:5, 10,22,24 56:2,4,6,11 57:7 67:11 73:13 74:21 76:4,24 78:15 79:18, 19 85:8
**believed** [4] 33:21 34:6,9 55:12
**below** [1] 27:5
**berman** [7] 13:24,25 14:7,10 23:8, 11,15
**besides** [1] 68:23
**best** [5] 3:9 9:22 32:25 33:4 34:7
**better** [7] 49:8 50:9,11 52:20 77:7 78:4 81:12,19 86:15,16 88:13
**between** [4] 48:12 63:12 70:19 71:5
**beyond** [1] 68:24
**big** [1] 71:6
**biggest** [1] 36:14
**bill** [6] 32:16 33:9,24 34:3,7 69:22
**bmw** [3] 11:17,21 12:5
**boils** [1] 70:17
**borrowed** [1] 34:23

**borrows** [1] 15:6
**both** [1] 10:13
**bottom** [1] 13:18
**boulevard** [1] 45:13
**briefly** [1] 47:19
**bring** [1] 30:4
**bringing** [1] 17:17
**brings** [1] 29:21
**brite** [6] 13:2,6,10,10,16,19
**broadway** [1] 1:16
**brooklyn** [1] 1:28
**brother** [1] 13:3
**brought** [4] 4:18 10:24 29:5 58:11
**budget** [2] 46:19 47:8
**build** [1] 32:3
**building** [3] 45:13 47:9,10
**burden** [8] 8:22 9:13 10:8,10 25:16,19 22:22 75:24
**bush** [1] 48:5
**business** [4] 45:20 46:7 49:13 52:7

**C**

**cadman** [1] 1:27
**calculating** [1] 71:14
**calculation** [2] 66:22 77:22
**calculations** [2] 69:2 77:21
**calendar** [4] 2:17 52:4 53:19 82:21
**call** [3] 48:21 57:12 85:25
**called** [3] 13:23 28:3 27:22
**came** [5] 7:15 14:23 16:15 28:7 45:11
**canceled** [1] 72:9
**cannot** [7] 5:10 9:10 10:8 15:10 25:7,16 83:12
**capital** [1] 12:6
**car** [1] 11:21
**card** [1] 11:20
**cards** [4] 11:17,21 12:5 28:20
**care** [1] 71:1
**carla** [1] 1:10
**carried** [1] 73:14
**carry** [4] 52:9,16 81:16,17
**cart** [1] 39:10
**carting** [5] 13:2,6,10,11,19
**carting's** [1] 13:16
**case** [69] 1:9,9 3:10 4:2,3,17,20,23, 24 6:5 7:24 8:5,14 11:4 17:24 18:14,20 19:13,17 20:6,24 24:20,24 25:3 27:3 28:15,23,25 29:3,17 32:17,19,21 35:1 41:25 42:1 43:1,7, 18 44:9 49:9 51:10 56:12 57:7,20, 21 58:2 59:17 65:1 67:1 69:7 70:21 73:20 74:3,4 78:1,5 79:4,12, 13,14 81:1 86:15,16,18 87:3 88:6, 16
**cases** [2] 86:16 87:11
**cash** [30] 3:22,25 7:10,16 8:8 11:1 14:17 16:1,7,7,12,25 17:8,11 18:16 20:11 24:3 26:20 32:17 36:4,12, 17,19,21,25 37:9,14,24 39:23 40:5 48:18 67:15

**cashed** [1] 75:18
**category** [1] 86:1
**cause** [22] 3:11,13,15,17,18 4:1 8:4 10:11,17 16:1,4,5,5 17:13 18:20 19:16,19 20:8 25:3 28:24 29:23 35:12
**causes** [1] 44:25
**ceased** [1] 37:9
**cell** [3] 11:17,22,22
**centers** [1] 63:17
**certain** [5] 3:16 6:25 11:16 12:3 15:11 50:14
**certainly** [16] 6:21 12:18 15:4,18 16:9 17:9,10 20:10,10 47:5 50:25 58:4 64:11,24 75:21 81:19
**certification** [1] 68:4
**certify** [1] 90:1
**cetera** [5] 28:20,20 29:14 69:3 77:6
**challenge** [4] 55:1,2,5 64:14
**challenging** [2] 54:23 55:3
**chance** [5] 25:23 40:17 44:4 46:24 47:1
**change** [3] 50:25 82:19 89:4
**chapter** [4] 24:21 25:3 28:23 36:10
**characterize** [1] 33:5
**characterized** [1] 42:16
**check** [2] 15:15 81:18
**checks** [4] 7:10 72:9 75:18,19
**chose** [1] 66:11
**circumstance** [1] 58:1
**circumstances** [10] 3:7 8:6,13,19 9:21,24 20:14 39:16 58:18 32:23,23
**claim** [69] 23:23 35:7 53:25 54:3,5, 7,17 56:1 58:4,13,17 59:9,12,18, 21,24,25 60:5,7,17,17 61:6,25 62:6,16 63:6,14 64:12,24 65:9 66:3, 6,23 69:4,11 70:14,21 71:3,12,13, 15,16,20 73:23 74:4,10,15 77:23 78:1,5,23 80:24 83:4,4,9 84:2,5,17, 22,23,24 85:15,21 86:4 87:19 88:2, 22,25
**claims** [4] 64:13 70:19 83:2
**class** [2] 83:3 84:12
**cleaned** [2] 43:24 44:2
**clear** [6] 20:12 28:25 69:16 70:4 72:15 83:1
**clearly** [4] 42:1,2 86:2,5
**clerk** [4] 2:2 66:10 68:11 89:18
**clerk's** [6] 66:17,23 68:15,17,25 69:6
**client** [8] 14:12,13 21:3 43:4 45:1,2 47:2 75:13
**client's** [1] 14:3
**close** [3] 22:24 49:13 52:7
**closer** [1] 22:22
**closing** [1] 47:22
**code** [7] 6:7 13:8 17:11 31:6 86:17 89:6
**collateral** [26] 3:22,25 7:16 11:1 14:4,17 16:1,7,7,12,25 17:8,11 20:

11 **26**:20 **48**:18 **55**:22,24,25 **56**:3, 20 **57**:18,22 **67**:15 **79**:8,10
**collected** [2] **36**:25 **62**:24
**colloquy** [3] **5**:25 **11**:19 **12**:12
**column** [2] **27**:7,15
**come** [10] **5**:10 **6**:23 **11**:25 **15**:7 **32**:11 **41**:23 **48**:25 **68**:12 **76**:7 **78**:3
**comes** [1] **65**:8
**coming** [3] **46**:12 **49**:6 **52**:20
**commence** [1] **50**:17
**commenced** [7] **51**:4,7,8,10,12,17 **53**:4
**commencement** [1] **50**:20
**comments** [1] **78**:12
**committee** [1] **44**:20
**community** [1] **46**:7
**company** [4] **6**:13 **13**:3,20 **34**:4
**compensate** [1] **83**:4
**complains** [1] **39**:18
**complaint** [5] **43**:25 **62**:8 **73**:21 **74**:8 **79**:14
**complete** [10] **20**:2 **41**:2 **58**:3 **63**:10,13 **64**:22 **70**:19,20 **83**:21 **85**:16
**completed** [3] **51**:12,17 **59**:13
**complex** [1] **87**:12
**complied** [1] **43**:25
**comply** [3] **19**:21 **20**:3,4
**compulsory** [1] **79**:16
**concept** [1] **19**:15
**concern** [1] **61**:11
**concerned** [3] **25**:9 **44**:6 **56**:21
**concerning** [3] **29**:6 **75**:4,13
**conclude** [2] **32**:15 **43**:17
**concluding** [1] **53**:1
**conclusion** [4] **56**:10 **58**:11 **59**:12 **82**:1
**conducted** [1] **11**:15
**conducting** [1] **87**:2
**confirm** [3] **28**:12 **42**:21 **87**:17
**confirmation** [4] **40**:18 **41**:4 **42**:7 **71**:9
**confirmed** [8] **8**:24 **20**:19 **25**:7,10 **41**:19 **43**:10,20 **84**:20
**confusing** [1] **17**:22
**connection** [9] **3**:21 **10**:25 **15**:25 **19**:12 **23**:4 **24**:20 **70**:13 **74**:13,16
**consent** [3] **3**:24 **16**:6 **17**:1,12 **25**:8 **42**:22,24 **43**:1 **50**:24 **52**:13
**consents** [2] **43**:3,4
**consider** [2] **40**:14 **76**:14
**constitute** [3] **8**:13 **40**:21 **62**:23
**constitutes** [4] **4**:1 **11**:11 **16**:1 **25**:3
**contain** [1] **78**:20
**contained** [1] **77**:6
**contains** [1] **3**:16
**contend** [1] **54**:20
**contending** [1] **54**:17
**contends** [3] **14**:8 **23**:21 **54**:15
**contention** [1] **54**:18
**contested** [1] **25**:7
**context** [4] **59**:17,19 **61**:24 **70**:16

**continuance** [1] **72**:25
**continue** [8] **5**:18 **10**:16,18 **20**:16 **30**:17,18 **52**:23 **73**:3
**continued** [2] **31**:21 **72**:14
**continues** [1] **23**:15
**continuing** [6] **17**:14 **18**:7 **20**:12 **35**:18 **36**:2 **47**:24
**contractual** [3] **41**:3 **83**:6 **89**:5
**contribution** [1] **48**:20
**control** [2] **13**:4 **81**:5
**conveniently** [1] **15**:14
**conversation** [1] **31**:18
**conversations** [2] **41**:5 **42**:24
**conversion** [5] **3**:8 **9**:20,23 **25**:3 **32**:22
**convert** [22] **1**:9 **2**:19,20 **3**:4,10 **4**:24 **8**:1,5,14,21 **19**:17 **20**:6 **29**:3,16 **42**:1,25 **43**:7,18 **50**:13 **55**:16 **59**:17 **81**:25
**converted** [1] **32**:21
**converting** [1] **28**:23
**copies** [1] **13**:12 **72**:9
**correct** [22] **9**:15 **17**:3,4,5 **21**:16 **22**:24 **36**:7,9 **38**:17,25 **40**:24 **57**:24 **58**:20 **59**:8 **60**:1,2 **61**:2 **66**:24 **68**:10 **77**:21,23 **79**:18
**corrected** [3] **29**:24 **30**:1 **34**:10
**correctly** [1] **84**:16
**costs** [7] **13**:6,11 **19**:8,11 **22**:21 **28**:3 **69**:2
**couldn't** [2] **6**:20 **41**:17
**counsel** [24] **28**:8 **29**:20 **31**:19 **34**:21 **41**:6,8 **43**:3 **45**:7 **46**:23 **47**:8,21, 25 **48**:4,22 **51**:19 **58**:16 **66**:11 **72**:2, 5,6 **73**:23 **76**:8 **85**:23,23
**counsel's** [1] **80**:11
**counter** [2] **72**:1 **77**:24
**counterclaim** [1] **55**:13
**counterclaims** [4] **63**:7 **74**:15 **79**:16,23
**county** [3] **66**:17 **68**:15 **69**:1
**couple** [8] **3**:20 **20**:9 **27**:17 **31**:22 **45**:10 **47**:20 **72**:7 **83**:1
**course** [5] **14**:11 **32**:17,19 **45**:20 **60**:23
**court** [387] **1**:29 **2**:13,15,23 **3**:1,7,9, 12,24 **4**:2,22 **5**:2,12,16,21 **6**:1,3,16, 23 **7**:2,7,9,15,21,23 **8**:1,5,9,14,16, 18,19 **9**:6,9,14,18,22 **10**:4,14,16, 21 **11**:18,25 **12**:13 **14**:2,6,12 **15**:5, 6,8,10,13,21,25 **16**:6,9,11,12,13, 15,17,24,25 **17**:2,4,7,12,19,22 **18**: 3,9,12,14,18,22,25 **19**:3,21,21,24 **20**:1,3,15,18,21 **21**:3,6,14,17,22 **22**:3,5,14 **25**:9 **26**:4,9,14,19 **27**:2 **28**:11,22 **29**:1,2,5,7 **30**:1,4,8,19,23 **31**:5,20 **32**:1,6,13 **33**:14,18,24 **34**: 2,6,11,15,22,25 **35**:4,9,16,20 **36**:1, 6,9,15,17,20 **37**:10,16,19,22 **38**:1, 3,13,17,20,23 **39**:6,9 **40**:11,25 **41**: 10,14,17,21,24 **42**:11,15,21,25 **43**: 3,6,11,16 **44**:6,11,12,19,24 **45**:4,

25 **46**:10,16,23 **47**:2,15,18 **48**:10 **49**:6,18,21,23 **50**:4,7,15,17,21 **51**: 2,8,14,18,21,23 **52**:5,11,18,22,25 **53**:2,9,14,17,22 **54**:5,7,12,13,13, 14,17,21 **55**:1,7,12,16,19,24 **56**:8, 12,16,17,25 **57**:2,8,9,13,16,19,21, 25 **58**:3,4,7,9,12,13,14,16,19,24, 25 **59**:2,10,13,22 **60**:6,13,20 **61**:8, 11,14,15,17,23 **62**:1,2,7,14,20 **63**: 2,5,11,13,20,23,24 **64**:2,4,8,10,23 **65**:1,4,8,14,17,20,22,25 **66**:2,10, 14,24 **67**:2,6,16,18,21,24 **68**:1,5,8, 18,22 **69**:4,7,11,15,19,19 **70**:3,6,8, 9,20 **71**:1,7,10 **72**:13,13,17,19,24 **73**:1,5,9,10,14,18,19,22 **74**:1,2,6, 17,20 **75**:1,3,8,11,24 **76**:4,8,18,21 **77**:1,8,11,14,15,16 **78**:4,8,12,17 **79**:2,3,7 **80**:1,5,9,15,16,20 **81**:1,4, 9,10,12,15,16,19,20,22 **82**:8,11,16, 22,25 **83**:18,19,21,25 **84**:6,14,21, 24 **85**:7,14,25 **86**:9,12,25 **87**:11,16 **88**:18 **89**:4,10,14 **90**:1
**court's** [4] **4**:18 **10**:24 **14**:16 **24**:23
**cover** [1] **40**:1
**cplr** [1] **62**:8
**craig** [1] **1**:10
**credible** [1] **15**:20
**credit** [5] **11**:17,20,21 **12**:5 **28**:20
**creditor** [11] **31**:17,14,25 **32**:2 **41**:1,1 **46**:3 **82**:23 **84**:9 **89**:5
**creditors** [15] **3**:9 **9**:23 **16**:9 **21**:1, 15 **23**:7,10 **24**:5,8,9,16,17 **32**:25 **60**:12 **65**:13
**creditors'** [1] **44**:20
**cross** [1] **6**:8
**culled** [1] **6**:8
**cumulative** [2] **18**:23,25
**cumulatively** [1] **35**:21
**cure** [8] **21**:7 **25**:11 **83**:3,7,8,13 **85**:3 **88**:21
**cured** [6] **9**:5 **33**:3,7 **42**:5 **46**:5 **47**:3
**curing** [1] **42**:18
**currently** [1] **31**:7
**curtin** [5] **1**:25 **2**:7,8 **52**:9,13
**cut** [1] **57**:3
**cuts** [1] **70**:21

**D**

**damages** [3] **31**:16 **83**:5,10
**daniel** [2] **1**:13 **2**:9
**danzig** [2] **1**:20 **2**:5
**date** [17] **16**:22 **17**:7 **18**:15 **21**:21 **28**:9 **30**:4 **44**:11 **50**:22 **51**:15,25 **53**:4 **82**:14,18 **83**:15 **85**:9 **87**:23 **89**:3
**dated** [1] **90**:5
**dates** [2] **15**:19 **52**:1
**daughter** [1] **12**:12
**day** [19] **8**:18 **24**:9 **28**:8,9 **48**:13 **49**:11,24 **50**:1,5 **51**:9 **52**:2,24 **53**:5 **54**:15 **68**:24 **78**:22 **80**:7 **88**:8 **89**:8
**days** [11] **31**:7,8 **50**:18,20,22 **51**:5,9, 16,24 **53**:4 **88**:20

**deadline** [1] **78**:2
**deal** [3] **32**:10 **70**:16 **71**:21
**dealt** [1] **59**:18
**debating** [1] **87**:15
**debt** [2] **5**:8 **25**:17
**debtor** [168] **1**:7,13 **2**:10,12 **4**:5,11, 16,19,20 **5**:10,23,25 **6**:21 **7**:9,16, 18,19 **8**:20,21,22 **9**:3,10,13,25 **10**: 4,7,9,12,21,22,23 **11**:1,4,6,9,12,16 **12**:11,13,17 **13**:8,9,17 **14**:8,17,19 **15**:1,2,7,23 **16**:6,14,17,17,20,21, 24 **17**:8,10 **19**:22,23 **20**:2,2,3,13, 16,22,24 **21**:19 **22**:7,8 **23**:6,10,13, 14,19,20,21 **24**:6,18,21 **25**:16,18, 20 **26**:15 **27**:1,4,6,14,21,23 **28**:1, 12,15 **29**:1,6,10,10,17,24 **30**:5,16 **31**:13,21 **33**:21 **34**:3,18,19 **35**:1,1, 18 **36**:10 **38**:11 **39**:21,24,25 **40**:6 **43**:23 **44**:6,19 **45**:2,10,19 **47**:21,24 **48**:9,10,12,13,14,15,21,24,25 **54**:4, 14,17,19,23 **55**:10,13,15,16 **56**:24 **57**:15 **60**:10 **61**:21 **62**:23 **63**:3,7 **64**:12 **65**:6,6,10 **67**:14 **72**:9,23 **73**: 2 **74**:15 **76**:16 **78**:23 **79**:21,22,23 **80**:8 **82**:11 **83**:18,20
**debtor's** [39] **3**:22,23 **4**:9 **7**:18 **9**:14 **12**:11 **13**:4,21 **14**:20,23 **15**:5 **16**:12 **19**:5,6,7,17,19,20 **20**:21 **22**:19 **23**: 1,6 **24**:7,12 **25**:6,25 **26**:22 **27**:10, 15 **28**:8 **29**:9 **30**:15 **44**:15 **54**:18 **59**:1 **61**:9,24 **69**:23 **76**:16
**debtor-in** [2] **20**:16 **44**:20
**debtor-in-possession** [2] **4**:17 **73**:3
**debtors** [1] **64**:14
**debts** [3] **4**:7 **6**:1 **9**:11
**december** [1] **75**:20 **76**:6
**decide** [6] **49**:9 **50**:19 **57**:8 **59**:16 **70**:14 **84**:18
**decided** [5] **30**:17 **31**:9 **50**:13,21 **51**:3,9,24 **53**:3 **55**:18 **56**:6 **57**:10 **74**:6,22 **79**:24,25
**deciding** [1] **74**:21
**decision** [6] **31**:23 **54**:7 **55**:12 **57**:22 **65**:25 **66**:6 **71**:25 **76**:6,17
**declaration** [7] **15**:25 **26**:19,21,21 **27**:2 **48**:10 **67**:13
**declarations** [2] **77**:5 **78**:19
**deducted** [1] **38**:7
**deemed** [1] **44**:1
**default** [7] **23**:17 **83**:3,7,9,11,13 **85**:3
**defaulted** [1] **23**:14
**defaults** [1] **22**:19
**defend** [1] **72**:25
**defendants** [2] **75**:4,12
**defenses** [1] **79**:23
**deficiency** [1] **23**:23
**defines** [1] **83**:2
**definitely** [2] **5**:14 **6**:4
**definitions** [1] **21**:2
**delay** [2] **81**:5,6

**deposition** [2] 14:24 24:1
**depreciation** [7] 36:12,13,15,17, 19 48:1,2
**describe** [2] 84:17,25
**describes** [1] 87:5
**describing** [1] 85:1
**description** [2] 40:19 47:13
**despite** [1] 47:8
**determination** [4] 31:8 53:20 59: 15 73:19
**determinations** [1] 66:9
**determine** [5] 32:19 44:15 74:3,9 84:19
**determined** [3] 62:18 74:17 79:8
**determines** [1] 8:18
**develop** [2] 30:18 32:2
**developed** [1] 31:2
**difference** [2] 36:19 59:20
**different** [8] 3:18 5:19 6:8 9:8 20:7 21:2 71:11,11
**diminishment** [1] 47:25
**diminution** [2] 17:14 18:7
**dip** [6] 4:21 31:17 33:12 34:1 43: 21 75:25
**dip's** [1] 75:25
**direct** [1] 49:12
**directed** [5] 20:1 35:19 46:13 47:7, 10 54:10 66:7 68:20 80:3
**directing** [2] 52:6 66:10
**directly** [1] 12:9
**directs** [1] 46:22
**disagree** [1] 54:18
**disagrees** [3] 2:18,21 76:17
**disappear** [1] 48:16
**disappeared** [2] 29:12 48:19
**disarray** [1] 4:3
**disbursements** [1] 47:13
**disclosure** [12] 21:5,12 23:2 26:4, 7,11,13 27:22 37:22 40:20 82:15 85:1
**discretion** [4] 8:5,14 20:15 43:18
**discussed** [1] 41:9
**discussion** [4] 17:3 29:22 57:3 88: 1
**dismiss** [3] 1:9 7:24 41:25
**dismissal** [2] 7:25 64:21
**dismissed** [1] 8:1
**dispute** [5] 24:22,25 63:17 65:4 85: 12
**diversion** [1] 8:11
**docket** [8] 54:16 58:23,24 60:18, 20,24 69:14 80:23
**docketed** [3] 60:3,4 65:15
**doctrine** [2] 6:24 56:7
**document** [1] 62:11
**documentation** [1] 45:14
**documents** [5] 15:3 22:1 26:10 78:22 82:7
**doing** [10] 4:13 8:12 33:23 46:4 48: 6 49:25 55:20,21 80:8 89:10
**dollar** [1] 36:11
**dollars** [2] 6:5 12:7

**donation** [1] 35:2
**done** [14] 8:12,21 43:23 44:3,11 45: 16 58:14 62:1 68:23 73:22 74:3 78:3 80:5 81:2
**door** [1] 31:11
**down** [5] 5:17 27:5,7,20 31:15 70: 17 85:24
**drafted** [2] 25:9 84:15
**due** [2] 42:10,20 64:8
**during** [21] 4:16 6:10 11:14 12:21 13:5 14:11,24 16:20 17:1 24:13 28:15 31:6 32:17,19 35:15 55:11 62:24,24,25 72:13,13
**duty** [2] 46:2 73:13

---

## E

**each** [2] 26:25 47:14
**earlier** [2] 2:24 82:6
**early** [2] 51:14 89:3
**earns** [1] 12:14
**east** [1] 1:27
**economy** [2] 58:2 62:4
**effect** [10] 15:22 35:7 53:24 56:18 60:23 69:18,24 79:8,10 87:22
**effective** [2] 83:14 87:23
**effort** [2] 45:22 88:8
**efforts** [1] 30:5
**eight** [3] 6:7 36:11,17
**either** [4] 10:8,13 23:14 73:5
**election** [1] 53:8
**electronic** [2] 1:33 90:2
**enables** [1] 44:4
**encumbered** [1] 60:11
**end** [9] 4:1 8:18 16:3,19 24:8 38:24 51:1 78:22 83:7
**engaged** [1] 73:4
**enter** [3] 56:13 66:10 68:12 69:13 73:1
**entered** [9] 19:21 53:24 54:12,16 66:9 68:10 69:20 73:15 86:23
**entering** [4] 57:12 66:1,2 69:24
**entertain** [1] 32:4
**entire** [3] 46:21 52:24 63:16
**entirely** [2] 71:11,11
**entitled** [4] 44:7 86:2 89:7 90:3
**entity** [4] 13:2 23:8 36:13 44:7
**entry** [3] 54:8 56:15 62:16
**enumerated** [1] 20:8
**equals** [1] 39:4
**escrow** [6] 22:11 62:23 63:22 64:5, 6,16
**escrows** [2] 62:12 63:16
**esq** [5] 1:13,14,18,19,25
**essentially** [13] 3:6 5:24 7:12,17 13:11 14:21 20:23 21:16 23:5,23 31:8 59:13 74:22
**establish** [5] 3:8 9:22 10:4,13 47:8
**established** [2] 8:25 43:20
**establishes** [2] 3:11 9:25
**establishing** [1] 8:22
**estate** [15] 3:9 9:23 17:15 18:7 22: 9 29:4 31:3 32:25 33:9 35:18 36:3, 13 46:9 47:25 60:12

**estimation** [1] 72:11
**estoppel** [8] 55:22,25 56:3,20 57: 18,23 79:8,10
**et** [5] 28:20,20 29:13 69:2 77:5
**evaluating** [1] 61:24
**even** [24] 17:2 18:21 19:10,14 21: 10 25:12,16,19 27:20 28:7 29:5,12 34:11 39:7 55:25 57:19,25 60:23 68:10 70:1 84:11 85:9,10 88:21
**event** [2] 9:12 45:17
**everybody** [2] 24:17,18
**everything** [6] 42:10,20 43:24 44: 3 47:3 57:9
**evidence** [1] 5:21
**evidentiary** [8] 5:17 15:21 17:18 18:4 19:15,15 49:7 72:23
**exact** [1] 5:13
**exactly** [6] 14:14 22:23 23:11 25: 14 27:9
**exam** [1] 34:16
**examination** [12] 4:8 11:14 12:22 13:5 14:21 24:1,14 28:7 34:20 44: 18 45:7 55:11
**example** [14] 3:18 4:6,2,12 9:9 12:6,6 16:5 17:13 31:24 35:17 45: 6,23 60:10
**examples** [18] 3:17,18 4:2 5:5,6,6, 15,19 6:8,9 7:5 9:8 10:11,20 15:9 16:5 20:8 28:5
**except** [7] 24:18 29:21,21 41:8 58: 22 59:20 69:12
**excess** [6] 6:12 12:15,19 22:21 23: 20 29:11
**excludes** [1] 62:10
**exclusive** [1] 7:6
**excuse** [1] 62:14
**exercise** [2] 38:5 46:2
**exhausted** [2] 88:14 89:14
**exhibit** [3] 47:14 67:12 68:3
**exist** [1] 38:8
**existed** [1] 30:14
**exists** [5] 8:4 9:4 19:16 28:24 33:2
**expect** [1] 41:12
**expectation** [1] 35:5
**expense** [5] 27:12,15 36:12,14 75: 25
**expenses** [22] 4:12,15 6:25 27:5,7, 8,16,20,25 28:6,16,19 33:12 37:1, 3,5 40:2,3,9 47:9 48:7,17
**expertise** [2] 65:3,3
**explaining** [1] 89:12
**express** [6] 12:6 32:16 33:9,24 34: 2,7
**extent** [2] 84:19 85:21
**extra** [1] 10:1
**extraordinary** [1] 46:7
**extremely** [1] 28:4

---

## F

**face** [10] 18:20 20:13,23,25 25:15, 24 28:10 35:10 42:8 87:18
**faced** [1] 6:22
**facilitate** [1] 59:15

**facility** [1] 13:8
**fact** [15] 8:12 20:1 29:9 54:3 57:9 61:3 63:17 70:24 71:20 72:5 74:6 75:15 79:9 86:14 88:21
**factor** [7] 8:15 63:9 64:21 65:5,8 83:8 89:1
**factors** [6] 61:20 62:3 64:23 67:5 77:12,14
**facts** [2] 66:9 86:18
**failed** [2] 4:17 20:4
**fails** [1] 16:6
**failure** [4] 3:23 19:20,20 64:5
**fair** [1] 85:19
**fairly** [1] 85:22
**faith** [2] 24:24 32:10
**familiar** [1] 67:1
**family** [1] 12:25
**far** [3] 17:7 56:20 79:8
**faster** [1] 78:9
**favor** [4] 64:21 67:5 79:25 84:12
**feasible** [1] 31:3
**february** [6] 16:19 26:23,24 27:14, 25 72:7,15 75:22
**feel** [2] 51:8 54:2
**fees** [3] 19:8,12 22:21
**feldman** [5] 56:6,8,21 57:17,22
**few** [2] 24:7 27:3
**fiduciary** [1] 46:2
**fifteen** [7] 50:19,22 51:9,16,24 52: 2 53:4
**fifth** [1] 65:5
**fight** [1] 84:10
**figure** [4] 17:3,5 22:16,25
**figures** [5] 77:6,7 78:20,20,24
**file** [10] 20:2 25:1 41:14 49:12 52:6 54:22 76:3,13 84:22 85:11
**filed** [40] 2:19,20,24 3:21 4:23 15: 25 16:17 17:25 18:6 20:22 22:19 24:21 26:18 27:2 28:1 38:22 48: 10,13,14 51:5,5,6 54:16,22 55:10, 13 56:1 58:17 67:14 71:16 75:16, 75:16,17,17 77:25 80:8,8 83:18 87: 16,17
**filing** [9] 3:23 4:6 6:14 20:6 24:24 33:13 50:18 60:15 78:4
**final** [2] 56:9 70:25
**finalize** [1] 60:16
**finally** [5] 19:18 56:6 57:10 59:13 66:3
**financed** [1] 14:9
**find** [3] 45:23 67:11 88:16
**finding** [2] 76:21 77:2
**finds** [1] 86:8
**fine** [1] 2:23
**finish** [4] 32:3 53:3,5 74:24
**firm** [1] 2:10
**first** [18] 2:22 3:18 4:16,20 11:3 26: 15 27:3 28:15 30:14 31:7 41:13 51:14 55:10 63:9 64:20 72:8 77: 18 81:25
**five** [5] 3:18 9:8 17:5 24:8,16
**fix** [7] 59:24 66:3,3 69:11 80:1,2,4

**fixed** [3] 9:6 62:16 70:15
**fixes** [1] 56:1
**fixing** [1] 58:12
**flash** [2] 14:18,18
**flow** [8] 18:16 37:15,16,25 39:23 40:5
**focusing** [1] 29:7
**follow** [1] 48:5
**following** [1] 33:13
**forced** [2] 72:24 84:5
**foregoing** [1] 90:1
**forever** [1] 79:4
**forget** [2] 16:22 37:14
**forgotten** [1] 77:14
**form** [7] 20:24 21:1 40:17 53:12,14 83:25 88:25
**formally** [1] 54:16
**forth** [9] 3:3 4:4 24:3,6 26:21,23 54:19 58:2 67:5
**forward** [7] 27:18 29:17 38:8,9 39:16,21,24 40:6,15,23 44:5 47:13 88:6,13
**found** [2] 21:6 87:12
**four** [7] 3:18 9:8 11:4,8 23:9 24:8,17
**frame** [4] 50:15,24 51:2 87:22
**frames** [4] 8:25 43:20 50:12,14
**framework** [2] 88:1,10
**friday** [1] 50:5
**friend** [5] 14:25 23:25 24:14 34:17,24
**friends** [1] 24:2
**front** [2] 26:2 65:25
**fruition** [1] 32:12
**fulfill** [1] 68:18
**full** [2] 47:12 49:24
**fully** [7] 56:5 57:10 62:6 74:17 77:6 79:25 85:21
**fund** [2] 37:15,25
**funds** [4] 8:11 15:6 21:7 46:20
**further** [14] 14:22 27:20 28:9 39:17 46:22 67:7
**fuzzy** [1] 48:5

**G**

**gabor** [50] 1:14,15 2:10,11,11,11 35:11,13,25 36:4,7,10,16,18,22 37:12,18,20 38:2,4,15,18,25 39:8,11 40:24 41:5,12,16,20,22 42:9,14,19,23 43:2,8,14,23 44:9,17,22 45:2 50:1,9 51:12,16 82:12 83:16 86:7
**gauge** [1] 39:21
**gentleman** [1] 24:11
**george** [1] 48:5
**getting** [8] 6:21 14:10,13 18:21 19:14 27:1 32:6 42:20
**give** [18] 2:13 8:14 14:17 23:21 41:21,24 43:11 47:21 48:25 49:10,10,23 50:4,5 60:12 65:18 71:25 85:2
**given** [5] 5:15 44:12 54:3 57:8 77:1
**gives** [1] 71:17
**giving** [2] 5:5 69:24

**got** [5] 24:1 25:23 28:7 58:9 63:5
**gotten** [3] 10:12 64:18 79:1
**grandmother** [1] 39:9
**granted** [4] 9:19,21,24 74:9
**granting** [1] 9:2
**gross** [19] 3:19,25 5:6,20 8:10 9:8 10:19 11:11 15:9,22 16:1 20:10 30:9,25 31:4,11 32:15,20 42:2
**grounds** [1] 9:2
**group** [2] 1:5 2:2
**guarantor** [1] 61:10
**guess** [15] 3:3 11:9 13:24 22:12 23:17 33:3 34:15 38:22 57:19 66:3 70:17 75:6 77:17 79:16 81:13
**guidelines** [1] 7:11

**H**

**hand** [2] 39:19,20
**handled** [3] 70:13 80:13 81:18
**handling** [2] 66:25 78:5
**happen** [1] 44:10
**happened** [1] 24:20
**happening** [1] 7:1
**happens** [1] 66:18
**happy** [1] 24:18
**hard** [2] 9:18 48:5
**hardin** [1] 72:6
**harmful** [2] 16:8 17:10
**harms** [1] 72:22
**he'll** [2] 35:13 78:25
**hear** [10] 35:13 46:23 47:15,18 51:24,25 52:1 64:24 81:23 83:22
**heard** [2] 50:13 57:9
**hearing** [8] 4:3 5:17,25 10:22 11:19 12:13,18 13:23 15:21 16:12 17:18 18:4 19:15,15 40:13 43:12,14 49:7 50:17,20 51:4,17 52:15 53:4 61:14 72:23 82:14 87:2
**hearings** [2] 3:20 71:9
**heavily** [1] 25:7
**help** [1] 15:18
**helpful** [1] 71:22
**himself** [4] 34:22 46:16,19,21
**hold** [1] 79:3
**holder** [1] 83:4
**holding** [1] 72:23
**honest** [1] 66:5
**honor** [219] 2:4,7,9,12,16,16,18,21,25 3:2,16,19 4:4,4 5:1,13,18,23 6:5,7,18 7:5,5,8,15 8:8 9:7 10:11,18 12:1,3,7,10,15 14:14,15,15 15:3,9,22 16:3,16,16 17:5,9,13,16,17,21 18:5,11 19:5,14,18 20:3,7,12,20,22 21:9,16,25 22:11,17,17 23:1,3,5,6 24:4,9,11,20,24 25:2,5,5,14,16,20,22,23,24 26:1,2,15,18 27:7,13,21,25 28:5,10,14,21,24 29:14,15,16,19,19,20,24 30:3,13 33:20 35:19,25 36:4,22 38:5,19,21 39:8 40:24 41:5,12,16,20 42:9 43:5,23 44:9,18,22 45:3,6 46:13,18,21 47:6,7,10,20 48:8,18 49:3,4,5,15,16 50:2,6,10,16,24 51:13,22 52:3,9,13,

21,24 53:13,18 54:2,9 55:6,9,23 56:4,11,15,23 57:7 58:6,8,15 59:8 61:3,4 62:19 65:11 66:16,25 67:4,13,20,23 68:3 69:10,12 72:23 73:7 74:12,20,23 75:9,23 76:15,20,24 77:4,12 78:2,7,10,14,15 79:5,19 80:6,11 81:3,7 82:4,5,6,9,12,13 83:22 84:18 86:7,20 87:13 88:17 89:17
**honor's** [1] 22:24
**honorable** [1] 1:10
**hope** [2] 42:7 88:12
**hoping** [1] 42:23
**hundred** [1] 34:3
**husband** [1] 12:2
**hyland** [2] 1:20 2:5

**I**

**i"m** [2] 52:20 73:9
**idea** [3] 11:5 12:17 25:11
**identified** [16] 3:7,17 6:7 9:7,21 10:23 12:3,21 13:14,15,24 17:1 19:11,18,25 30:2
**identifies** [2] 8:20 16:4
**identify** [3] 3:19 12:1 32:24
**ike** [1] 13:21
**ill** [1] 7:19
**immediately** [1] 6:14
**impact** [2] 72:21 75:25
**impaired** [3] 23:2 83:3 84:11,12 86:8,9,10 87:5,15,20 88:2,2,2
**impairment** [1] 83:2
**important** [7] 2:18 33:5 53:23 54:3 61:23 66:15 85:14
**importantly** [1] 25:8
**improper** [8] 18:11 12:18 28:18,25 29:8,18,19 39:19,23 44:2 45:18
**improperly** [2] 16:25 33:6
**improvements** [1] 32:9
**inaudible** [1] 9:3
**inclined** [2] 75:23 76:2
**include** [1] 75:21
**included** [8] 38:7 63:16 64:5
**includes** [2] 8:10 36:11
**including** [2] 22:21 35:21
**income** [4] 26:17 37:2,4,5
**incomplete** [1] 19:24
**incomprehensible** [1] 21:6
**inconsistent** [3] 25:25 27:19 28:4
**incorrectly** [1] 68:14
**increase** [1] 39:7
**increased** [1] 28:16
**incredibility** [1] 15:23
**incurred** [2] 83:5,11
**indicated** [3] 14:19 71:24 82:6
**indicative** [3] 37:13 39:16 40:5
**indicia** [1] 19:19
**information** [2] 20:4 74:13
**initial** [1] 6:6
**initially** [1] 13:5
**initio** [1] 68:24
**insiders** [2] 32:18 44:15
**instead** [9] 15:1,14 66:8,12 68:15,

**19** 80:2 81:2 87:7
**institute** [1] 20:15
**instructions** [1] 45:4
**instrument** [4] 62:9 64:7 74:7 79:15
**instruments** [2] 75:5,14
**insurance** [6] 6:13,16,19,20,23 65:10
**insurer** [4] 6:18,22 65:6,7
**intend** [1] 52:23
**intent** [1] 10:3
**interceded** [1] 30:16
**interest** [8] 3:9 9:23 32:25 40:22 66:22 69:2 71:18 72:10 82:24 83:2,5,8 84:20 88:6,25 89:2
**interesting** [3] 25:21 48:8,17
**interests** [1] 34:7
**interlineate** [1] 61:4
**investigate** [1] 44:13
**investigated** [2] 29:4,18
**invoices** [1] 6:15
**isn't** [9] 30:25 38:24 40:17 41:10 43:6 57:4 58:10 61:1 79:12
**issue** [42] 5:8 6:20 17:17 18:21 23:16 25:17 34:12 35:12 37:14 45:18 53:18 56:5,25 57:2,4,4,6,8,17 61:13,16 63:14,25 64:3 70:15 71:2,2,4,6,11,11,15,21,22 74:21,22 76:16 79:14,17 81:19,20 88:4
**issued** [1] 76:9
**issues** [14] 29:22 35:12 55:17 57:1,11,16 59:16 63:10,23 70:18,22 72:20 74:18 76:5
**item** [3] 27:22 36:12 47:14
**items** [4] 27:5,12,14 42:6
**itself** [4] 3:25 16:1 18:19 21:10

**J**

**january** [19] 3:23 16:17 17:1 36:23,23,25,25 37:6 39:3 47:9,13 48:7,8,13 66:19 68:7,21 73:15 76:5
**jersey** [2] 1:23 52:21
**john** [1] 12:23
**joint** [5] 49:13 52:6 53:10,11 82:5
**joseph** [2] 1:18 2:4
**judge** [17] 1:11 59:20 65:25 66:1,8,19 68:5,9 72:7 73:1,10,15,19 74:6 75:8 76:4,14
**judge's** [1] 67:10
**judgment** [52] 24:23 53:24 54:8,10,11,22 55:25 56:13,16,21 57:12 58:23,24 59 60:4,13,19,24 25 62:8,17 65:15 66:1,2,11,12,18,20 68:1,2,6,9,11,17,20,21 69:14,14,20,24 70:11 73:1,21 74:8,14 79:10,14,24 80:22 86:23
**judicial** [2] 58:2 62:4
**juncture** [1] 61:21
**june** [18] 49:10,11,14,15 50:4,5,6,8,9 51:1,11 61:15 72:24 81:17,21,23 82:13 89:15
**jurisdiction** [1] 64:24
**justice** [14] 68:19 70:11,13 71:23

**72**:17,19 **74**:22 **75**:11 **76**:18 **77**:16, 19 **78**:6 **79**:12 **80**:12
**justifiable** [1] **34**:8
**justification** [9] **9**:5,12 **33**:2,8,10, 21 **42**:3,4

## K

**keep** [4] **6**:16 **53**:3,5 **76**:1
**kevin** [4] **1**:19 **2**:5 **4**:9 **13**:4
**kind** [3] **8**:10 **64**:15 **66**:5
**kindly** [1] **66**:17
**kinds** [1] **8**:13
**knowledge** [1] **81**:13
**knows** [4] **47**:6 **80**:11,12 **81**:19

## L

**landlord** [1] **65**:4
**larger** [1] **18**:1
**larner** [2] **1**:19 **2**:5
**last** [29] **3**:20 **4**:3,8 **5**:25 **10**:21 **11**:15,19 **12**:12,18 **13**:23 **14**:19 **16**:11 **19**:18 **20**:23 **24**:11 **26**:7,9,12 **27**:17 **29**:23 **34**:11 **38**:22 **44**:11 **58**:16 **71**:24 **72**:4,6 **76**:15 **86**:22
**late** [1] **28**:7
**later** [3] **28**:8 **50**:18,19
**law** [7] **2**:10 **24**:24 **25**:15 **28**:25 **55**:20 **66**:9 **70**:1
**lawsuit** [1] **22**:20
**lawyer** [1] **38**:20
**leader** [1] **46**:8
**lease** [14] **10**:22,24 **11**:7,7 **30**:6,7, 10,14,17 **31**:10,14,22 **32**:1 **65**:4
**leases** [2] **31**:6 **71**:17
**least** [3] **6**:7 **85**:16 **88**:10
**leave** [1] **76**:3
**leaves** [1] **39**:14
**ledger** [1] **47**:12
**left** [3] **57**:11 **65**:24 **74**:18
**leg** [1] **60**:12
**lender** [1] **55**:14
**less** [3] **27**:2 **29**:11 **50**:22
**letters** [1] **76**:8
**liability** [1] **55**:14
**lien** [11] **14**:3 **58**:25 **59**:6,6 **60**:14,25, 25 **65**:18 **69**:23,25 **70**:2
**lieu** [4] **62**:8 **73**:21 **74**:8 **79**:14
**life** [1] **88**:19
**lift** [21] **54**:21 **55**:3 **56**:13 **57**:3,15 **58**:23 **59**:3,5,11 **60**:6,7,13,15,21 **61**:20 **65**:22 **70**:10 **72**:22 **74**:2,5 **77**:18
**lifted** [10] **57**:5 **60**:22,24 **61**:5,25 **69**:8,18,22 **70**:3 **76**:12
**lifting** [2] **55**:7 **61**:18
**light** [1] **76**:7
**likelihood** [5] **8**:24 **10**:5 **17**:15 **20**:19 **43**:19
**limited** [1] **62**:9
**line** [8] **13**:18 **27**:5,14,22 **74**:23,24 **79**:1 **80**:10
**liquidate** [7] **54**:10 **59**:9 **61**:6 **62**:6 **73**:22 **74**:1 **78**:23

**liquidated** [4] **54**:6 **61**:25 **63**:6 **68**:11
**liquidating** [1] **58**:3
**liquidation** [6] **54**:3 **58**:19 **59**:12 **60**:16,17 **74**:19
**list** [4] **7**:2,6 **24**:11 **33**:11
**listed** [2] **48**:2 **84**:11
**listen** [1] **87**:6
**lists** [1] **82**:6
**litigate** [1] **52**:17
**litigated** [1] **56**:9
**litigating** [1] **88**:15
**litigation** [1] **23**:4
**litigator** [1] **81**:18
**little** [2] **22**:14 **88**:14
**llc** [2] **1**:15 **2**:10
**llp** [1] **1**:21
**loan** [30] **12**:16 **13**:24 **14**:22,23,25, 25 **15**:1,2,3,4,8 **21**:8,18 **22**:1 **23**:4 **24**:15 **25**:12 **34**:17,17,18,19,22,23, 25 **41**:3 **42**:18 **45**:11 **48**:20 **62**:11 **87**:12
**loans** [1] **23**:14
**long** [4] **64**:18 **80**:18 **84**:12 **87**:23
**longer** [1] **33**:14
**look** [17] **3**:5,16 **8**:16 **21**:11 **23**:5 **24**:19 **25**:23 **27**:13 **29**:1 **39**:23 **44**:14, 22,24 **45**:19,19,22 **87**:11
**looked** [4] **45**:21 **48**:1 **76**:4 **83**:25
**looking** [7] **38**:9 **44**:17,25 **45**:7 **62**:7 **64**:8 **78**:21
**looks** [4] **20**:23 **24**:17 **27**:7 **52**:20
**lose** [1] **81**:5
**loss** [31] **17**:23,24 **18**:7,7,9,13,22, 25 **19**:9 **20**:12 **35**:18,20,24 **36**:1,3, 4,6,7,11,18,19,24 **37**:2,6,8,13,23 **38**:7,10 **39**:20 **40**:10
**losses** [5] **17**:14,19 **18**:1 **47**:24
**lot** [11] **24**:2,3 **39**:6 **70**:21 **77**:13 **80**:13 **83**:23 **86**:15,16 **87**:3,8
**lots** [1] **60**:11
**love** [10] **4**:9,10 **6**:10 **11**:14,15,19 **12**:8,11,13,14,16,20,22 **13**:3,4,12 **14**:24 **15**:1,2,12,23 **23**:25 **24**:13,14 **26**:18,21 **28**:6,19 **29**:13 **33**:22 **34**:3, 16 **39**:19,25 **45**:5,23,23 **48**:21 **55**:11
**love's** [5] **11**:24 **12**:22 **27**:11 **28**:20 **29**:5
**lower** [1] **54**:19
**ltd** [1] **1**:5
**ludicrous** [2] **23**:3 **25**:12
**lumped** [2] **21**:14 **23**:7

## M

**made** [39] **4**:5,11,14 **6**:14 **11**:16,24 **12**:11,20 **15**:2 **21**:19 **22**:7 **24**:15 **29**:6 **30**:5 **32**:9,18 **33**:6 **35**:18,22, 23 **38**:11 **39**:18 **43**:25 **45**:9,22 **46**:20 **48**:21 **54**:7 **62**:7 **64**:5,13 **66**:9 **72**:9 **73**:19 **74**:16 **75**:7 **76**:21 **77**:2 **86**:22
**maintenance** [3] **27**:23,24 **28**:3

**malpractice** [1] **65**:9
**managing** [1] **46**:8
**mandatory** [2] **32**:21,22
**many** [8] **4**:2,6,14 **5**:5 **9**:9 **15**:11,13 **30**:19
**march** [4] **16**:19 **26**:23,24 **27**:14
**maria** [3] **12**:11,22 **27**:11
**maribella** [1] **87**:6
**maribellax** [2] **1**:5 **2**:2
**mario** [1] **67**:13
**marked** [1] **87**:13
**marotta** [122] **1**:13,15 **2**:9,10,10,11 **29**:20 **33**:3,13,21 **31**:1,13,21 **32**:8 **33**:11,16,20,25 **34**:5,9,19,23 **35**:3, 5,11,17 **45**:6 **46**:5,11,18,24 **47**:5, 15,17 **52**:23 **53**:1,7 **58**:7,8,15,22 **59**:20 **60**:3,19 **61**:9,13,19 **62**:1,5, 22 **63**:4,9,12,15,21,25 **64**:3,20 **65**:2,11,15,18,21,24 **66**:5,15 **67**:8,17, 19 **68**:14,23 **69**:5,10,12,15 **70**:5,7, 8,17,23 **71**:4,8,23 **72**:18,20 **73**:7, 12 **74**:17,25 **75**:10,15 **78**:11,14 **80**:21 **81**:10 **82**:13,20,24,25 **83**:16,20, 22 **84**:2,6,11,18,22 **85**:6,13,19 **86**:7,11,12,20,25 **87**:10 **88**:14 **89**:2,8, 12,16
**mass** [1] **67**:9
**matching** [1] **37**:5
**material** [2] **6**:3,6
**math** [4] **22**:11,24 **48**:4,5
**matter** [8] **2**:21 **25**:15 **58**:11 **85**:7 **86**:3 **90**:3
**matters** [3] **2**:17,19 **45**:15
**maturity** [4] **83**:4,9 **85**:9 **89**:3
**mean** [5] **8**:1 **71**:21 **85**:22 **86**:21 **87**:10
**meaningful** [2] **31**:18 **32**:11
**means** [2] **27**:9 **83**:7
**meet** [9] **9**:13 **10**:8,9 **25**:16 **31**:14 **85**:23
**meeting** [4] **31**:15,23,24 **32**:11
**member** [1] **12**:25
**memory** [2] **21**:24 **78**:21
**mention** [1] **61**:20 **88**:22
**mentioned** [1] **45**:8
**met** [1] **77**:15
**midst** [1] **83**:17
**might** [26] **4**:4,7 **9**:10 **21**:11 **18**:12: 10 **14**:15 **16**:11,16 **19**:24 **22**:17 **26**:18 **29**:3 **32**:5 **44**:14 **52**:5 **62**:21 **77**:14 **78**:21 **80**:7 **82**:16,16 **84**:13 **88**:19 **89**:5
**million** [4] **22**:21,22 **23**:20 **46**:9
**milton** [1] **1**:31 **67**:18
**mind** [2] **53**:25 **86**:17
**minimize** [1] **31**:16
**ministerial** [2] **56**:16 **57**:12
**minus** [1] **39**:14
**minute** [3] **2**:13 **7**:20 **75**:1
**minutes** [1] **76**:15
**misleading** [1] **18**:1
**mismanagement** [19] **3**:19,25 **5**:7,

20 **8**:10 **9**:8 **10**:19 **11**:12 **15**:10,23 **16**:2 **20**:11 **30**:9,25 **31**:4,12 **32**:15, 20 **42**:2
**modify** [1] **69**:19
**moment** [1] **46**:10
**money** [15] **5**:9 **7**:23 **8**:3 **11**:12 **29**:12 **30**:8 **31**:10 **33**:9 **35**:1 **46**:12 **62**:10 **64**:7 **74**:7 **79**:15 **85**:3
**month** [30] **10**:23 **11**:4 **14**:11 **16**:18 **18**:12,22 **19**:1 **22**:2,4,5,6 **26**:17 **27**:1,3,10,16,24,25 **28**:3 **33**:16,17 **36**:2 **39**:15 **40**:7,8 **46**:6,21 **48**:10,11 **87**:21
**monthly** [15] **5**:24 **6**:8 **15**:24 **19**:5 **21**:20 **22**:8 **23**:11 **25**:25 **27**:13 **28**:1 **48**:2,23 **63**:16,18 **72**:12
**months** [16] **4**:16,20 **7**:10 **11**:4 **26**:22,25 **27**:3,18 **28**:15 **30**:19,20 **39**:13,13 **77**:8 **87**:22,22
**morning** [1] **49**:12
**morristown** [1] **11**:23
**mortgage** [10] **14**:8,8 **58**:17 **60**:11 **70**:24 **71**:16 **84**:4 **85**:6,20 **86**:22
**mortgagee** [1] **13**:25
**mortgages** [1] **62**:11
**most** [6] **2**:18 **3**:4 **33**:5 **48**:1 **49**:11 **57**:10
**motion** [47] **1**:9 **2**:19,20 **3**:4,21 **5**:15 **8**:21 **10**:25 **12**:2 **20**:6 **26**:20 **30**:2,6 **35**:15 **43**:13 **47**:5,11 **50**:12,13, 17,19,19 **51**:5,23 **52**:9,10,16 **53**:19, 19 **55**:16 **59**:17 **62**:7 **66**:13,16 **67**:14 **73**:20 **74**:8 **75**:5,14 **76**:3,5,13, 14 **79**:13 **81**:16,17,25
**motions** [1] **83**:17
**movant** [1] **3**:10
**move** [2] **29**:17 **52**:3
**moving** [2] **6**:7 **7**:3
**ms** [5] **11**:10 **12**:13,14,16,20
**much** [12] **5**:12 **6**:3 **11**:25 **18**:1,9 **36**:15 **38**:9 **63**:21 **66**:6 **72**:11 **81**:19 **82**:12
**must** [2] **8**:5 **10**:13

## N

**name** [2] **12**:23 **24**:11
**named** [2] **11**:5 **26**:9
**necessity** [1] **6**:24
**need** [12] **5**:21 **7**:24 **16**:18 **30**:24 **47**:15 **49**:7 **53**:8 **56**:13 **57**:5 **67**:6 **82**:25 **84**:19
**needs** [3] **5**:16 **15**:6 **51**:3
**negative** [1] **18**:15
**neither** [2] **10**:6 **23**:15
**net** [1] **40**:5
**never** [9] **17**:1 **23**:14,16,17 **25**:19 **28**:7 **29**:3,18 **63**:18
**nevertheless** [2] **11**:11 **12**:24
**new** [14] **1**:17,17,23,28,32 **32**:1 **52**:21 **62**:9 **66**:17 **67**:1 **68**:15,25 **81**:8, 18
**next** [3] **35**:9 **51**:25 **52**:1
**night** [3] **53**:8 **88**:8 **89**:8

**nine** [2] 6:8 52:19

**non** [2] 36:12 37:19

**nonsense** [2] 85:16,16

**nor** [1] 23:16

**normal** [4] 14:11 21:20 22:7 45:20

**northfield** [9] 13:23 23:8,11,16 40:7 45:11 46:13,19 47:7

**note** [5] 58:20 73:20 82:13 85:4,9

**notes** [7] 62:7 64:8,9 75:7,10 79:21 85:6

**nothing** [5] 11:6 29:15 56:16 71:12 80:11

**notice** [2] 71:25 77:20

**notion** [1] 32:5

**notwithstanding** [1] 20:1

**november** [3] 66:6 67:16 77:9

**nowhere** [1] 27:12

**number** [22] 2:17 3:3,23 8:23 13:1 16:15 22:23 27:9 32:23 37:7 47:23 54:18,19,20,24 59:14 67:21,22,23,24,25 76:19

**numbers** [2] 27:19 28:4

**numerous** [5] 28:25 29:8,8,13 72:24

## O

**objected** [2] 23:16 84:12

**objection** [3] 61:7,8 84:13

**objections** [1] 47:12

**objects** [2] 8:21 9:25

**obligation** [5] 10:22 11:24 19:6,7 20:4

**obligations** [2] 17:11 31:11

**observe** [1] 17:10

**obstacle** [1] 61:18

**obtain** [3] 42:17 60:25 69:23

**obviously** [15] 6:19 21:12 23:1 27:6 28:3,16,18 43:1 44:24 50:24 54:18 56:24 86:9,10 88:2

**occur** [4] 60:23 65:23 70:2,4

**occurred** [1] 18:22

**offend** [1] 87:10

**offended** [1] 88:12

**office** [8] 1:24 52:11 66:17,23 68:16,17,25 69:6

**offset** [1] 64:15

**okay** [28] 9:24 10:4,5,14 18:18 19:3 26:14 35:4 36:7 38:5 47:17 49:6,11 50:21 51:2,23 52:5 65:21 68:1 70:6 72:20 81:22 82:8,11 87:1,10 88:11 89:14

**omission** [3] 9:3,5 33:1

**once** [1] 48:5

**one** [39] 1:22 2:13 3:23 7:13 8:23 10:2 12:6 13:25 14:8,23 16:8,21 23:24 24:10 28:4 29:9,10 30:2,15 32:23 33:1 37:16 39:17,19 41:4 47:23 48:11 53:22 54:18 62:5 72:8,15 73:10 74:23 77:12 79:1 80:10 82:18 85:10

**one's** [1] 77:20

**ongoing** [2] 23:12,13

**online** [1] 67:9

**only** [28] 6:9 7:11,14 9:7 19:25 24:7,8 46:12,18 53:18 57:11 60:16 62:7,10 63:25 64:3,7,8 65:8,24 74:7,18 79:14,15 84:9 85:2,10,14

**operate** [2] 20:16 86:13

**operated** [1] 7:17

**operating** [31] 4:18 5:24 6:9 7:17 15:24 17:19,22,23,24,25 18:2,6,13,16,19 19:5,9,16 25:25 27:13 28:2 35:20 36:6,23 37:17,24 38:13,15 48:2,23 49:1

**operation** [1] 40:15

**operations** [1] 37:21

**opinion** [8] 54:9,10 56:5 67:9,10,16 75:11 76:19

**opportunity** [4] 32:2 43:8,12,12

**opposed** [1] 89:3

**opposition** [2] 75:5,14

**option** [1] 31:1

**order** [33] 14:16 17:12 19:21,21 20:3 32:20 39:25 40:13 43:17 49:13 52:6 53:10,11 54:11 61:4 66:7,8,10 68:19,19,25 69:3 73:15 76:9 77:19,24,24 78:23 80:3,4,8 82:5 87:16

**orders** [1] 72:1

**original** [2] 85:5,9

**other** [43] 4:2,10 9:3 10:11,20 15:17 16:4,23 19:22 20:24 21:14 31:11 32:18 39:6,20 40:9 49:16,18 53:18 55:14 56:16 59:1 60:10,12 61:6 62:16,20,20 64:13,23 65:12,19 69:22 71:18 72:20 73:12 74:5 77:1 79:17 80:11 83:10 84:5 86:16

**others** [5] 6:11,15 15:12 20:10 69:21

**otherwise** [2] 34:21 60:15

**out** [27] 4:3 5:2 7:10 11:8 12:8 14:3 23:3,6 31:11 32:3 46:19 48:7,22,24,25 49:2,3,6 51:1 70:21 72:2 73:12,14 74:25 75:19 83:13 88:25

**outcome** [1] 52:10

**outline** [1] 9:14

**outlined** [1] 30:5

**outside** [3] 27:8,15,16

**over** [12] 12:19 25:8 27:17 34:13 62:2 77:11 81:5 82:21 83:8,13 88:19 89:1

**overcome** [1] 84:13

**owed** [6] 22:20 23:19 24:10 38:23 79:20,20

**owes** [2] 62:22 63:2

**own** [10] 13:3 20:6 33:9,24 34:2,7 45:1 46:4 72:5

**owner** [1] 34:3

**owns** [2] 13:7,8

## P

**p.m** [1] 2:1

**pace** [1] 76:1

**page** [3] 26:8,9,12

**pages** [1] 6:6

**paid** [28] 5:12 6:1 7:10,24 8:4 11:4

**12:9** 14:3,12,14 22:10 30:9 31:6,9 32:8 33:9,12 34:12 36:21 38:24 40:1 48:17 62:25 64:16 75:16 82:20 83:11,14

**painfully** [1] 68:16

**papers** [3] 2:6 7:7:3 12:1 18:10,10 22:18 30:6 47:5,11 55:15 60:4 66:15,16 67:5,9,12 77:21 79:24

**paragraph** [7] 7:3,4 9:4,18,19,20 12:2

**paraphrase** [1] 3:11

**part** [5] 22:10 24:4 33:25 57:10 64:14

**particular** [4] 12:15 24:6 65:3 69:16

**particularly** [3] 31:5 32:6 80:19

**parties** [9] 52:17 54:11 63:12 70:19 71:5,25 72:21 80:3 85:24

**party** [3] 24:22,25 83:12

**past** [2] 8:12 33:23

**patently** [4] 41:15 85:18 86:19 87:2

**pause** [6] 2:14 9:17 49:22 50:3 52:8 75:2

**pay** [24] 6:25 16:18,20,21 19:6,8 23:11 25:12 28:17 30:10,17,19,23 31:10 40:22 41:3,4 45:23 46:16,19 62:25 82:24 83:13,13

**paying** [5] 10:22 17:8 23:12 32:15 33:22,24 34:2,6,6 40:7,8,9 88:25 89:2,3

**payment** [27] 5:8 6:13 9:11 11:3,21 12:18,21,23,24,25 13:21 16:21,24 22:8,9 23:11,17 34:1 35:19 38:11 39:4 62:10 64:7 72:3,6 74:7 79:15

**payments** [66] 4:6,10,11,14 6:11 8:8 11:10,16,17,18,20,23,23 12:4,5,8,10,14,19 13:1,6,10,18,23 14:10 16:14 19:25 20:21 22:1 23:15 25:13 28:18,19 29:6,13 31:22 32:16,18 33:5 34:11 35:22 37:8,9 38:6 39:12,18,19,22 45:8,22 46:20,22 62:12,23 63:16,18 64:4 72:10,12,14 75:4,7,7,10,13,22

**peculiar** [1] 65:3

**pending** [2] 52:10 83:17

**per** [12] 12:14,15 18:12 22:2,4,5,6 27:10,16,24 28:3

**percent** [1] 34:3

**perfect** [2] 60:14,25

**perfectly** [1] 66:5

**perhaps** [15] 11:1 32:3 70:23 71:23 78:20 81:11,14

**period** [16] 9:2,6 31:25 36:8 37:21 39:15 40:7 41:8 43:22 52:2 62:24 81:6 83:7,14 88:16,18

**permissible** [1] 89:6

**permit** [7] 60:16,22,25 61:25 69:8,23 70:4

**permits** [1] 45:15

**permitting** [1] 60:14

**perretti** [2] 1:21 2:6

**person** [3] 44:4 46:7,8

**personal** [6] 11:20,21,22,24 12:5 44:7

**petition** [22] 6:2 7:18 12:17 18:15 14:21 28:19 48:14 54:15 56:2 68:24 73:16 80:7

**ph** [6] 12:23 13:22 23:9,22 24:13 67:13

**phone** [3] 11:17,22,22

**phoney** [2] 41:10 83:21

**physically** [1] 69:6

**piggy** [1] 7:19

**place** [4] 6:16 30:14 31:23 55:10

**plaintiff** [1] 69:1

**plan** [66] 8:24 10:5 20:19,21,23,24,25 21:1,10,12 23:6 24:7,12 25:6,6,7,15,21 28:12 29:22 35:10,13 37:13,14,15,25 40:17 41:6,12,14,17,18,21,25 42:6,7,9,11,13,21 43:9,15,16,19 54:19 59:19 61:22,24 82:17 83:15,18,21,24 84:9,13,15,20 85:11,15,16 87:16,17,17,25 88:19,23

**planning** [1] 85:3

**plaza** [1] 1:27

**pleadings** [1] 77:5

**please** [3] 2:3 39:8 75:1

**plethora** [1] 24:23

**plus** [1] 20:3

**point** [26] 5:2 32:22 39:21 40:12 47:4 49:4,25 54:6 55:7 57:2,10,19 66:2,4 69:16 70:6 71:4 72:2 73:12 74:25 75:19 77:3 83:17 84:10,19 87:16

**pointed** [3] 4:3 23:3,6

**points** [3] 35:25 46:25 83:1

**portion** [1] 48:19

**pose** [1] 61:18

**position** [6] 23:24 52:12,15 56:15,19 58:5

**possession** [2] 20:17 44:21

**possibly** [1] 29:17

**post** [6] 1:8 10 12:16 28:18 56:1

**post-judgment** [1] 62:21

**post-petition** [22] 4:6,12,15 5:9 7:9 8:11 9:11 11:16 13:1 23:13 28:1 29:7 30:9,10,20,23 31:22 33:10 48:17 56:2,22 73:2

**postpone** [1] 87:24

**potential** [1] 44:13

**potentially** [1] 65:12

**practice** [4] 68:15 79:3,6 81:8

**pre** [1] 7:17

**pre-petition** [16] 4:7,11,15 5:8 6:1,15,25 9:11 22:20 23:12 28:19 29:6,8 36:25 44:15 56:22

**preclude** [3] 54:23 55:3,20

**precludes** [1] 55:19

**prejudice** [1] 65:12

**premature** [1] 61:20

**prepared** [5] 52:13,18 67:8 73:9

87:13

**preparing** [1] 83:23
**present** [7] 8:6,15,15 25:18 46:17 53:8 69:2
**presented** [2] 13:12 32:1
**pressure** [1] 46:3
**pretrial** [5] 49:13 52:6 53:10,11 82:5
**prevent** [2] 32:20 80:8
**prevents** [2] 56:7 70:2
**previous** [1] 13:18
**principal** [9] 4:9 7:18 13:4 14:20 27:11 33:8 39:25 45:3 61:9
**principal's** [1] 12:12
**principals** [3] 14:24 32:16 34:13
**principle** [2] 40:22 55:20
**principles** [1] 58:1
**prior** [1] 72:5
**priority** [1] 35:7
**probably** [2] 6:12 22:22
**probed** [1] 28:6
**problem** [2] 66:7 86:12
**problems** [6] 4:23,24 5:3,4 30:1 72:7
**procedure** [1] 80:25
**proceeded** [1] 59:12
**proceeding** [7] 59:14 65:25 72:13, 14 74:14,20 87:3
**proceedings** [11] 1:33 2:1,14 9:17 49:22 50:3 52:8 73:17 75:2 76:1 90:2
**proceeds** [2] 45:11,12
**process** [8] 58:3,14 59:11 66:11 80:17,18 81:5,8
**processing** [1] 1:30
**produced** [1] 1:34
**professional** [2] 19:8,12
**profit** [10] 37:17,24,25 38:9 39:4,7, 15 40:5,9 49:1
**prohibit** [4] 3:21 7:16 10:25 67:14
**projected** [1] 27:18
**projections** [11] 25:21,22,24,24 26:2 27:6,21 28:10,13,14 48:9
**proof** [9] 10:8,10 70:11 77:25 78:5 79:19,20 84:2,22
**proper** [3] 25:1,1 37:4
**properly** [3] 37:1 64:16 71:16
**properties** [3] 14:1,9 30:15
**property** [21] 6:17 11:2 13:7,8 15:6 23:20,22 30:11,18,20,24,24 31:2,2 32:3,9 59:6 60:10,14 69:23,25
**propose** [5] 72:1 85:25 86:1 87:23 88:21
**proposed** [17] 32:1 37:13 41:8 42:6 61:21 66:12 68:2,17,20 77:23 83:18 85:22 87:19,25,25 88:20 89:12
**proposes** [2] 42:9,11 42:9,11
**proposing** [3] 42:15 86:3 88:23
**prosecute** [1] 44:13
**protection** [7] 16:14 19:7 25:13 26:16 38:11 39:12 40:8
**prove** [4] 18:20 66:23 68:8 80:24

**provide** [8] 20:4,25 47:9 63:10 64:6,22 70:18 72:8
**provided** [3] 9:19,20 19:24
**provides** [5] 21:3 31:6 63:11,13 70:20
**provision** [3] 83:6 87:5 89:6
**provisions** [1] 41:22
**public** [1] 45:15
**purchase** [1] 31:1
**purpose** [5] 55:9 59:3,5 60:8,13 65:23
**purposes** [4] 8:11 17:3 61:6 69:20
**pursuant** [3] 14:16 22:10 80:4
**pursuing** [1] 66:21
**put** [5] 5:21 43:9 51:10 60:4 66:12, 16 84:9 86:1,16

---

### Q

**question** [20] 3:13,14,15 17:24 25:5 28:24 31:20 35:9 48:18 53:22 58:8,10 64:11 67:2,3 71:15 73:23, 25 75:6,6
**questioned** [5] 6:10 11:15 14:20, 22 15:12
**questions** [7] 15:13,14,16,18 53:11,17 64:10
**quick** [1] 47:22
**quickly** [1] 13:17
**quite** [2] 32:8 52:16

---

### R

**raise** [1] 35:14
**raised** [5] 23:16 29:23 34:12 46:25 75:8
**raising** [1] 85:3
**rather** [1] 47:12
**rational** [1] 87:6
**re** [1] 1:3
**read** [2] 79:23 87:5
**reader** [1] 37:22
**readily** [1] 4:10
**ready** [1] 80:2
**real** [5] 13:8 22:9 36:12 46:9 76:16
**really** [10] 17:16 29:21 46:24 62:5 66:21 70:17 73:22 84:23 85:14 86:14
**reargue** [2] 76:3,14
**reason** [14] 7:14 11:6,13 25:1 28:17 30:13 32:5 53:25 58:24 59:10 62:6 64:21 83:11 85:11
**reasonable** [22] 8:23 9:1,4,6,12 10:5 17:15 20:18 33:2,8,10,21 34:9 42:3,4 43:19,22 46:5 50:25 83:6 88:16,18
**reasons** [1] 52:14
**recall** [12] 4:5 5:13 7:9 10:21 11:18 12:10 14:15 15:16 16:16 19:24 22:17 26:18
**recalls** [1] 3:20
**recast** [3] 37:20,24 40:9
**receipts** [1] 45:16
**receive** [1] 74:13
**received** [8] 14:19,19 15:4 16:23

17:6 48:12 72:3,6
**receiving** [3] 27:4 29:15 46:10
**recited** [1] 66:9
**reclaimed** [1] 34:13
**reconsider** [1] 73:10
**reconstruction** [1] 45:12
**record** [3] 45:15 49:8 70:24
**recorded** [2] 1:33 85:20
**recording** [2] 1:33 90:2
**recoverable** [1] 37:11
**rectified** [10] 4:23,25 5:3,5,7,9,11 7:13,14 15:11
**rectify** [1] 9:10
**reduced** [1] 79:22
**referring** [1] 19:9
**reflect** [3] 15:3 19:6,7
**reflected** [6] 17:19 18:2 36:14 37:1 38:13,15,21,24
**reflects** [1] 37:8
**refresh** [1] 78:21
**refused** [2] 32:4 85:23
**regard** [1] 5:8
**regarding** [1] 35:12
**rehabilitation** [1] 17:16
**reinstate** [7] 21:7 25:11 41:2 83:3, 9 85:4,9
**reinstating** [3] 42:18 87:12,21
**reject** [2] 30:12 31:9
**rejected** [2] 11:7 30:7
**relate** [2] 59:25 88:1
**related** [1] 85:17
**relates** [1] 87:18
**relating** [1] 62:3
**reliance** [1] 83:4
**relief** [8] 6:21 9:2,19,20,22 32:24 53:20 68:25
**relitigate** [2] 55:17 57:16
**remember** [1] 58:15
**remembers** [1] 77:9
**remind** [1] 15:4
**remitted** [1] 64:16
**renovated** [2] 30:15,16
**rent** [13] 13:11 26:22,24 27:24 30:10,20,23 31:6,9,25 32:7,7 37:8
**rental** [4] 26:17 27:4,8,20
**rents** [5] 26:25 36:24 48:8,13 71:17
**repaid** [1] 44:2
**repairs** [3] 27:22,24 28:2
**repaying** [1] 35:5
**repayment** [1] 12:16
**reply** [1] 2:24
**report** [6] 14:18 28:2 36:23 38:22 48:2,23
**reports** [17] 5:24 6:9 14:18 15:24 17:20,22,23,24,25 18:2,6,16,20 19:5,16 26:1 27:14
**representation** [1] 86:23
**representations** [1] 86:21
**represented** [2] 12:13 58:16
**representing** [4] 2:12 15:13 65:6, 7

**request** [1] 3:8
**requested** [2] 31:24,24
**requests** [1] 44:1
**require** [3] 16:14 62:11 66:21
**required** [7] 14:17 15:5 22:1 35:22 50:15 68:18 78:23
**requires** [2] 50:13 69:1
**requiring** [1] 19:22
**requisite** [1] 71:18
**resolution** [5] 63:10,13 64:22 70:19,20
**resolve** [2] 64:10 65:4
**resolved** [1] 71:22
**resolves** [1] 64:11
**respect** [10] 3:24 9:10 18:5,19, 23 16:4 25:21 29:21 81:20
**respecting** [1] 14:17
**respond** [1] 87:6
**response** [3] 20:13 26:19 55:15
**result** [3] 22:18 24:22 83:5
**resulted** [1] 20:5
**retroactive** [1] 46:13
**returned** [2] 29:4 33:6
**revenue** [1] 27:4
**richard** [3] 1:14 2:11 24:13
**ridiculous** [2] 86:19 87:7
**riemer** [2] 1:29 90:4
**rights** [3] 16:19 65:12 89:5
**riker** [2] 1:20 2:5
**rise** [1] 89:18
**road** [1] 1:31
**roll** [1] 26:24
**rooker** [5] 56:6,8,20 57:17,22
**rule** [8] 4:8 6:10 11:14 12:22 14:21 24:1 28:6 55:11
**rules** [1] 86:18

---

### S

**salamon** [3] 24:12,13,14
**salary** [10] 27:11,11 33:22,25 34:1 46:6,7,10,14,15
**same** [9] 7:17 35:8 55:14,17 56:19, 19 68:4 74:16 77:25
**saratoga** [1] 1:32
**sassino** [1] 12:23
**saw** [1] 2:25
**saying** [9] 8:9 17:17 54:21 63:6 68:10 72:2,4,5 73:7
**says** [9] 3:6 8:17 23:19 27:3,8 33:19 34:22 38:5 41:14 47:8 50:17,23 75:3,11,12 81:10
**scenario** [2] 31:25 84:7
**scheduled** [1] 82:14
**schedules** [4] 13:13,15 48:14,15
**scherer** [2] 1:20 2:5
**schiff** [1] 72:6
**schwartz** [123] 1:18 2:4,5,16,24 3:2,15 5:1,4,13,18,23 6:4,18 7:4,8, 22,25 8:3,16 9:16 10:2,7,15,18 12:1 14:5,7,13 17:21 18:5,10,13,15, 19,23 19:2,4 20:20,22 21:5,9,16, 19,24 22:4,6,16 25:14 26:6,11,15 38:21 43:5 47:20 49:15,20 50:6,8,

11,16,23 **51**:7,20,22 **52**:3,20 **53**:12,
16,18 **54**:2,9,14,25 **55**:5,9,22 **56**:4,
11,14,23 **57**:6,24 **58**:6 **59**:8 **60**:2
**61**:3 **62**:19 **66**:25 **67**:11,20,23,25
**68**:3,7 **73**:24 **74**:12 **75**:9 **76**:15,20,
24 **77**:4,10,12 **78**:2,7,10,15,18 **79**:
5,18 **80**:2,6,18,25 **81**:3,7,11,14,17
**82**:4,9 **89**:17

**schwartz's** [1] **35**:15
**scratch** [2] **74**:21 **76**:22
**screen** [1] **88**:9
**search** [1] **70**:25
**second** [4] **26**:7,9,12 **44**:3
**section** [9] **8**:17,25 **15**:5 **16**:4 **20**:8
**43**:20 **51**:18,21 **83**:1
**sections** [3] **9**:1 **21**:2 **43**:22
**secured** [12] **21**:14 **23**:7,10 **24**:17
**59**:25 **60**:1,5,7 **71**:14 **84**:7,21 **86**:4
**securing** [1] **58**:17
**security** [2] **71**:18 **84**:20
**see** [9] **12**:7 **17**:17 **53**:6 **57**:2 **67**:21
**69**:15 **75**:3 **85**:19 **89**:15
**seek** [4] **3**:24 **31**:17 **55**:17 **64**:15
**seeking** [4] **15**:8 **35**:7 **59**:9 **62**:15
**seeks** [1] **57**:15
**seem** [3] **24**:2 **61**:17 **86**:13
**seems** [3] **10**:1 **35**:10 **62**:3
**seen** [2] **20**:21 **44**:23
**segregate** [1] **39**:22
**segregated** [1] **47**:6
**sell** [1] **32**:3
**send** [3] **58**:2 **75**:24 **80**:16
**sending** [1] **76**:8
**separate** [3] **45**:9,9 **71**:15
**september** [3] **75**:16,17 **76**:7
**serve** [1] **19**:23
**service** [3] **1**:30,34 **27**:16
**services** [2] **27**:8,15
**set** [13] **3**:3 **4**:4,17,19,21 **5**:17 **24**:6
**26**:21,23 **45**:10 **47**:6 **67**:5 **86**:17
**sets** [1] **54**:1
**settle** [1] **77**:19
**several** [2] **33**:12,14
**shall** [6] **3**:9 **9**:19,20,23 **50**:17,19
**sham** [1] **83**:21
**shape** [1] **88**:24
**shari** [1] **29**:1 **90**:4
**she'd** [1] **39**:10
**shed** [3] **13**:9,10,16
**sheet** [1] **47**:12
**short** [1] **52**:14
**shortcut** [1] **66**:11
**shouldn't** [2] **7**:1 **11**:9,24 **59**:11 **73**:
17
**show** [20] **9**:14 **17**:23,24 **18**:6,7,7,
17 **19**:16 **28**:14 **29**:22 **32**:14,22 **33**:
1 **37**:15 **39**:24,25 **43**:18 **48**:15 **68**:
13 **87**:17
**showed** [3] **4**:5 **28**:2 **29**:10
**shown** [1] **45**:19
**shows** [3] **9**:25 **32**:24 **77**:22
**sic** [1] **11**:14

**side** [2] **74**:5 **82**:10
**signed** [13] **54**:13,14,15 **56**:1,2,21
**66**:19 **68**:5,9,21 **73**:16 **79**:9 **80**:6
**simply** [4] **11**:7 **58**:12 **64**:7 **83**:18
**since** [14] **4**:5 **17**:24 **18**:14,15 **21**:
20 **22**:6 **29**:25 **31**:5 **32**:6 **34**:12 **35**:
21 **44**:10 **52**:20 **72**:3
**single** [3] **30**:2 **36**:2
**sit** [2] **31**:15 **85**:24
**situation** [4] **6**:22 **9**:10 **57**:20 **80**:
22
**six** [1] **20**:7
**sixty** [2] **31**:7,8
**smoothly** [3] **87**:4,8 **88**:7
**sold** [1] **31**:3
**solely** [1] **61**:5
**somebody** [1] **41**:15
**somehow** [1] **34**:8
**someone** [2] **11**:5 **67**:8
**sometimes** [1] **82**:20
**somewhere** [3] **23**:20 **45**:17 **48**:12
**sonex** [13] **57**:7 **58**:1 **61**:9 **62**:3,14
**63**:9 **64**:20,23 **65**:5 **67**:4 **72**:20 **77**:
13,14
**soon** [1] **76**:10
**sorry** [6] **26**:1 **39**:13 **51**:15,20 **73**:
24 **83**:22
**sort** [2] **44**:11 **47**:22
**sound** [2] **1**:33 **90**:2
**sovereign** [69] **1**:18 **2**:6,20 **3**:21,24
**7**:15 **14**:9,10,18 **16**:15,18,20 **17**:6,
8,10 **19**:6,23 **21**:11,17,20,23 **22**:8,
10,18,20 **23**:2,9 **24**:19,22 **25**:10 **28**:
17 **29**:15 **35**:22 **36**:21 **37**:14 **38**:20
**39**:17 **40**:8,19 **41**:6,7,23 **42**:10 **44**:
17 **46**:23 **47**:7,18 **54**:12 **55**:13 **57**:
14 **59**:21 **61**:5 **62**:15,22 **63**:2,8,17
**64**:5 **70**:24 **73**:23 **76**:12 **78**:24 **79**:
19,25 **84**:3 **85**:12 **86**:22 **87**:15 **88**:
15
**sovereign's** [19] **17**:12 **25**:8 **26**:20
**48**:18 **58**:13 **59**:18 **63**:6,14 **64**:12
**66**:11 **67**:12 **70**:21 **72**:25 **74**:14 **76**:
8 **82**:10 **85**:15 **87**:19 **88**:22
**specialized** [2] **64**:25 **65**:2
**specific** [1] **67**:3
**specifically** [5] **3**:7 **8**:17,20 **9**:21
**11**:15,19 **15**:24 **32**:24 **69**:12
**speculation** [1] **24**:4
**speedwall** [1] **1**:22
**spent** [1] **29**:11
**spike** [1] **13**:22
**spirit** [1] **7**:12
**spoke** [2] **41**:6 **85**:22
**springs** [1] **1**:32
**square** [1] **73**:10
**stand** [3] **34**:21 **56**:23 **59**:21
**start** [8] **37**:2 **39**:2 **52**:18,19,22 **62**:
2 **77**:11,17
**started** [2] **28**:6 **44**:18
**starting** [5] **26**:17 **36**:23 **49**:12 **76**:
22 **77**:3

**state** [46] **24**:23 **54**:17 **55**:12 **56**:16
**57**:8,9,13,21 **58**:3,4,11,14,24,25
**59**:13 **61**:14,15 **62**:7,9 **63**:24 **64**:4,
8,23 **65**:24 **67**:2 **68**:18 **70**:1,9 **72**:
13,24 **73**:1,10,14,19,22 **74**:2,6,20
**75**:8,24 **76**:4 **77**:13 **79**:3 **80**:16 **81**:
9,19
**stated** [1] **86**:7
**statement** [16] **21**:5,12 **23**:1,2 **26**:
11,13,27 **27**:22 **37**:22 **38**:14,16 **40**:10,
20 **47**:22 **77**:22 **82**:15 **85**:2
**statements** [4] **26**:5,7 **29**:9 **80**:12
**states** [6] **1**:11,24,26 **2**:8 **39**:19,20
**status** [1] **76**:9
**statute** [13] **3**:5,6 **10**:3 **32**:13 **33**:19
**49**:5 **50**:12,16,23 **51**:18,21 **53**:9
**53**:8 **56**:13 **57**:3,5,15 **58**:23 **59**:3,5,11
**60**:6,8,13,16,21,22,24 **61**:5,18,21,
24 **65**:22 **69**:8,16,17,18,18,19,22,
25 **70**:2,3,10 **72**:21,22 **74**:2,5 **76**:
11 **77**:18
**steady** [2] **26**:16 **27**:9
**step** [3] **24**:19 **39**:17 **68**:18
**steps** [1] **74**:9
**still** [9] **7**:24 **42**:20 **44**:6 **56**:3 **64**:18
**68**:12 **70**:23 **72**:2 **84**:13
**stop** [2] **11**:3 **89**:10
**stopped** [1] **7**:23
**storage** [3] **13**:6,8,9,10,11,16
**stored** [1] **13**:16
**storing** [1] **13**:9
**story** [4] **3**:5 **4**:1 **16**:3 **83**:7
**stream** [1] **26**:17
**street** [1] **13**:7
**stress** [1] **3**:4
**stronger** [1] **20**:10
**subject** [5] **11**:18 **12**:12 **18**:6 **23**:3
**89**:15
**submit** [47] **3**:22 **5**:6,11 **6**:5,11 **8**:4,
5,16 **9**:7,9 **15**:10,20 **16**:9,24 **17**:2,7,
25 **19**:16 **20**:9 **25**:2,6,7,14 **28**:22,
24 **37**:16,19 **37**:2,6 **38**:10 **40**:9
**54**:11 **66**:7,22 **68**:16,19 **70**:10,12,
12 **77**:22,24 **78**:11,22 **80**:3 **88**:17
**submitted** [11] **61**:4 **66**:12 **68**:20
**75**:5,13,20 **76**:5 **77**:6 **78**:19 **79**:19,
20
**submitting** [2] **66**:8 **68**:19
**subordinated** [1] **14**:2,9
**subsection** [1] **50**:18
**substant** [1] **56**:17
**substantial** [8] **17**:14 **28**:22,23 **36**:
2 **47**:24 **64**:11 **74**:13 **81**:6
**substantially** [1] **16**:8
**substantive** [5] **56**:18 **57**:1,6,8,13
**substantively** [1] **88**:11
**successful** [1] **31**:18
**suffered** [1] **47**:24
**suggest** [2] **81**:14,15
**suggested** [1] **83**:16
**suite** [1] **1**:16

**sultan** [1] **13**:22
**summary** [4] **62**:8 **73**:20 **74**:8,14
**79**:13,24
**super** [1] **35**:7
**support** [6] **29**:22 **45**:14 **67**:14 **72**:
9 **75**:5,14
**suppose** [1] **57**:20
**supposed** [3] **42**:5 **79**:22,23
**suspect** [1] **13**:19
**suspiciously** [1] **29**:2

### T

**talichian** [1] **67**:13
**talked** [7] **12**:4 **13**:14,22 **47**:25 **48**:
4,6,11
**talks** [4] **24**:24,25 **48**:9 **88**:25
**tax** [2] **62**:12,24
**taxes** [4] **22**:9 **62**:13,25,25
**taxing** [1] **64**:17
**tea** [1] **39**:10
**tenant** [1] **65**:4
**tenant's** [1] **14**:23
**tend** [1] **18**:5
**terminate** [3] **6**:19,20,22
**terminating** [1] **31**:14
**terms** [3] **41**:3 **85**:5 **87**:9
**testified** [3] **13**:5 **24**:13 **34**:16,20
**35**:6 **55**:11
**testimony** [3] **13**:18 **24**:1 **29**:5
**theory** [1] **74**:1
**there's** [62] **2**:17 **4**:2 **5**:5,19 **6**:13,
15 **8**:6,23 **9**:9,12 **10**:1,5,11,20 **12**:
21 **13**:1,8,16 **17**:23 **19**:20 **20**:14 **21**:
22 **23**:7,8,8 **24**:3,5,7,7,23,25 **28**:22
**33**:8,10 **35**:17 **36**:1 **38**:3,9 **39**:12,
20 **42**:1,2,2,3,3,6,6 **43**:19 **44**:20 **53**:
19 **57**:4,22 **61**:14 **63**:1 **65**:5,15 **70**:
7 **72**:7 **76**:18,21 **79**:7,13
**therefore** [5] **62**:10 **64**:6 **74**:7,8 **89**:
7
**they'll** [1] **77**:24
**they've** [2] **23**:17 **60**:19
**thinking** [1] **5**:16
**thinks** [1] **44**:7
**thirty** [3] **50**:18 **51**:4 **88**:19
**though** [6] **6**:17 **16**:4 **46**:25 **55**:25
**57**:2 **67**:4
**thousand** [2] **22**:5 **36**:11
**thousands** [2] **6**:4 **12**:7
**three** [8] **11**:3 **30**:20,21 **39**:12,13
**40**:6 **70**:18 **87**:22
**three-and-a-half** [4] **4**:16,20 **7**:10
**39**:15
**throughout** [1] **14**:10
**tingling** [14] **67**:18 **68**:20 **70**:11,13
**71**:24 **72**:17,19 **74**:22 **76**:18 **77**:16,
20 **78**:6 **79**:2 **80**:12
**tingling's** [1] **75**:11
**title** [2] **9**:1 **43**:21
**today** [8] **2**:24 **43**:7 **51**:7,8 **56**:23
**59**:21 **80**:12 **87**:13
**today's** [3] **2**:17 **16**:22 **50**:22
**together** [1] **23**:7

**tomorrow** [1] **49**:14

**took** [7] **4**:8 **12**:8 **20**:24 **33**:25 **34**: 17 **56**:14 **74**:9

**total** [7] **12**:3 **18**:24 **21**:25 **24**:9 **26**: 25 **27**:4 **48**:2

**totally** [1] **25**:25

**trace** [1] **48**:19

**tracked** [1] **13**:17

**transcriber** [1] **1**:29

**transcript** [4] **1**:9,33 **44**:23 **90**:1

**transcription** [1] **1**:34

**transfer** [1] **45**:20

**transfers** [7] **29**:1,2,3,8,18 **44**:15 **45**:18

**treat** [10] **40**:19 **41**:1 **44**:7 **82**:22 **83**: 12 **84**:14,16 **85**:8 **86**:4 **87**:19

**treated** [3] **21**:15 **40**:20 **85**:21

**treating** [9] **41**:1 **42**:12 **84**:8,25 **85**: 5,15,17 **86**:6 **88**:23

**treatment** [11] **20**:25 **21**:11 **25**:10 **40**:18,21 **41**:23 **42**:15 **84**:1 **85**:1 **87**:19 **88**:22

**trial** [2] **49**:21 **79**:13

**tribunal** [2] **64**:25 **65**:2

**tribunals** [1] **73**:4

**tried** [3] **39**:24 **57**:21 **65**:1

**truly** [1] **39**:20

**trustee** [9] **1**:24,24,26 **2**:8,20 **7**:11 **20**:5 **44**:1 **46**:3

**trustee's** [1] **20**:5

**try** [3] **31**:16 **43**:9 **50**:25

**trying** [5] **6**:22 **37**:20 **42**:25

**tuesday** [1] **49**:14

**tune** [1] **32**:17

**turn** [2] **81**:23,25

**twice** [1] **49**:3

**two** [13] **4**:19 **10**:6 **19**:20 **22**:12 **24**: 22,25 **28**:15 **30**:22 **52**:1 **60**:10 **71**:5 **73**:4 **87**:21

**type** [3] **13**:11,25 **15**:17

**typewrite** [1] **1**:30

### U

**u.s** [7] **1**:24 **2**:20 **7**:11 **20**:5,5 **44**:1 **46**:3

**ultimately** [2] **22**:19 **42**:23

**unauthorized** [2] **16**:8 **20**:11

**unclear** [1] **12**:24

**unconfirmable** [7] **25**:15 **35**:10 **42**:8 **82**:18 **84**:15,16 **87**:18

**under** [28] **8**:17,23 **9**:3 **16**:2 **17**:11 **19**:19 **20**:8 **22**:1,14 **23**:14 **25**:19 **27**:7,15,20 **31**:6 **42**:13 **46**:3 **50**:18 **58**:1 **62**:8 **64**:9,20,20 **70**:1 **72**:20 **83**:12 **88**:23 **89**:6

**underestimated** [1] **27**:6

**understand** [9] **4**:13 **9**:18 **10**:3 **33**: 20 **37**:23 **46**:17 **73**:24 **82**:4 **87**:14

**understanding** [5] **9**:10 **74**:12, 19 **77**:4 **78**:18 **80**:20

**understands** [1] **49**:5

**understood** [2] **77**:7 **78**:20

**undertake** [1] **58**:13

**undertook** [1] **46**:2

**unfamiliar** [1] **81**:8

**unfiled** [1] **66**:20

**unfortunately** [1] **49**:15

**unhappy** [1] **24**:23

**unimpaired** [31] **21**:4,15 **23**:18 **40**: 19,21,25 **41**:1,2,11,11,15 **42**:12,12, 16,17,19 **82**:23 **83**:12 **84**:8,25 **85**:5, 8,18 **86**:2,4,5 **87**:15,20 **89**:1,4,7

**united** [4] **1**:11,24,26 **2**:8

**unless** [14] **2**:18,21 **3**:10 **8**:5 **21**:7 **23**:25 **60**:6,20,22 **69**:18,22 **70**:3 **83**: 3 **85**:2

**unreasonable** [1] **28**:10

**unsecured** [9] **21**:4 **24**:5,8,9,16 **59**: 21 **71**:14 **84**:7 **86**:5

**unsubstantiated** [1] **80**:12

**unsupported** [2] **75**:4,13

**until** [9] **28**:8 **51**:1 **53**:3,5 **57**:9 **76**:7 **80**:17 **81**:17 **84**:22

**unusual** [1] **3**:7 **8**:6,13,19 **9**:21,24 **11**:23 **13**:19 **20**:14 **25**:18 **32**:23

**up** [24] **4**:17,19,21 **6**:11 **16**:15 **17**:17 **23**:22 **29**:5,21 **30**:4 **41**:23 **43**:24 **44**:2 **45**:10 **47**:6 **57**:9 **60**:12 **65**:8 **68**:9 **69**:4 **72**:15 **77**:21 **79**:3 **80**:24

**urgence** [1] **72**:25

**useful** [1] **71**:13

**uses** [1] **15**:6

**using** [5] **7**:19 **11**:1,7 **17**:11 **67**:15

### V

**vacant** [1] **60**:11

**value** [2] **18**:8 **47**:25

**various** [4] **23**:7 **32**:18 **74**:15 **77**:5

**via** [1] **16**:1

**victory** [1] **45**:13

**view** [4] **5**:6 **8**:9 **17**:9 **54**:8

**violate** [1] **69**:17

**violation** [1] **7**:11

**violative** [1] **7**:12

**vis-a-vis** [1] **11**:17

**vividly** [1] **3**:20

**void** [1] **68**:23

**voluntarily** [2] **40**:1 **44**:2

**vote** [3] **42**:17 **86**:2 **89**:7

**voted** [1] **84**:12

### W

**wait** [5] **30**:1 **63**:2,2,2 **80**:16

**waive** [3] **31**:25 **46**:14,14

**waived** [1] **23**:23

**walk** [1] **23**:22

**wanted** [2] **48**:7 **72**:15

**wanting** [1] **54**:1

**wants** [2] **48**:24 **76**:17

**wasting** [1] **11**:12

**way** [15] **7**:17 **42**:12 **49**:6 **64**:19 **67**: 1 **72**:10 **73**:2 **80**:17 **84**:25 **85**:1 **86**: 5,13 **87**:2,7 **88**:24

**website** [2] **53**:12,15

**week** [13] **4**:8,19 **11**:15 **12**:14,15 **14**: 19 **20**:23 **38**:22 **49**:13,17,19,20,21

**weekly** [2] **12**:20 **14**:18

**weeks** [2] **33**:12,14

**weight** [2] **41**:21,25

**whatever** [10] **19**:11 **44**:10 **46**:19 **48**:20 **70**:12 **71**:24 **75**:21 **78**:22,25 **84**:24

**whatsoever** [2] **41**:21 **76**:19

**wheels** [1] **39**:9

**where's** [2] **9**:14 **68**:1

**whereas** [1] **57**:12

**whether** [38] **25**:17,18 **37**:13 **42**:3, 4,5 **43**:3,4 **44**:16 **47**:23 **49**:24 **56**: 21,25 **57**:17,18 **59**:25 **60**:15 **63**:5 **65**:5 **66**:1 **67**:2 **71**:14,16,17 **75**:6,7 **76**:9 **79**:5,9,15,16 **84**:7,21 **86**:4 **87**: 15,21 **88**:1,3

**who's** [5] **12**:11 **44**:12,14 **46**:7 **65**:6

**whole** [4] **48**:3 **55**:9 **65**:1 **87**:3

**will** [28] **2**:23 **8**:24 **9**:5 **17**:3 **26**:16 **27**:23 **33**:2 **35**:11 **42**:10,11 **43**:19 **52**:9 **53**:1 **59**:17 **70**:14,15,15 **73**:2 **75**:2 **77**:19,25 **78**:22,24 **81**:18,24, 24 **83**:20 **85**:24

**william** [2] **1**:25 **2**:7

**wins** [1] **80**:17

**wish** [1] **71**:19

**wit** [1] **54**:18

**within** [17] **8**:24 **9**:1,6 **31**:7 **43**:20, 22 **46**:5 **50**:13 **51**:4,9,24 **52**:2 **53**:3 **87**:22,25 **88**:10,20

**without** [9] **6**:21 **16**:25 **17**:12,12 **18**: 20 **19**:14 **28**:24 **42**:21 **48**:19

**witnesses** [1] **82**:6

**word** [2] **1**:30 **81**:13

**words** [2] **62**:16 **69**:22

**work** [11] **24**:2 **45**:14,14,16 **49**:16 **74**:3 **83**:23 **86**:15,16 **88**:5,13

**working** [3] **24**:18 **50**:11 **59**:14

**works** [3] **50**:6,8 **67**:1

**worth** [3] **23**:21 **39**:13 **46**:9

**write** [1] **53**:9

**written** [1] **82**:18

### Y

**yada** [6] **3**:10,10,12,12,12

**yard** [3] **74**:23 **79**:1 **80**:10

**year** [2] **28**:1 **29**:12

**year-and** [1] **80**:13

**years** [2] **22**:12 **45**:10

**york** [11] **1**:17,17,28,32 **62**:9 **66**:17 **67**:1 **68**:15,25 **81**:9,19

**yourself** [2] **86**:17 **87**:2