| UNITED STATES BANKRUPTCY COURT | Hearing Date: July 20, 2011 |
| EASTERN DISTRICT OF NEW YORK | Hearing Time: 2:30 p.m. |

-------------------------------------------------------x

In re                                                                    Chapter 11

MARIBELLAX GROUP, LTD,                               Case No. 10-40156 (CEC)

                      Debtor.

-------------------------------------------------------x

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE
APPROVAL OF THE DISCLOSURE STATEMENT FILED BY KEVIN BARRY LOVE**

      Tracy Hope Davis, United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this objection (the "Objection") to the approval of the proposed disclosure statement (the "Disclosure Statement") submitted by interested party Kevin Barry Love ("Love"), dated June 14, 2011, in support of his proposed plan of reorganization for Maribellax Group, Ltd. (the "Debtor"), dated June 14, 2011 (the "Plan"). For the reasons set forth below, the Disclosure Statement is deficient and does not meet the "adequate information" standard set forth in 11 U.S.C. § 1125(a).

## I. INTRODUCTION

      Love's Disclosure Statement is deficient in its current form because it contains inadequate information concerning: 1) the implementation of the Plan, the risk factors associated with the Plan and the value of certain of the Properties, 2) the cash on hand as of the effective date of the Plan (the "Effective Date") and the availability and source of such plan funding, 3) liquidation analysis, 4) post-confirmation management, 5) professional fees, 6) compliance with the absolute priority rule, and 7) the Debtor's quarterly United States Trustee fee and post-confirmation reporting obligations. The Disclosure Statement does not contain "adequate information" for

1

creditors with respect to the Plan under 11 U.S.C. §1125(a). The Court should, therefore, deny approval of the Disclosure Statement in its current form. As many of the United States Trustee's objections and comments relate to issues that are repeated in the Plan, any amendments to the Disclosure Statement should be accompanied by corresponding amendments to the Plan.

## II. FACTS

1. On January 11, 2010 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code. ECF No. 1. The Debtor filed schedules on January 25, 2010, a statement of financial affairs on March 1, 2010 and amended schedules on March 22, 2010. ECF Nos. 17, 21 and 37. On the Petition Date, the Debtor owned and managed multiple parcels of real estate (the "Properties") and was wholly owned and managed by Love.

2. The United States Trustee was unable to form an unsecured creditors' committee in the Debtor's case.

3. On June 4, 2010, the Court granted motions filed by the United States Trustee and Sovereign Bank and directed the United States Trustee to appoint a chapter 11 trustee in the Debtor's case. ECF No. 97.

4. On June 11, 2010, the Court approved the United States Trustee's appointment of Kenneth Silverman (the "Trustee") as chapter 11 trustee. ECF No. 101.

5. According to the Debtor's schedules, the Debtor's primary assets are the Properties, with scheduled aggregate value of $9.2 million and all of which are located in Staten Island, New York, and include:

    a. 25-31 Victory Boulevard,

  b.  230 Bay Street,

  c.  37 Victory Boulevard,

  d.  39-41 Victory Boulevard,

  e.  53 Montgomery Avenue,

  f.  59 Montgomery Avenue,

  g.  63-65 Montgomery Avenue,

  h.  Vacant lot at corner of Victory Boulevard and Montgomery Avenue, and

  g.  Vacant lot on Montgomery Avenue.

ECF No. 37, Schedule A.

  6.  Pursuant to Orders of the Court, the Trustee has sold 230 Bay Street and 53 Montgomery Avenue. ECF Nos. 132 and 163.

  7.  On June 15, 2011, the Love filed the Plan and the Disclosure Statement. ECF Nos. 160 and 161.

  8.  To date, neither the Trustee nor any other party has filed a competing plan of reorganization or liquidation.

### III. OBJECTION

A disclosure statement must contain "adequate information." 11 U.S.C. § 1125(b). The statute defines "adequate information" in general terms to mean:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, . . . and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity

of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

The facts and circumstances of each case govern the precise information required in a disclosure statement. Kirk v. Texaco, 82 B.R. 678, 681 (S.D.N.Y. 1988) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess., 408-409 (1977), U.S.C.C.A.N. 1978, 5787, 6365) ("[p]recisely what constitutes adequate information in any particular instance will develop on a case-by-case basis"); accord In re Cardinal Congregate I, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990). See also In re Ionosphere Clubs, Inc., 179 B.R. 24, 29 (S.D.N.Y. 1995) (the court may require disclosure appropriate to the circumstances of each case).

The benchmark opinion In re Metrocraft, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) cites nineteen non-exclusive factors that courts evaluate when deciding whether a disclosure statement contains adequate information. See also In re Ferretti, 128 B.R. 16, 18-19 (Bankr. D.N.H. 1991) (citing eighteen of the Metrocraft factors). The disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization and disclose the risks posed to creditors and equity security holders under the proposed plan of reorganization. Cardinal Congregate, 121 B.R. at 764.

The Court should deny approval of the Disclosure Statement. It is lacking in meaningful, necessary, and critical information and, therefore, does not meet the minimal requirements of 11 U.S.C. § 1125. See In re Microwave Prods., Inc., 100 B.R. 376, 378 (Bankr. W.D. Tenn. 1989) (disclosure statement that lacks meaningful, necessary and critical information should be disapproved).

A.  **Implementation of Plan, Risk Factors and the Value of the Property**.

The Disclosure Statement contains insufficient information regarding the implementation of the Plan, the risk factors associated with the Plan and the value of certain of the Properties. See Metrocraft, 39 B.R. at 568 (discussing "description of the available assets and their value" as the second factor and "information relevant to the risks posed to creditors under the plan" as the fifteenth factor).  The most critical omissions are that Love does not disclose 1) an appraised value of the 37 Victory, even though he proposes that the deed to that property be delivered to secured creditor Albara, Inc. in full satisfaction of its claims, 2) an appraised value of the two vacant lots which he proposes to sell to provide additional cash to meet Plan obligations and 3) current vacancy rates and projected or potential vacancy rates in any of the Properties and the concomitant impact on feasibility.  The Disclosure Statement should be amended to provide this information.

B.  **Cash on Hand as of the Effective Date and Availability and Source of Funds to Meet Effective Date Obligations.**

The Disclosure Statement does not give adequate information as to 1) the amount of cash the Debtor will need on the Effective Date, 2) the cash available to meet those Effective Date obligations, or 3) the source of the funds to meet these obligations.  See Metrocraft, 39 B.R. at 568 (listing discussion of Debtor's "available assets and their value" as second factor).  The Plan contemplates the satisfaction of substantial Effective Date obligations to professionals and other administrative creditors, priority tax claimants and secured tax claimants.  See Disclosure Statement, p. 4-7.  There is, however, inadequate disclosure of exactly how much Love intends to have available on the Effective Date and the precise source of such funds.  This information is

important for, among other reasons, a determination of feasibility of the Plan, and the Disclosure Statement should be amended to include this information.

### C. Liquidation Analysis.

The liquidation analysis contained in the Disclosure Statement is inadequate. See Disclosure Statement, p. 31-33 and Ex. A. The body of the Disclosure Statement does not discuss underlying assumptions and gives insufficient information on the source of the liquidation valuation of the Properties. Metrocraft, 39 B.R. at 568 (listing discussion of "the estimated return to creditors under a Chapter 7 liquidation" as eighth factor).

### D. Post-Confirmation Management.

The Disclosure Statement and Plan do not contain sufficient information regarding post-confirmation management of the Reorganized Debtor and the salary to be received by post-confirmation management. See Metrocraft, 39 B.R. at 568 (requiring disclosure of the "future management of the Debtor" as twelfth factor). The Disclosure Statement simply discloses that Love will manage the Reorganized Debtor post-Effective Date. See Disclosure Statement, p. 35. The Disclosure Statement and Plan should be amended to fully disclose 1) whether the Reorganized Debtor will use a management company, 2) the identity of the principals of any management company, 3) the compensation that Love will receive, either directly from the Reorganized Debtor or indirectly through any management company, and 4) Love's history with the Debtor, to include the gross mismanagement that led to the appointment of the Trustee.

### E. Professional Fees.

The Disclosure Statement contains insufficient information with respect to the amount of outstanding professional fees and how those fees will be paid. See Metrocraft, 39 B.R. at 568

(requiring estimates of attorneys' fees as twelfth factor).  The Disclosure Statement indicates that the total amount of administrative claims due, which includes professional fees, is $311,500.00.  See Disclosure Statement, p. 4.  As professional fees are a significant outstanding expense, the Disclosure Statement should be amended to provide additional information including 1) the precise amount of outstanding fees for each professional, 2) when professional fees will be paid and 3) the precise source of the funds earmarked for payment of professional fees.  Also, any arrangement with any professional regarding payment of fees over time must be fully disclosed so that creditors can determine whether the plan is feasible.

      **F.**      **Absolute Priority Rule.**

The Plan provides that Love, will retain, or perhaps regain, his equity interests in the Reorganized Debtor post-confirmation.  See Disclosure Statement, p. 34.  Under the absolute priority rule, 11 U.S.C. § 1129(b)(2)(B)(ii), old equity is barred from receiving any property via a reorganization plan when all senior claim classes are not paid in full.  See In re DBSD North America, 634 F.3d 79, 95 (2d Cir. 2011) (unless all impaired classes consent, no junior classes may receive any property under the plan), see also In re Fur Creations by Varriale, Ltd., 188 B.R. 754, 761 (Bankr. S.D.N.Y. 1995) (citing Bonner Mall Partnership v. U.S. Bancorp Mortgage Co., 2 F.3d 889, 908 (9th Cir. 1993), cert. granted, 510 U.S. 1039 (1994), dismissed as moot, 513 U.S. 1994); In re One Times Square Associates Ltd. Partnership, 159 B.R. 695, 707 (Bankr. S.D.N.Y. 1993).

Here, the unsecured non-priority creditors are receiving 50% of their claims on the Effective Date.  See Disclosure Statement, p. 7.  Accordingly, Love may not retain his equity interests unless he can satisfy the "new value exception" to the absolute priority rule.  To prevail,

Love must demonstrate that he will not retain his interest in the Reorganized Debtor on account of his prior interest. See Bank of American National Trust and Savings Association v. 203 North LaSalle Street Partnership, 526 U.S. 434, 456 (1999) ("old equity [may not] obtain its opportunity, and the resulting benefit, because of old equity's prior interest within the meaning of subsection [1129](b)(2)(B)(ii)"). A capital contribution by old equity does not necessarily constitute new value. DBSD, 634 F.3d at 97. To the contrary, old equity's capital contribution may be new value "as long as a 'market valuation' tests the adequacy of its contribution." Id. at 96, n.6, citing 230 North LaSalle, 526 U.S. at 458. The Disclosure Statement does not disclose, and the plan does not provide for, any contribution from Love to the Reorganized Debtor. The Disclosure Statement should be amended to disclose 1) the legal basis for allowing Love to retain his equity interests where creditors are not being paid in full, including a discussion of the absolute priority rule, 2) the precise amount, if any, that Love will be contributing to fund a portion of the Plan and 3) documentation of the adequacy of any contribution under case law interpreting the absolute priority rule.

**G.     Payment of Quarterly Fees and Post Confirmation Reporting**.

The Plan and Disclosure Statement contains insufficient information regarding the Debtor's obligation to pay quarterly fees both before and after confirmation, and does not include a provision for post-confirmation reporting. Both the Disclosure Statement and Plan should be amended to provide that the Debtor shall pay all pre-confirmation quarterly fees, under 28 U.S.C. §1930(a)(6), plus accrued interest, under 31 U.S.C. § 3717, on or before the Effective

8

Date.  With respect to post-confirmation quarterly fees and reporting, the Debtors should amend the Plan and Disclosure Statement to include the following paragraph:

> The reorganized debtors shall pay all statutory fees due and payable, under 28 U.S.C. § 1930, plus accrued interest under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements inside and outside of the ordinary course of business, and file quarterly post-confirmation reports, until the entry of a final decree, dismissal or conversion of the case to chapter 7.

## IV.  CONCLUSION

For the reasons set forth in this Objection, the United States Trustee requests that the Court sustain her Objection, disapprove the Disclosure Statement in its current form and grant other relief as is just.

Dated: Brooklyn, New York
July 13, 2011

                                    Respectfully submitted,

                                    TRACY HOPE DAVIS
                                    UNITED STATES TRUSTEE

By:     */s/ William E. Curtin*
        William E. Curtin (WC-1974)
        Trial Attorney
        271 Cadman Plaza East, Room 4529
        Brooklyn, New York 11201
        Tel. No. (718) 422-4960
        Fax. No. (718) 422-49