UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

IN RE:

                              Chapter 11
                              Reorganization
MARIBELLAX GROUP, LTD.,        Case No.:  10-40156 (CEC)

             Debtor.

--------------------------------X

## FIRST AMENDED PLAN OF REORGANIZATION

KEVIN BARRY LOVE, an interested party (the "Proponent"), proposes the following First Amended Plan of Reorganization (the "Plan") pursuant to sections 1121(a), 1122 and 1123 of title 11 of the United States Code.

## ARTICLE 1
## DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions; (vii) any reference to an existing document or exhibit filed or to be

filed means such document or exhibit, as it may have been or
may be amended, modified or supplemented; (viii) the words
"herein", "hereof, "hereto" or "hereunder" and other words of
similar import refer to the Plan in its entirety rather than to
only a particular portion of the Plan; (ix) the rules of
construction set forth in section 102 of the Bankruptcy Code
shall govern construction of the Plan; and (x) any reference
contained herein to the Bankruptcy Code, or to any section of
the Bankruptcy Code, refers to Bankruptcy Code, or such section
of the Bankruptcy Code, as it is existing and effective on the
Petition Date, except to the extent, if any, that any post-
Petition Date amendment to the Bankruptcy Code applies
retroactively to cases filed on the Petition Date.

1.1 "Administrative Bar Date" means any date established by an
Order of the Bankruptcy Court as the last date for filing
Administrative Claims.

1.2 "Administrative Claim" means a Claim for, or request for
payment of, an Administrative Expense (i) as to which no
objection to the allowance thereof has been interposed within
the applicable period of limitation fixed by the Plan, the
Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court,
or (ii) as to which any objection has been resolved by a Final
Order to the extent such objection has been resolved in favor
of the holder of such Claim.

1.3 "Administrative Expense" means any cost or expense of
administration of this Case, other than Bankruptcy Fees,
allowable under section 503(b) of the Bankruptcy Code.

1.4 Intentionally Omitted.

1.5 "Allowed Claim" means a Claim that (a) has not been
disallowed pursuant to a Final Order and is not a Disputed
Claim and (i) with respect to which a Proof of Claim has been
timely filed with the clerk of the Bankruptcy Court or, (ii) if

no Proof of Claim was filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.6 "Allowed Interest" means an Interest that has not been disallowed and is not a Disputed Interest (i) with respect to which a Proof of Interest was timely filed or, (ii) if no Proof of Interest was filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.7 Intentionally Omitted.

1.8 "Bankruptcy Code" means title 11 of the United States Code, as amended from time to time and effective as of the Petition Date.

1.9 "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York or the United States District Court for the Eastern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

1.10 "Bankruptcy Fees" mean all fees and charges assessed against the estate under section 1930 of title 28 of the United States Code.

1.11 "Bankruptcy Rules" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York, in either case, as now in effect or hereinafter amended.

1.12 "Bar Date" means any date set by Order of the Bankruptcy Court, subsequent to which a Proof of Claim or Proof of Interest may not be timely filed.

1.13 "Business Day" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.14 "Case" means this case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled In re MARIBELLAX GROUP, LTD., Case No.: 10-40156 (CEC).

1.15 "Cash" means lawful currency of the United States of America.

1.16 "Certificate of Incorporation" means the existing certificate of incorporation of the Debtor.

1.17 "Class" means a category of substantially similar Allowed Claims or Allowed Interests.

1.18 Intentionally Omitted.

1.19 "Confirmation" means the entry of the Confirmation Order.

1.20 "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.21 "Confirmation Order" means an Order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.22 "Creditor" means a holder of an Allowed Claim.

1.23 "Cure Amount" means any amount required, pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any executory contract or unexpired lease for any actual pecuniary loss resulting from a default in respect of an executory contract or unexpired lease.

1.24 "Debtor" means MARIBELLAX GROUP, LTD., a New York corporation.

1.25 "Deficiency Claim" means, unless the holder thereof elects treatment in accordance with section 1111(b)(2) of the Bankruptcy Code and Bankruptcy Rule 3014, that portion of an Allowed Claim that exceeds the value of all property in which the Estate has an interest that is subject to a Lien securing such Allowed Claim.

1.26 "Disbursing Agent" means any Entity selected by the Proponent to distribute payments or property under the Plan, which Disbursing Agent shall serve without bond.

1.27 "Disclosure Statement" means the Disclosure Statement for Proponent's Plan of Reorganization, including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

1.28 "Disputed Claim" means (a) a Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order;

(b) Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if, (i) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (ii) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim has been listed in the Schedules,

1.29 "Disputed Interest" means an Interest in the Debtor that
has not been disallowed and with respect to which an objection
to the allowance thereof, in whole or in part, has been
interposed within the applicable period of limitation fixed by
the Plan, the Bankruptcy Code, the Bankruptcy Rules or the
Bankruptcy Court, to the extent that any such objection has not
been resolved by a Final Order. Until the earlier of (i) the
filing of an objection to a Proof of Interest or (ii) the last
date to file objections to Interests as established by the Plan
or by Final Order, an Interest shall be deemed to be a Disputed
Interest in its entirety if, (i) the amount specified in the
Proof of Interest exceeds the amount of any corresponding
Interest listed in the Schedules; (ii) any corresponding
Interest listed in the Schedules has been scheduled as
disputed, contingent or unliquidated; or (iii) no corresponding
Interest has been listed in the Schedules.

1.30-1.34 Intentionally Omitted.

1.34 "Effective Date" means eleven (11) Business Days following
the Confirmation Date.

1.35 "Estate" means the estate created on the Petition Date as
set forth in section 541 of the Bankruptcy Code.

1.36 "Final Order" means a judgment, order, ruling or other
decree issued and entered by the Bankruptcy Court or by any
state or other federal court or other tribunal located in one
of the states, territories or possessions of the United States
or the District of Columbia, that has not been stayed or that
is no longer subject to appeal, certiorari proceeding or other
proceeding for review or rehearing, and as to which no appeal,
certiorari proceeding, or other proceeding for review or
rehearing shall then be pending.

1.37 "Funder" means Proponent.

1 38 "Interest" means an Equity interest in the Debtor.

1.39 "Interest Holder" means a holder of an Allowed Interest in the Debtor.

1.40 "Legal Holiday" means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.41 "Order" means an order of the Bankruptcy Court.

1.42 Intentionally Omitted.

1.43 "Petition Date" when used alone, means January 11, 2010, the date on which MARIBELLAX GROUP, LTD., commenced its Case by filing its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.44 Intentionally Omitted.

1.45 "Plan" means this Plan of Proponent, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.46 "Post-Petition Tax Claim" means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

1.47 "Premises" means the real property and the improvements thereon owned by the debtor, to wit:
    A.    39-41 Victory Blvd, Staten Island, NY 10301;
    B.    25-31 Victory Blvd, Staten Island, NY 10301;
    C.    59 Montgomery Avenue, Staten Island, NY 10301;
    D.    63-65 Montgomery Avenue, Staten Island, NY 10301;
    E.    37 Victory Blvd, Staten Island, NY 10301;

F.   Vacant Lot Corner of Victory Blvd and
     Montgomery Avenue, Staten Island, NY 10301;

G.   Vacant Lot on
     Montgomery Avenue, Staten Island, NY 10301;

1.48 "Priority Claim" means an Allowed Claim, other than a
Priority Tax Claim, an Administrative Claim, Bankruptcy Fees or
an Employee Benefit Claim, to the extent entitled to priority
under section 507 of the Bankruptcy Code.

1.49 "Priority Tax Claim" means an Allowed Claim of a
Governmental Unit of the kind specified in section 507(a)(8) of
the Bankruptcy Code.

1.50 "Pro Rata" means the proportion an Allowed Claim or an
Allowed Interest in a particular Class bears to the aggregate
amount of all Allowed Claims or Allowed Interests in such Class
with the terms and conditions of the particular transaction
giving rise to such Administrative Claim and any agreements
relating thereto.

1.51 "Professional" means all professionals employed by the
Debtor under section 327 of the Bankruptcy Code.

1.52 "Proof of Administrative Claim" means a request for
payment of an Administrative Expense (including fees and
expenses allowed under sections 330 or 331 of the Bankruptcy
Code of duly retained professionals providing services in this
Case) filed pursuant to section 503 of the Bankruptcy Code.

1.53 "Proof of Claim" means a proof of Claim filed pursuant to
section 501 of the Bankruptcy Code and Part III of the
Bankruptcy Rules.

1.54 "Proof of Interest" means a proof of an Interest filed
pursuant to section 501 of the Bankruptcy Code and Part III of
the Bankruptcy Rules.

1.56 Intentionally Omitted.

1.57 "Schedules" mean the schedules of assets and liabilities filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.58 "Secured Claim" means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to set off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.59 "Secured Albara Mortgage Claim" means the mortgage claim of Albara, Inc. on the property known as 37 Victory Boulevard, Staten Island, NY 10301.

1.60 "Secured Northfield Mortgage Claim" means the mortgage claim of Northfield Bank on the property known as 25-31 Victory Blvd, Staten Island, NY 10301; 59 Montgomery Avenue, Staten Island, NY 10301; and 63-65 Montgomery Avenue, Staten Island, NY 10301.

1.61 "Secured Sovereign Mortgage Claim" means the mortgage claim of Sovereign Bank on the property known as 39-41 Victory Blvd, Staten Island, NY 10301.

1.62 "Secured Tax Claim" means a Secured Claim for taxes held by a Governmental Unit (including, but not limited to, real property taxes, water and sewer assessments and other similar liens, fees and charges).

1.63 "Trustee" or "Operating Trustee" means Kenneth Silverman.

1.64 "Unsecured Claim" means an Allowed Claim, including a Deficiency Claim, that is not an Administrative Claim, a Bankruptcy Fee, an Insured Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or a Secured Tax Claim.


## ARTICLE 2
## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 2 in full settlement, release and discharge thereof.

2.1 Administrative Bar Date. Except as otherwise provided in sections 2.2, 2.3 and 2.4 of the Plan, Proofs of Administrative Claims must be filed no later than the Administrative Bar Date. Holders of Administrative Claims that do not file Proofs of Administrative Claims on or before the Administrative Bar Date, shall be forever barred from asserting such Claims against the Debtor or its property.

2.2 Professionals Compensation and Reimbursement. All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than the Administrative Bar Date. Any such application timely filed shall be deemed to be a Proof of Administrative Claim. No later than three days prior to the Effective Date, each such Professional shall provide the Disbursing Agent with an estimate of the total amount of compensation and expenses for which such Professional expect to seek final compensation pursuant to section 330 of the Bankruptcy Code. Such estimates shall include estimated sums for the preparation and prosecution of any such application. On the Effective Date the

Disbursing Agent shall segregate sufficient cash to pay all such estimated compensation and expenses in full. Objections to any Professional's application for compensation or reimbursement must be filed and served upon such Professional, and the Disbursing Agent, no later than 90 days after the Effective Date. Any such objection not timely filed and served shall be deemed to have been waived.

2.3 Ordinary Course Liabilities. Holders of Administrative Claims for liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) shall not be required to file any Proofs of Administrative Claim and such Administrative Claims shall be assumed and paid pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim without any further action by the holders of such claims.

2.4 Post-Petition Tax Claims. All Proofs of Administrative Claims for Post-Petition Tax Claims for which no bar date has otherwise previously been established, must be filed on or before the later of (i) 60 days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable Governmental Unit. Any holder of any Post-Petition Tax Claim that does not file a Proof of Administrative Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor or its property, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.

2.5 Administrative Claims. Each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim

becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with applicable non bankruptcy law.

2.6 Cure Payments. All payments necessary to cure any default and reinstate any executory contract, or lease shall be paid in cash and in full within thirty (30) days after the Effective Date, (or approval of the court, whichever is later), or as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim.


### ARTICLE 3
### CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 2, Allowed Claims and Allowed Interests of the Debtor are classified as set forth in this Article 3. A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1 Class 1 – Priority Non Tax Claims. Class 1 consists of all Priority Non Tax Claims. There are no known holders of claims in this class.

3.2 Class 2 – Bankruptcy Fees. Class 2 consists of all fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code.

3.3 Class 3 - Priority Tax Claims. Class 3 consists of the Priority Tax Claims.

3.4 Class 4 - Secured Tax Claims. Class 4 consists of the Secured Tax Claims of the City of New York.

3.5 Class 5 - Secured Mortgage Claims of Northfield Bank. Class 5 consists of Secured Mortgage Claims of Northfield Bank. These oversecured claims consist of first mortgages on three properties, which are, and will remain current.

3.6 Class 6 - Secured Mortgage Claim of Sovereign Bank. Class 6 consists of Secured Mortgage Claims of Sovereign Bank. This claim is undersecured.

3.7 Class 7 - Secured Mortgage Claims of Albara, Inc. Class 7 consists of Secured Mortgage Claim of Albara, Inc. This claim is undersecured.

3.8 Class 8 - General Unsecured Claims. Class 8 consists of Unsecured Claims.

3.9 Class 9 - Allowed Interests. Class 9 consists of all Allowed Interests.

## ARTICLE 4
### TREATMENT OF UNIMPAIRED CLAIMS AND INTERESTS

Allowed Claims in Classes 1-3 and 5 are not impaired and shall receive the following treatment under the Plan in full settlement, release and discharge thereof.

4.1 Class 1 - Priority Non Tax Claims. All Allowed Priority Non Tax Claims shall be paid by the Disbursing Agent in Cash in full within thirty (30) days after the Effective Date of the Plan, or as may be otherwise agreed in writing between the Debtor and the holders of such Claims.

4.2 Class 2 – Bankruptcy Fees. All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code shall be paid in cash in full within thirty (30) days after the Effective Date of the Plan.

4.3 Class 3 – Priority Tax Claims. The holders of Priority Tax Claims shall be paid by the Disbursing Agent in Cash in full within thirty (30) days after the Effective Date of the Plan, or as may be otherwise agreed in writing between the Debtor and the holders of such Claims.

4.4 Class 5 – Secured Mortgage Claims of Northfield Bank. The holder of the three first mortgages on three separate properties in this Class are oversecured and are, and will remain current on the Effective Date. Thereafter, the reorganized Debtor will continue to pay these mortgages according to their respective terms.

## ARTICLE 5
## TREATMENT OF IMPAIRED CLAIMS

Allowed Claims in Classes 4 and 6, 7 and 8 and Allowed Interests in Class 9 are impaired and shall receive the following treatment under the Plan in full settlement, release and discharge thereof.

5.1 Class 4 – Secured Tax Claims. The holder of Secured Tax Claims, shall receive, in full satisfaction of their Secured Tax Claims inclusive of interest thereon by payment of not less than $75,000. on the Sovereign Property Real Estate Taxes and approximately $50,000., or such amount as is sufficient to bring current the Northfield Property Real Estate Taxes at the Effective Date, and the balance of the Sovereign Property Real Estate Taxes will be paid at the rate of eighteen (18%) percent per annum in equal monthly payments over five years from the Effective Date of the Plan, with payment commencing within thirty (30) days after the Effective Date of the Plan.

5.2 Class 6 - Secured Mortgage Claim of Sovereign Bank. The holder of the first mortgage on 39-41 Victory Boulevard, Staten Island, NY 10301 ("Sovereign"), will be paid, on the Effective Date, all post default, prepetition interest on the principal sum of $2,465,664 at the default contract rate of 9.5% per annum, all post default, post petition interest on the principal sum of $2,465,664 at the non-default contract rate of 6.5% per annum, and partial payment of other charges including attorney's fees by the allocation of monies already paid to Sovereign Bank for cash collateral payments and the proceeds of the sale of 53 Montgomery Avenue, with the balance of other charges including attorney's fees to be paid over three years commencing from thirty days after the Effective Date in equal monthly payments at the non-default contract rate of 6.5% per annum and be paid interest on the principal sum of $2,465,664 at the non-default contract rate of 6.5% per annum in equal monthly payments commencing thirty (30) days after the Effective Date.

Sovereign will also be permitted to record the heretofore unrecorded $2,800,000 Mortgage and the Restatement, Consolidation, Extension, Spreader and Modification Agreement dated as of June 24, 2004, and commence a foreclosure on the same, and unless paid in full, or reinstated, prior to three years from the Effective Date, be able to schedule and hold a foreclosure auction sale of 39-41 Victory Boulevard, Staten Island, NY at such time.

5.3 Class 7 - Secured Mortgage Claims of Albara, Inc. Class 7 consists of the undersecured Mortgage Claims of Albara, Inc. On the Effective Date of the Plan, the Reorganized Debtor will deliver a deed to 37 Victory Blvd, Staten Island, NY 10301 to Albara, Inc. in full satisfaction of said Creditor's claims against the Debtor.

5.4 Class 8 – General Unsecured Claims. General Unsecured Claims shall be paid a total of fifty (50%) percent of their allowed claims, in equal monthly payments over five (5) years without interest commencing thirty (30) days after the Effective Date of the Plan.

5.5 Class 9 – Allowed Interests. The Debtor's Interest Holder will have his interest diluted by twenty five (25%) percent by the cash infusion of monies by the funder, subject to certain repurchase rights.

## ARTICLE 6
### TREATMENT OF EXECUTORY
### CONTRACTS AND UNEXPIRED LEASES

6.1 Assumption of Executory Contracts and Unexpired Leases. On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party, shall be deemed assumed by the Debtor in accordance with section 365 of the Bankruptcy Code.

6.2 Assumption Cure Payments. (a) Any Cure Amount required to be paid to cure any default under any executory contract or unexpired lease to be assumed by the Debtor on the Effective Date shall be paid in cash and in full on the Effective Date of the Plan.

## ARTICLE 7
### IMPLEMENTATION OF THE PLAN

7.1 Implementation. In order to meet the obligations needed on the Effective Date, proponent will have sold to Sergey Guberman, 55 Arbor Court, Staten Island, NY 10301, twenty five (25%) percent of his ownership interest in the Debtor, for the sum of $350,000., conditioned only upon the confirmation of

this Plan, which the Proponent will use to meet the Reorganized Debtor's obligations at Confirmation under this Plan.

7.2 Funding. Payments and distributions to be made under the Plan after the initial payments due after thirty days after the Effective Daye shall be funded by the Reorganized Debtor's continued real estate operations.

7.3 Continued Existence of the Debtor. Except as otherwise provided herein, the Debtor shall continue to exist after the Effective Date as a corporation in accordance with the laws of the State of New York and pursuant to the Articles of Incorporation, without prejudice to any right of the Debtor to terminate such existence following the Effective Date.

7.4 Preservation of Rights of Action. Except as otherwise provided herein or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain and may, in accordance with their determinations of their best interests, enforce any claims, rights and causes of action arising under sections 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory.

7.5 Shareholder of the Debtor. The Shareholder shall continue as a 75% Shareholder of the Debtor on and after the Effective Date. Sergey Guberman shall be a 25% Shareholder of the Debtor on and after the Effective Date.

7.6 Deemed Cure and/or Waiver of Defaults. Any default of the Debtor on any contract or instrument or otherwise which existed on the Petition Date, shall be deemed cured and/or waived, as the case may be, and such cure and/or waiver shall relate back to the Petition Date, upon the Effective Date of this Plan.

**ARTICLE 8**

**PROVISIONS GOVERNING DISTRIBUTIONS**

8.1 Plan Administrator. There will be a Plan Administrator appointed by the Proponent. The Plan Administrator shall receive all rental income from the Debtor's properties, and distribute all Cash or other property to be distributed under the Plan. The Plan Administrator shall serve without bond. The Debtor, in its sole, reasonable discretion, without further Order of the Bankruptcy Court, may pay the Plan Administrator reasonable compensation for the services it renders pursuant to the Plan and reimbursement of its reasonable out-of-pocket expenses incurred in connection with providing such services on such terms as are agreed to in writing between the Plan Administrator and the Debtor.

8.2 Timing of Distributions Under the Plan. Subject to section 8.6 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Claim or Interest shall be deemed to be timely made if made on or within five Business Days following the later of (i) the Effective Date; (ii) the Closing Date; (iii) the expiration of any applicable objection deadline with respect to such Claim or Interest; or (iv) such other times provided in the Plan.

8.3 Method of Payment. Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

8.4 Objection Deadline. Unless otherwise ordered by the Bankruptcy Court, any party in interest may object to the allowance of any Claim or Interest filed with the Bankruptcy Court in whole or in part by serving and filing an objection to such Claim or Interest no later than the Confirmation Date; provided, however, that the Debtor may file and serve any objection to any Claim or Interest at any time, but in no event

after the later to occur of (i) 30 days after the Effective Date or (ii) 30 days after the date proof of such Claim or Interest is filed.

8.5 Prosecution of Objections. After the Confirmation Date, only the Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims.

8.6 No Distribution Pending Allowance. Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

8.7 Distribution After Allowance. Within 30 days after the end of each calendar quarter following the Closing Date, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim during the preceding quarter.

8.8 Surrender of Instruments. (a) Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Plan Administrator at the sole cost and expense of such Creditor. In addition, upon receiving a final distribution, at the election of the Plan Administrator, a Creditor that holds a mortgage, security interest, assignment of rents or other such instrument shall execute and deliver to the Plan Administrator an assignment to the Debtor, or its assignee or satisfaction of such mortgage, security interest, assignment of rent or other such instrument, in proper form for recording. Any Cash or

property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 8.12 of the Plan.

(b) In the event any Creditor is unable to surrender a Note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such Entity may receive a final distribution with respect to such Claim by presenting to the Plan Administrator, in a form acceptable to the Plan Administrator: (i) proof of such Entity's title to such Claim; (ii) proof of the loss, destruction, mutilation or theft of such Note or other instrument evidencing a Claim; (iii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iv) such indemnification as may be required by the Plan Administrator and all other Entities deemed appropriate by the Plan Administrator from any loss, action, suit or any claim whatsoever which may be made as a result of such Entity's receipt of a distribution under the Plan.

(c) All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. Neither the Debtor nor the Plan Administrator shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects. Any such Note or instrument received by the Plan Administrator that is not properly tendered and to which the defects have not been cured or waived, will be returned by the Plan Administrator to the tendering holder as soon as practicable.

8.9 Delivery of Distributions. Except as provided in sections 8.10 and 8.11 of the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the

addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Plan Administrator has not received a written notice of a change of address.

8.10 Undeliverable Distributions. (a) If the distribution to the holder of any Claim or Interest is returned to the Plan Administrator as undeliverable, no further distribution shall be made to such holder unless and until the Plan Administrator is notified in writing of such holders then current address. Undeliverable distributions shall remain in the possession of the Plan Administrator until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 8.13 of the Plan.

(b) Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 8.13 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Plan Administrator shall make distributions of all Cash and property that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c) Nothing contained in the Plan shall require the Debtor or the Plan Administrator to attempt to locate any holder or an Allowed Claim of an Allowed Interest.

8.11 Unclaimed Distributions. Any Cash or other property to be distributed under the Plan shall be distributed to the Debtor if it is not claimed by the Entity entitled thereto before the later of (i) 3 years after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order.

## ARTICLE 9
## DISCHARGE AND RELEASES

9.1 Discharge. (a) On the Effective Date the Debtor shall be discharged pursuant to section 1141 of the Bankruptcy Code from all Claims against Debtor that arose prior to the Effective Date and from any liability of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code whether (i) a Proof of Claim or Proof of Interest has been filed or deemed to have been filed with respect to such Claim or Interest, (ii) such Claim or Interest is allowed or disallowed, or (iii) the holder of such Claim or Interest has accepted the Plan.

(b) Except as otherwise provided in the Plan, all Persons shall be precluded and enjoined from asserting against the Debtor, or its successors, assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim or Interest based upon any acts or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

(c) Except as otherwise-provided under the Plan or a Final Order of the Bankruptcy Court, any judgment at any time obtained, to the extent that such judgment is a determination of the liability of the Debtor with respect to any debt discharged pursuant to the Plan and section 1141(d)(1) of the Bankruptcy Code, shall be null and void and of no force and effect, regardless of whether a Proof of Claim or Proof of Interest therefor was filed or deemed filed and, except as otherwise provided in the Plan, all Creditors holding Claims

against the Debtor and holders of Interests in the Debtor shall be precluded from asserting against the Debtor or any of its assets or properties, any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, and the Confirmation Order shall permanently enjoin all Creditors and holders of Interests, their successors and assigns, from enforcing or seeking to enforce any such Claims or Interests.

9.2 Injunction. Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall A) Forever stay, restrain and permanently enjoin (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor or Shareholder or from property of the Debtor or Shareholder (ii) the creation, perfection or enforcement of any lien or encumbrance against any property of the Debtor or Shareholder or any property distributed under the Plan, or (iii) any Claim or Interest discharged under the Confirmation Order, the Plan or pursuant to section 1141(d)(1) of the Bankruptcy Code; and B) Stay any action against any guarantor of the debtor upon any obligation provided for by this Plan, so long as payments under this Plan are timely made, unless after any default, and ten (10) days notice to cure such default given to the reorganized debtor and counsel for debtor, the reorganized debtor fails to cure such default.

9.3 Limitation of Liability. Neither the Debtor, Shareholder nor any of its respective officers, directors, managing agent or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation,

preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Case or the Plan.

9.4 Released Entities. Upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor and its Shareholders, partners, officers, directors, agents, representatives and employees ("Released Entities"), and shall constitute a release of the Released Entities, effective as of the Effective Date, by the Debtor, on its own behalf and on behalf of all Interest Holders and Creditors, and by each Creditor and Interest Holder from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the – Debtor, its Creditors or Interest Holders ever had, now have or hereafter may have (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan).

9.5 Plan and Confirmation Order as Release. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this article 9 of the Plan.

9.6 Guarantors. Any other provision of this Article to the contrary notwithstanding, no party who has affirmatively guaranteed any obligation of the debtor, or who is obligated as a responsible party under the tax laws of the United States or of the State of New York shall be deemed released unless and until such obligation, as finally determined by this court, shall be fully paid pursuant to this Plan.

## ARTICLE 10
## MISCELLANEOUS PROVISIONS

10.1 Orders in Aid of Consummation. Pursuant to sections 105 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

10.2 Compliance with Tax Requirements. In connection with the Plan, the Debtor and, where applicable the Plan Administrator, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; providing, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

10.3 Due Authorization by Creditors. Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify

the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

10.4 Amendments. The Plan may be altered, amended or modified by the Proponent, in writing, signed by the Proponent at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

10.5 Revocation. The Proponent may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

10.6 Intentionally Omitted.

10.7 Filing of Additional Documents. Except as otherwise provided in the Plan, on or before the Effective Date, the Proponent may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

10.8 Section Headings. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

10.9 Computation of Time. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.10 Successors and Assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any

heir, executor, administrator, successor or assign of such entity.

10.11 Notices. All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) if to the Proponent at Michael T. Sucher, Esq., 26 Court Street, Brooklyn, New York 11242.

(b) if to any Creditor or Interest holder at (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

10.12 Governing Law. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York. without giving effect to the principles of conflict of laws thereof.

10.13 US Trustee reports and payments. The reorganized debtor will pay all statutory fees due and payable, under 28 U.S.C. §1930, plus accrued interest under 31 U.S.C. §3717, on all disbursements, including plan payments and disbursements inside and outside of the ordinary course of business, and file quarterly post-confirmation reports, until the entry of a final decree, dismissal or conversion of the case to chapter 7.

**ARTICLE 11**

**RETENTION OF JURISDICTION**

11.1 Retention of Jurisdiction. Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b) Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(c) Resolve any motions pending on the Effective Date to assume, assume and assign or reject any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(d) Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan;

(e) Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f) Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all

contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

(g) Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(h) Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

11.2 Remedy any defect or omission or reconcile any inconsistency in and Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(a) Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(b) Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(c) Determine any dispute arising under or related to the Plan;

(d) Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or

other agreement or document created in connection with the Plan or Disclosure Statement; and

(e) Enter an Order or Final Decree concluding the Case.

Dated: Brooklyn, New York
      August 2, 2011

                    MARIBELLAX GROUP, LTD.,

                    s/ *Kevin Barry Love*
                    By: KEVIN BARRY LOVE
                    Interested Party
                    Sole Shareholder of Debtor

                    s/ *Michael T. Sucher, Esq.*
                    MICHAEL T. SUCHER, ESQ.
                    Attorney for the Proponent
                    Kevin Barry Love
                    26 Court Street  Suite 2412
                    Brooklyn, New York 11242
                    (718) 522-1995